**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **HENRY BEVERLY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. 17-CV-5590** |
| **v.** | ) | |
| | ) | |
| **ABBOTT LABORATORIES,** | ) | |
| an Illinois Corporation, | ) | **JURY DEMAND** |
| | ) | |
| **Defendant.** | ) | |

## COMPLAINT

Plaintiff Henry Beverly ("Plaintiff"), by and through his attorneys, The Law Offices of Ruth I. Major, P.C., for his Complaint against Defendant, Abbott Laboratories, Inc. (hereinafter "Abbott" or "Defendant"), states as follows:

### INTRODUCTION

1. Henry Beverly was employed in various roles at Abbott for more than 9 years. He most recently held the position of Global Demand Analyst, though his annual performance reviews often included notations that he was eager to pursue additional leadership opportunities, and that he sought roles that would "best maximize his many skills," as was noted in his 2011 performance review. In the near-decade he was employed by Abbott, Mr. Beverly consistently received positive performance reviews, usually being rated as "Achieved Expectations" or "Exceeded Expectations" across the categories addressed by his reviewers.

2. When his wife, Martina Beverly, who also worked for Abbott, became a target of workplace harassment and sexual harassment, both Beverlys filed complaints with Abbott Human Resources ("HR") and later with government administrative agencies, including with the Illinois

Department of Human Rights ("IDHR"). While the complaints were pending, Mr. Beverly noticed a significant change in how he was being treated by Abbott. Before expressing his concerns, he was treated as a valued employee. After making the complaints, he was passed up for numerous promotions for which he was qualified despite having applied. As a result, he joined his wife in filing a federal discrimination lawsuit against Abbott, alleging discrimination and retaliation in Abbott's failure to promote Mr. Beverly. Mr. Beverly's claims were dismissed on Abbott's motion for summary judgment because the court found that Mr. Beverly could not establish that the decisionmakers involved were aware of either his race or his history of complaints against the company when making their decisions.

3.      Within days of the dismissal, Abbott began the process of marginalizing Mr. Beverly as an employee and paving the path for his termination by assigning him responsibilities that were inconsistent with his normal responsibilities and excluding from certain meetings that he would have been a part of in the past. During the next year, he would only resume his former duties for two brief periods when a colleague who had assumed his prior responsibilities was on a leave of absence. Approximately one year after his initial federal lawsuit was dismissed, Mr. Beverly's role had been so drastically reduced that his superiors granted him permission to take a personal leave of absence ("PLOA"), which is commonly granted to employees at Abbott.

4.      While on his PLOA, Mr. Beverly learned of the sudden and unexpected death of his wife's family member, and notified Abbott of his intention to take leave pursuant to the Family Medical and Leave Act ("FMLA") so he could support and care for his wife who was already in treatment for depression and other emotional conditions. Within two days of notifying Abbott that he intended to take FMLA leave, Mr. Beverly's employment was abruptly terminated by Abbott.

2

5.     While Mr. Beverly was on his PLOA, his supervisor was reassuring him that his absence was not a problem, while at the same time interviewing candidates to take Mr. Beverly's job without his knowledge. When he was terminated, Mr. Beverly was told that the reason for the termination was the fact he had remained on leave, despite the fact Abbott had stripped him of most of his responsibilities, had approved his leave of absence, and had never indicated that his absence posed any problem or that his job was in jeopardy.

6.     Mr. Beverly brings claims of unlawful race and age discrimination and retaliation in violation of the Illinois Human Rights Act, 775 ILCS § 5/1-101 *et seq.* and Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 (hereinafter referred to as "Section 1981") and claims of unlawful interference with his rights under the FMLA, 29 U.S.C. § 2601, *et seq.*, as well as retaliation for his attempt to exercise his rights under the FMLA.

## PARTIES

7.     Plaintiff Henry Beverly is an African-American citizen of Illinois who was employed by Abbott for nearly a decade, during which time he held multiple roles within the finance department.

8.     Defendant Abbott is a citizen of Illinois as Abbott was incorporated in Illinois on March 6, 1900 as a healthcare company involved in a wide variety of business endeavors including pharmaceuticals, medical devices, nutrition, and diagnostic testing, among others. Abbott's principal place of business is also in Illinois. Abbott has at least 500 employees.

## JURISDICTION AND VENUE

9.     This Court has original jurisdiction over Mr. Beverly's FMLA claim pursuant to 28 U.S.C. § 1331, as that claim is a civil action arising under the Family Medical and Leave Act, which is a law of the United States.

9.     This Court has supplemental jurisdiction over Mr. Beverly's state law discrimination and retaliation claims pursuant to 28 U.S.C. § 1367, as these claims are so related to the FMLA claim that they form part of the same case or controversy.

10.     This action properly lies in the Northern District of Illinois, Eastern Division, pursuant to 28 U.S.C. § 1391(b)(2), in that it arises out of events that occurred in Chicago, Illinois, and in Abbott Park, Illinois, which are areas in the territory covered by the Northern District of Illinois, Eastern Division.

**FACTS**

11.     Mr. Beverly was a dedicated, hard-working employee at Abbott for over 9 years. During that time, he received consistently positive performance reviews from his superiors, and was consistently rated as exceeding or achieving the company expectations for his performance at the company.  He continually sought to assume roles involving more leadership opportunities, and wanted to advance within Abbott to positions entailing a greater level of responsibility.

12.     In his 9 years at Abbott, Mr. Beverly successfully implemented a new commercial management reporting system to merge the data from supply chain rolling forecasts and commercial performance resulting in the elimination of a $3 million variance from the prior Sales and Operation Planning process. He accomplished this savings by establishing more reliable communications with personnel in 76 countries, in which over 76,000 products were created, and ensured that the products were appropriately classified when costs were calculated, instead of permitting overly general product classifications to allow for a misinterpretation of cost figures, as had been permitted in the past.

13.     Mr. Beverly also led communications concerning an emerging markets demand planning information systems implementation for Russia. He built the supply chain structure from

the ground up in Russia, which included training someone without a background in mathematics to utilize raw data to perform essential accounting functions in that new market. His cross-database innovation of the long-range plan process allowed for supply-chain and finance to plan at a sub-group level.

14.     During his employment, Mr. Beverly consistently worked to improve his skills, and was asked on multiple occasions to train the individuals who took on various roles. Mr. Beverly was well-known and routinely sought-out by other Abbott divisions as a subject-matter expert concerning data analytics, including an instance in or around June 2012 where he was even asked to train his incoming supervisor, non-African-American Victoria Luo, even though Mr. Beverly was not selected when he applied for the position held by Ms. Luo.

15.     When Martina Beverly, Mr. Beverly's wife who also worked for Abbott, was subjected to workplace harassment and sexual harassment, both Beverlys filed complaints with Abbott ("HR") and later with government administrative agencies, including with the IDHR. While the complaints were pending, Mr. Beverly noticed that the promotions he was applying for were being given to others, despite his qualifications for those roles. Due to that treatment, when Ms. Beverly filed a federal discrimination lawsuit against Abbott in 2012, Mr. Beverly also filed discrimination and retaliation claims against Abbott for the company's failure to promote him.

16.     Despite his successes, Abbott began gradually reducing Mr. Beverly's duties beginning with Abbott's 2013 hire of Hamid Akhtar, a non-African-American, to work alongside Mr. Beverly. Mr. Beverly sometimes had to re-do the work assigned to Mr. Akhtar. For example, Mr. Akhtar trained a Middle East team on using financial tools created by Mr. Beverly. However, at the conclusion of the training, the team asked for additional training on the same financial tools

5

that Mr. Akhtar was responsible for training the staff on. Mr. Beverly stepped in to train the Middle East team and the managers on the Egyptian team.

17.     At nearly the same time summary judgment was granted to Abbott on Mr. Beverly's failure to promote claims that were pending in federal court, in March 2014, Abbott assigned training and development tasks to Mr. Beverly. Ms. Luo required that Mr. Beverly conduct a training session on the use of the online financial reporting process for over 70 managers, while simultaneously asking him to design a new financial tool to be used in over 70 international affiliates.

18.     Mr. Beverly initially interpreted these training assignments as a positive sign, until those training sessions were completed, and Ms. Luo required Mr. Beverly to train her and members of the Middle East team on *his own* job functions, as if he would not be there for much longer. The training sessions were actually an indication that the company was to continue removing his duties from him.

19.     A couple months after the ruling by the federal court in the failure to promote case, Ms. Luo excluded Mr. Beverly from training sessions being held concerning new computer programs despite the fact his colleagues were required to attend the training, again creating the impression that he would not need to know how to use these new computer programs as he would not be at Abbott long enough to make use of the programs.

20.     When Mr. Akhtar took a leave of absence on two separate occasions following deaths in his family, Mr. Beverly re-assumed all of his duties (which were the same duties that Mr. Beverly had previously been responsible for, before those duties had been reassigned to Mr. Akhtar). In both instances, however, Mr. Beverly's apparent increased involvement in Abbott was short-lived, as when Mr. Akhtar returned to work, all of those duties that Mr. Beverly recently

reacquired were again assigned to Mr. Akhtar. In both instances, the duties were removed from Mr. Beverly and assigned to Mr. Akhtar within 30 days or less. The more recent of these periods of temporary increased involvement in his former job duties occurred in from approximately mid-July to mid-August 2014.

21.     Throughout the remainder of 2014, Mr. Beverly had minimal involvement for work in his department, including a new project that his department was working on. Instead, his primary duty was to perform data retrieval tasks for any department that assigned such work to him. When Ms. Luo hit a road block in the new project, however, and could not determine the best way to fix a problem or address a concern on this new project, Mr. Beverly was asked to assist, on a temporary basis, and once he helped Ms. Luo with the issue he was again excluded from involvement in the project. Mr. Beverly would offer to continue working on the project to solve similar problems, or to help the project in other ways, but Ms. Luo would not allow him to be part of the team.

22.     In January of 2015, Ms. Luo stripped Mr. Beverly's of any remaining job functions he had within the department, with the exception of creating a monthly PowerPoint presentation for Ms. Luo. This one job duty would be the most work that would be assigned to Mr. Beverly by Ms. Luo for the remainder of his time working for Abbott, though he was never given an indication of whether he would resume additional job responsibilities in his department, other than having his request to assist with compiling pre-performance reviews for the coming year denied. Ms. Luo told him that "everything is ok. Nothing has changed, I really need you here."

23.     Although Mr. Beverly was not being assigned additional tasks, he was reporting for work regularly, and was working his normal hours throughout 2013, 2014, and the first 3 months of 2015.

7

24.    After being assigned no new work for over 2 months, Mr. Beverly applied for and received a PLOA from Abbott at the end of March 2015. Such leaves of absence are routinely taken among the employees at Abbott, and as such, Mr. Beverly's leave was not out of the ordinary. In many cases, employees are not required to provide reasons for taking leave, and leaves commonly last for periods of 6 months or more. Ms. Luo granted Mr. Beverly permission to take his requested PLOA, and mentioned to him that she wished him good luck in his lawsuit against Abbott.

25.    While on his leave, Mr. Beverly's sole responsibility as it concerned Abbott was to check in with Ms. Luo to periodically verify that his leave could continue and that he was not needed in the office such that he should return to work. If Ms. Luo advised him that he was needed back at work, Mr. Beverly would have ended his leave and returned to work. Mr. Beverly regularly checked in with Ms. Luo. During those calls, Ms. Luo would often complain about the same project Mr. Beverly had repeatedly asked to help with prior to his leave but was told he could not work on. Each time, though, Ms. Luo did not ask Mr. Beverly to return to work on the project, but instead repeatedly confirmed that his leave, which was originally set to run for 6 months, could continue.

26.    On or about July 27, 2015, Mr. Beverly and his wife learned of a sudden and unexpected death in his wife's family, which occurred overseas. Due to the circumstances surrounding that tragedy, which included the family member first being reported as missing, Mr. Beverly informed Ms. Luo of his intent to return to work to apply to take FMLA leave to care for his wife, who was undergoing treatment for a serious health condition at the time that the family learned of the unexpected tragedy.

8

27.     When Mr. Beverly informed Ms. Luo of his intent to take FMLA leave, Ms. Luo mentioned that Mr. Beverly could extend his PLOA beyond the original 6-month period, as long as he agreed to continue checking in with her every 30 days, and as long as the company did not have enough work for him to justify his return to the office.

28.     Mr. Beverly stated that he instead intended to return to work to apply to take FMLA leave to care for his wife, as she was in treatment for conditions related to emotional distress, which were exacerbated by the death in the family.

29.     Ms. Luo responded by asking Mr. Beverly to call her back at her desk later that week to further discuss Mr. Beverly's plan to return to work and then take FMLA leave. Mr. Beverly did call her back, as requested, two days later, on or about July 29, 2015.

30.     During the July 29, 2015 call Ms. Luo informed Mr. Beverly that she could see from her caller ID on her phone that he was calling her from outside the United States, which was not true, but she nevertheless instructed Mr. Beverly to call her back on a conference call dial-in line and ended the call before he had the time to respond that he was calling from Chicago, Illinois.

31.     When Mr. Beverly called her back on that conference call line, she was joined by Mr. Kevin Mason, who worked for Abbott's Human Resources Department in Columbus, Ohio. Mr. Mason then informed Mr. Beverly that his employment was being terminated and someone had been hired to take his position. When Mr. Beverly questioned the termination and the timing— occurring over the phone when he was dealing with a family emergency and death in the family— Mr. Mason told him he could wait to return company property until after he returned from dealing with the death overseas. Ms. Luo and Mr. Mason then ended the call.

32.     Mr. Beverly was shocked that his employment had been so swiftly terminated, and therefore attempted to send an email to Ms. Luo and Mr. Mason to request written confirmation

9

that his employment had been terminated. Upon doing so, Mr. Beverly learned that his company email account had already been deactivated. Mr. Beverly used his personal email account to send emails to Mr. Mason's work email address, and Ms. Luo's work and personal email addresses, to request that written confirmation. Though Mr. Beverly received confirmation that his emails to those individuals were read, neither Mr. Mason nor Ms. Luo replied to his emails.

33.     When she terminated his employment, Ms. Luo cited that Mr. Beverly was fired for not coming to work, such that the company needed to hire someone to do all the work that was not being done in his absence, despite the fact that she had just days earlier told him that he could remain on leave because there was insufficient work for him to do.

34.     On or about July 29, 2015, non-African-American Mr. Tsai was hired from outside the company to replace Mr. Beverly.

35.     Ms. Luo would have needed only to request that Mr. Beverly return to work when he asked her if she needed him to return. He only took the PLOA because he believed he was not being assigned sufficient work in the first place. Had he been advised that there was work for him to complete, he would have gladly returned to work at Abbott. However, Ms. Luo did just the opposite. She repeatedly reassured him that his absence was approved to lull him into believing that his job was secure, while at the same time actively seeking a replacement for Mr. Beverly behind his back.

36.     Mr. Beverly filed a Charge of Discrimination with the IDHR on December 30, 2015 via the dual-filing mechanism. On or about July 22, 2016, the IDHR issued Mr. Beverly a Right to Sue Letter for the violation of his rights according to the Illinois Human Rights Act, 775 ILCS § 5/1-101 *et seq.*

37.     Mr. Beverly filed his 3-count Verified Complaint against Abbott Laboratories on October 24, 2016, alleging discrimination on the basis of race and age, and retaliation, all in violation of the Illinois Human Rights Act, in the Circuit Court of Cook County, Illinois.

38.     The case was later transferred to the Circuit Court of Lake County, Illinois.

39.     Mr. Beverly later filed a Motion for Voluntary Dismissal. That Motion was granted on July 13, 2017, and the claims in that case were dismissed without prejudice. Those state law claims, over which this Court has supplemental jurisdiction, are therefore eligible to be refiled within a one-year period, pursuant to 735 ILCS § 5/13-217.

## COUNT I – INTERFERENCE WITH RIGHTS UNDER THE FMLA

40.     Mr. Beverly restates and reasserts the allegations of paragraphs 1 through 39 as if fully restated herein.

41.     The FMLA allows an employee to take unpaid leave for specific family and medical reasons. The employee can take up to 12 weeks of such leave in a one-year period, during which the employee's job will be protected and after which the employee will be allowed to return to work. 29 U.S.C. § 2601, *et seq.*

42.     Abbott is an employer subject to the FMLA because it is a company having more than 50 employees. 29 U.S.C. § 2611(4).

43.     Mr. Beverly was a covered employee eligible to take FMLA leave in July 2015 because he had worked for the company for more than a year, had worked in excess of 1,250 hours during the previous 12 months, and more than 50 employees worked in his office or within 75 miles of his office. 29 U.S.C. § 2611(2)(A) & (4).

44.     Mr. Beverly informed Defendant of his intention to take leave permitted under the FMLA to care for his wife as she underwent treatment for her serious health conditions, following

an unexpected death in the family on or about July 27, 2015, thus making him eligible for FMLA protections. *See* 29 U.S.C. § 2612(a)(1)(C).

45.     Mr. Beverly's wife was being treated for depression and other related emotional conditions as of July 27, 2015, when she learned of the unexpected and tragic death in her family.

46.     Mr. Beverly's wife's depression and other related emotional conditions qualify as a serious health condition under the FMLA as her physical and mental condition involved continuing treatment by a health care provider. 29 U.S.C. § 2611(6) & (11).

47.     Mr. Beverly provided appropriate notice of his intention to take FMLA leave as he informed the company, via telephone conference with his supervisor, Ms. Luo, of his intention on the same day he learned of the circumstances that precipitated the leave. Given the circumstances, the leave was not foreseeable, but Mr. Beverly provided notice of his intent to take FMLA leave as soon as it was possible and practical to do so.

48.     An employer violates an employee's rights under the FMLA by interfering with an employee's right to take leave under the statute.

49.     An employer interferes with an employee's rights under the FMLA by discouraging him from taking such leave, by not giving him such leave, and by terminating his employment following an attempt to take such leave to prevent the employee from using FMLA leave.

50.     Ms. Luo, on behalf of Defendant, attempted to discourage Mr. Beverly from taking the FMLA leave afforded to him by law by encouraging him to instead extend his PLOA—under which his job would not have been protected by federal law—before that personal leave was due to expire or be renewed. Such action constitutes interference with Mr. Beverly's rights under the FMLA.

51.     Mr. Beverly informed Defendant that he intended to take FMLA leave because he anticipated that the care for his wife's serious health condition would extend beyond the time that remained from his PLOA, but Mr. Beverly was never given the chance to take such leave, which constitutes interference with his rights under the FMLA.

52.     Merely a couple days after Mr. Beverly advised Defendant that he would be taking FMLA leave, his employment was terminated, which constitutes interference with his rights under the FMLA.

53.     Defendant acted with reckless disregard for Mr. Beverly's rights under the FMLA in interfering with Mr. Beverly's rights under the FMLA, as Defendant and/or its employees knew that interfering with his rights under the FMLA may violate federal law.

54.     As a result of Defendant's interference with Mr. Beverly's rights under the FMLA, Defendant violated the FMLA. From that violation, Mr. Beverly sustained substantial damages, including loss of back pay and front pay, liquidated damages, and attorney's fees and costs.

**WHEREFORE,** for the foregoing reasons, Plaintiff Henry Beverly respectfully requests the entry of a judgment in his favor and against Defendant Abbott, as follows:

A.      An award of back pay for the wages, salary, and benefits Mr. Beverly lost as a result of Defendant Abbott's interference with Mr. Beverly's rights under the FMLA, in an amount to be proven at trial;

B.      An award of front pay for the wages, salary, and benefits Mr. Beverly will lose in the future as a result of Defendant Abbott's interference with Mr. Beverly's rights under the FMLA, in an amount to be proven at trial;

C. An award of liquidated damages for Defendant Abbott's reckless disregard for Plaintiff's federally-protected rights in interfering with his rights under the FMLA, in an amount to be proven at trial;

D. An order granting injunctive relief against Defendant Abbott to ensure than the company does not interfere with employees' rights under the FMLA in the future;

E. An award of pre-judgment interest, and of post-judgment interest pursuant to 28 U.S.C. § 1961;

F. Attorney's fees and costs in an amount to be proven at trial; and

G. Such other, further, and additional relief as this Court deems just in law and in equity.

**COUNT II – RETALIATION FOR ATTEMPTED
EXERCISE OF RIGHTS UNDER THE FMLA**

55. Mr. Beverly restates and reasserts the allegations of paragraphs 1 through 54 as if fully restated herein.

56. The FMLA allows an employee to take unpaid leave for specific family and medical reasons. The employee can take up to 12 weeks of such leave in a one-year period, during which the employee's job will be protected and after which the employee will be allowed to return to work. 29 U.S.C. § 2601, *et seq.*

57. Abbott is an employer subject to the FMLA because it is a company having more than 50 employees. 29 U.S.C. § 2611(4).

58. Mr. Beverly was a covered employee eligible to take FMLA leave in July 2015 because he had worked for the company for more than a year, had worked in excess of 1,250 hours

during the previous 12 months, and more than 50 employees worked in his office or within 75 miles of his office. 29 U.S.C. § 2611(2)(A) & (4).

59.     Mr. Beverly informed Defendant of his intention to take leave permitted under the FMLA to care for his wife as she underwent treatment for her serious health conditions, following an unexpected death in the family on or about July 27, 2015, thus making him eligible for FMLA protections. *See* 29 U.S.C. § 2612(a)(1)(C).

60.     Mr. Beverly's wife was being treated for depression and other related emotional conditions as of July 27, 2015, when she learned of the unexpected and tragic death in her family.

61.     Mr. Beverly's wife's depression and other related emotional conditions qualify as a serious health condition under the FMLA as her physical and mental condition involved continuing treatment by a health care provider. 29 U.S.C. § 2611(6) & (11).

62.     Mr. Beverly provided appropriate notice of his intention to take FMLA leave as he informed the company, via telephone conference with his supervisor, Ms. Luo, of his intention on the same day he learned of the circumstances that precipitated the leave. Given the circumstances, the leave was not foreseeable, but Mr. Beverly provided notice of his intent to take FMLA leave as soon as it was possible and practical to do so.

63.     When Mr. Beverly informed Defendant that he would be taking FMLA leave, he was engaging in protected activity, as it is defined in federal employment law.

64.     Merely a couple of days after Mr. Beverly advised Defendant that he would be taking FMLA leave, his employment was terminated.

65.     When Mr. Beverly's employment was terminated, Defendant took a materially adverse employment action against Mr. Beverly.

15

66. Mr. Beverly's protected activity—his attempt to take FMLA leave—was a motivating factor in Abbott's decision to take materially adverse action against Mr. Beverly and to terminate his employment, in that it was a reason why his employment was terminated.

67. Other similarly situated employees who did not attempt to take FMLA leave were not terminated.

68. Defendant acted with reckless disregard for Mr. Beverly's rights under the FMLA in retaliating against Mr. Beverly for his attempted exercise of his rights under the FMLA, as Defendant and/or its employees knew that retaliating against Mr. Beverly for his attempted exercise of his rights under the FMLA may violate federal law.

69. As a result of Defendant's retaliation against Mr. Beverly for his attempted exercise of his rights under the FMLA, Defendant violated the FMLA. From that violation, Mr. Beverly sustained substantial damages, including loss of back pay and front pay, liquidated damages, and attorney's fees and costs.

**WHEREFORE,** for the foregoing reasons, Plaintiff Henry Beverly respectfully requests the entry of a judgment in his favor and against Defendant Abbott, as follows:

A. An award of back pay for the wages, salary, and benefits Mr. Beverly lost as a result of Defendant Abbott's retaliation against Mr. Beverly for his attempted exercise of his rights under the FMLA, in an amount to be proven at trial;

B. An award of front pay for the wages, salary, and benefits Mr. Beverly will lose in the future as a result of Defendant Abbott's retaliation against Mr. Beverly for his attempted exercise of his rights under the FMLA, in an amount to be proven at trial;

16

C. An award of liquidated damages for Defendant Abbott's reckless disregard for Plaintiff's federally-protected rights in retaliating against Mr. Beverly for his attempted exercise of his rights under the FMLA, in an amount to be proven at trial;

D. An order granting injunctive relief against Defendant Abbott to ensure than the company does not retaliate against employees for exercising their rights under the FMLA in the future;

E. An award of pre-judgment interest, and of post-judgment interest pursuant to 28 U.S.C. § 1961;

F. Attorney's fees and costs in an amount to be proven at trial; and

G. Such other, further, and additional relief as this Court deems just in law and in equity.

## COUNT III – DISCRIMINATION ON THE BASIS OF RACE
### (in Violation of the Illinois Human Rights Act, 775 ILCS § 5/1-101 *et seq.*)

70. Mr. Beverly restates and reasserts the allegations of paragraphs 1 through 69 as if fully restated herein.

71. Mr. Beverly worked for Abbott from 2006 through his termination on or about July 29, 2015. At all times relevant to Complaint, Abbott was a corporation doing business in Illinois, and employing 500 or more individuals.

72. Mr. Beverly is an African-American.

73. Mr. Beverly sought additional training opportunities that were denied to him, but which were granted to similarly situated co-workers who were not African-Americans.

74. Mr. Beverly's job duties were retracted, gradually, until he had virtually no job duties as of late January 2015.

17

75.     While he was on PLOA granted to him by Abbott, his supervisor, who was not African-American, assured him that his position was secure while she interviewed candidates to replace him, and hired someone to replace him who was not African-American and who had not filed a Charge of Discrimination against Abbott, while also insisting that he could remain on his leave, as he was not needed to perform work in his office. Once his replacement was ready to assume his role, Mr. Beverly's employment was terminated. Mr. Beverly's co-workers who were not African-American were not subjected to the same treatment.

76.     At the time his employment was terminated, Ms. Luo informed him that he was terminated for failure to come to the office and perform the duties assigned to him, despite the fact that she had assured him that his leave was approved and his job was secure and had already re-assigned all of his duties to other Abbott employees. Mr. Beverly's co-workers who were not African-American were not subjected to the same treatment.

77.     Mr. Beverly was treated differently than similarly situated Abbott employees who were not African-American, and was thus a victim of unlawful discrimination in employment on the basis of his race, in violation of Sections 5/1-103(Q) and 5/2-102(A) of the Illinois Human Rights Act.

78.     As a result of the unlawful discrimination on the basis of race to which Mr. Beverly was subjected to by Abbott, he suffered substantial damages including, without limitation, lost wages and benefits, pain and suffering, adverse effects on his future career and earnings, and attorneys' fees and costs.

**WHEREFORE**, Plaintiff Henry Beverly respectfully requests the entry of a judgment in his favor and against Defendant Abbott, as follows:

A.    An award of compensatory damages, including pain and suffering and loss of earnings potential, in an amount to be proven at trial;

B.    Punitive damages;

C.    Restoration of Mr. Beverly's retirement and other benefits from the time of the termination of his employment through the date of his expected retirement from Abbott;

D.    An award of pre- and post-judgment interest, computed according to 735 ILCS § 5/2-1303;

E.    Attorney's fees and costs; and

F.    Such other, further, and additional relief as this Court deems just in law and in equity.

## COUNT IV – DISCRIMINATION ON THE BASIS OF AGE
### (in Violation of the Illinois Human Rights Act, 775 ILCS § 5/1-101 *et seq.*)

79.    Mr. Beverly restates and reasserts the allegations of paragraphs 1 through 78 as if fully restated herein.

80.    Mr. Beverly worked for Abbott from 2006 through his termination on or about July 29, 2015. At all times relevant to this Verified Complaint, Abbott was a corporation doing business in Illinois, and employing 500 or more individuals.

81.    Mr. Beverly was 50 years old at the time his employment was terminated by Abbott.

82.    Mr. Beverly sought additional training opportunities that were denied to him, but which were granted to similarly situated co-workers who were younger than age 40.

83.    Mr. Beverly's job duties were retracted, gradually, until he had virtually no job duties as of late January 2015.

84.     While he was on PLOA granted to him by Abbott, his supervisor assured him that his position was secure while she interviewed candidates to replace him, and hired someone to replace him who was younger than age 40 and who had not filed a Charge of Discrimination against Abbott, while also insisting that he could remain on and even extend his leave, as he was not needed to perform work in his office. Once his younger replacement was ready to assume his role, Mr. Beverly's employment was terminated. Mr. Beverly's co-workers who were younger were not subjected to the same treatment.

85.     At the time his employment was terminated, Ms. Luo informed him that he was terminated for failure to come to the office and perform the duties assigned to him, despite the fact that she had assured him that his leave was approved and his job was secure and had already re-assigned all of his duties to other Abbott employees. Mr. Beverly's co-workers who were younger than age 40 were not subjected to the same treatment.

86.     Mr. Beverly was treated differently than similarly situated Abbott employees who were younger than age 40, and was thus a victim of unlawful discrimination in employment on the basis of his age, in violation of Sections 5/1-103(A), (Q) and 5/2-102(A) of the Illinois Human Rights Act.

87.     As a result of the unlawful discrimination on the basis of age to which Mr. Beverly was subjected to by Abbott, he suffered substantial damages including, without limitation, lost wages and benefits, pain and suffering, adverse effects on his future career and earning, and attorneys' fees and costs.

**WHEREFORE**, Plaintiff Henry Beverly respectfully requests the entry of a judgment in his favor and against Defendant Abbott, as follows:

20

A.      An award of compensatory damages, including pain and suffering, in an amount to be proven at trial;

B.      Punitive damages;

C.      Restoration of Mr. Beverly's retirement and other benefits from the time of the termination of his employment through the date of his expected retirement from Abbott;

D.      An award of pre- and post-judgment interest, computed according to 735 ILCS § 5/2-1303;

E.      Attorney's fees and costs; and

F.      Such other, further, and additional relief as this Court deems just in law and in equity.

### COUNT V – RETALIATION FOR OPPOSING UNLAWFUL CONDUCT
### (in Violation of the Illinois Human Rights Act, 775 ILCS § 5/1-101 *et seq.*)

88.     Mr. Beverly restates and reasserts the allegations of paragraphs 1 through 87 as if fully restated herein.

89.     Mr. Beverly had a good faith belief that both he and his wife were victims of unlawful discrimination and retaliation which were the subject of a prior lawsuit. He assisted and participated in the investigation of his wife's claims, and filed a Charge of Discrimination of his own, prior to filing the initial lawsuit.

90.     Mr. Beverly also had a good faith belief that his wife was a victim of sexual harassment in her workplace, and assisted and participated in that investigation as well.

91.     While the U.S. District Court for the Northern District of Illinois was considering his claims, Mr. Beverly's job duties were gradually removed from him, until he had virtually no job duties by the end of January 2015.

21

92.     As he had no work to perform, Mr. Beverly took a PLOA, similar to leaves of absence taken by other Abbott employees for a variety of reasons. While on that leave, he performed his sole responsibility to remain in contact with his supervisor, Ms. Luo, and to periodically confirm that he was not needed to return to work to perform work assigned to him.

93.     While on his PLOA, and indeed at around the same time when she was assuring Mr. Beverly that his job was secure and advising him that his leave could be extended before it was even due to conclude, Ms. Luo was simultaneously searching for and interviewing possible replacements for Mr. Beverly. Once she found a replacement, she terminated Mr. Beverly's employment.

94.     At the time that Mr. Beverly's employment was terminated, he was told that the reason for the termination was a failure to perform his assigned job duties, despite the fact that Ms. Luo had assured him that his leave was approved and his job was secure, and that his job duties were significantly retracted in the last 6 months he was employed at Abbott.

95.     Mr. Beverly's job duties were taken from him and assigned to others, and he was ultimately terminated, in retaliation for assisting and participating in the investigation of his wife's claims of discrimination, sexual harassment, and retaliation against Abbott, and in retaliation for filing his own claims of discrimination and retaliation against Abbott.

96.     In retaliating against Mr. Beverly for opposing what he reasonably and in good faith believed to be unlawful conduct by Abbott, Abbott violated Section 5/6-101(A) of the Illinois Human Rights Act.

97.     As a result of the unlawful retaliation Mr. Beverly was subjected to by Abbott, he suffered substantial damages including, without limitation, lost wages and benefits, pain and suffering, adverse effects on his future career and earning, and attorneys' fees and costs.

**WHEREFORE**, Plaintiff Henry Beverly respectfully requests the entry of a judgment in his favor and against Defendant Abbott, as follows:

A.      An award of compensatory damages, including pain and suffering, in an amount to be proven at trial;

B.      Punitive damages;

C.      Restoration of Mr. Beverly's retirement and other benefits from the time of the termination of his employment through the date of his expected retirement from Abbott;

D.      An award of pre- and post-judgment interest, computed according to 735 ILCS § 5/2-1303;

E.      Attorney's fees and costs; and

F.      Such other, further, and additional relief as this Court deems just in law and in equity.

### COUNT VI – DISCRIMINATION ON THE BASIS OF RACE
### (in Violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981)

98.     Mr. Beverly restates and reasserts the allegations of paragraphs 1 through 97 as if fully restated herein.

99.     Mr. Beverly worked for Abbott from 2006 through his termination on or about July 29, 2015. At all times relevant to Complaint, Abbott was a corporation doing business in Illinois, and employing 500 or more individuals.

100.    Mr. Beverly is an African-American.

101.    Mr. Beverly sought additional training opportunities that were denied to him.

102.    Mr. Beverly's race contributed to Defendant's decision to deny him additional training opportunities, in that his race played a role and/or was a determinative factor in Defendant's decision.

103.    Mr. Beverly's job duties were retracted, gradually, until he had virtually no job duties as of late January 2015.

104.    Mr. Beverly's race contributed to Defendant's decision to gradually retract his job duties until he had virtually no job duties as of late January 2015, in that his race played a role and/or was a determinative factor in Defendant's decision.

105.    While he was on PLOA granted to him by Abbott, his supervisor, who was not African-American, assured him that his position was secure while she interviewed candidates to replace him, and hired someone to replace him who was not African-American and who had not filed a Charge of Discrimination against Abbott, while also insisting that he could remain on his leave, as he was not needed to perform work in his office. Mr. Beverly's employment was subsequently terminated.

106.    Mr. Beverly's race contributed to Defendant's decisions to assure him his position was secure while interviewing candidates to replace him, to hire a non-African-American to replace him who had not filed a Charge of Discrimination against Abbott, and to subsequently terminate his employment, in that his race played a role and/or was a determinative factor in Defendant's decisions.

107.    At the time his employment was terminated, Ms. Luo informed him that he was terminated for failure to come to the office and perform the duties assigned to him, despite the fact that she had assured him that his leave was approved and his job was secure and had already re-assigned all of his duties to other Abbott employees. This rationale was merely pretextual.

24

108.    Mr. Beverly was thus a victim of unlawful discrimination in employment on the basis of his race, in violation of Section 1981.

109.    Defendant discriminated against Mr. Beverly, on the basis of his race, with malice or reckless indifference.

110.    As a result of the unlawful discrimination on the basis of race to which Mr. Beverly was subjected by Abbott, he suffered substantial damages including, without limitation, back pay in the form of lost wages and benefits, compensatory damages in the form of pain and suffering, emotional distress, and mental anguish, and attorneys' fees and costs.

**WHEREFORE**, Plaintiff Henry Beverly respectfully requests the entry of a judgment in his favor and against Defendant Abbott, as follows:

A.      An award of back pay to cover Mr. Beverly's lost wages and benefits, in an amount to be proven at trial;

B.      An award of compensatory damages, including pain and suffering, emotional distress, and mental anguish, in an amount to be proven at trial;

C.      An award of punitive damages in an amount to be proven at trial;

D.      An order granting injunctive relief against Defendant Abbott to ensure than the company does not discriminate against employees on the basis of race in the future;

E.      Attorney's fees and costs; and

F.      Such other, further, and additional relief as this Court deems just in law and in equity.

## COUNT VII – RETALIATION FOR OPPOSING UNLAWFUL CONDUCT
### (in Violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981)

111.     Mr. Beverly restates and reasserts the allegations of paragraphs 1 through 110 as if fully restated herein.

112.     Mr. Beverly had a reasonable, good faith belief that he was a victim of unlawful discrimination on the basis of his race, and that his rights to be free from racial discrimination were violated, in connection with his prior lawsuit. He assisted and participated in the investigation of his Charge of Discrimination, prior to filing the initial lawsuit.

113.     While the U.S. District Court for the Northern District of Illinois was considering his claims of racial discrimination, Mr. Beverly's job duties were gradually removed from him, until he had virtually no job duties by the end of January 2015.

114.     As he had no work to perform, Mr. Beverly took a PLOA, similar to leaves of absence taken by other Abbott employees for a variety of reasons. While on that leave, he performed his sole duty to remain in contact with his supervisor, Ms. Luo, and to periodically confirm that he was not needed to return to work to perform tasks assigned to him.

115.     While on his PLOA, and indeed at around the same time when she was assuring Mr. Beverly that his job was secure and advising him that his leave could be extended before it was even due to conclude, Ms. Luo was simultaneously searching for and interviewing possible replacements for Mr. Beverly. Once she found a replacement, she terminated Mr. Beverly's employment.

116.     The termination of Mr. Beverly's employment represented a materially adverse employment action.

26

117.     There is a causal connection between Mr. Beverly's filing of claims of racial discrimination and retaliation against Abbott and the termination of his employment.

118.     At the time that Mr. Beverly's employment was terminated, he was told that the reason for the termination was a failure to perform his assigned job duties, despite the fact that Ms. Luo had assured him that his leave was approved and his job was secure, and that his job duties were significantly retracted in the last 6 months he was employed at Abbott.

119.     Mr. Beverly's job duties were taken from him and assigned to others, and he was ultimately terminated, in retaliation for filing his claims of racial discrimination and retaliation against Abbott.

120.     In retaliating against Mr. Beverly for opposing what he reasonably and in good faith believed to be unlawful racial discrimination and retaliation by Abbott, Abbott violated Section 1981.

121.     As a result of the unlawful retaliation to which Mr. Beverly was subjected by Abbott for filing complaints of racial discrimination and retaliation, he suffered substantial damages including, without limitation, back pay in the form of lost wages and benefits, compensatory damages in the form of pain and suffering, emotional distress, and mental anguish, and attorneys' fees and costs.

**WHEREFORE**, Plaintiff Henry Beverly respectfully requests the entry of a judgment in his favor and against Defendant Abbott, as follows:

A.     An award of back pay to cover Mr. Beverly's lost wages and benefits, in an amount to be proven at trial;

B.     An award of compensatory damages, including pain and suffering, emotional distress, and mental anguish, in an amount to be proven at trial;

27

C.      An award of punitive damages in an amount to be proven at trial;

D.      An order granting injunctive relief against Defendant Abbott to ensure than the company does not retaliate against employees for filing complaints of racial discrimination and retaliation in the future;

E.      Attorney's fees and costs; and

F.      Such other, further, and additional relief as this Court deems just in law and in equity.

## JURY DEMAND

Plaintiff demands trial by jury on all issues so triable.


                                        Respectfully submitted,

**Dated**: July 31, 2017                **HENRY BEVERLY**

                                        /s/ Ruth I. Major
                                        One of His Attorneys


Ruth I. Major (ARDC No. 6205049)
Daniel R. Broadwell (ARDC No. 6299177)
The Law Offices of Ruth I. Major, P.C.
30 West Monroe Street
Suite 1650
Chicago, Illinois 60603
Phone: (312) 893-7544
rmajor@major-law.com
dbroadwell@major-law.com

28