**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| HENRY BEVERLY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 17-cv-5590 |
| vs. | ) | |
| | ) | Judge Sara L. Ellis |
| ABBOTT LABORATORIES, VICTORIA LUO, | ) | |
| | ) | Magistrate Judge Jeffrey Cole |
| Defendants. | ) | |
| | ) | |

**DEFENDANTS' MOTIONS *IN LIMINE***

Defendants Abbott Laboratories and Victoria Luo respectfully submit the following Motions in Limine. The parties conferred by phone on these Motions on August 3, 2021, November 15, 2021, and December 22, 2021. The parties have agreed to the Agreed Motions in Limine #1-4 herein. The parties dispute Defendants' Disputed Motion in Limine #1-16 herein. These motions are based on the incorporated memorandum of law, all accompanying exhibits, the pleadings and papers on file in this action, and any oral argument the Court may request.

## <u>TABLE OF CONTENTS</u>

<u>Agreed Motions in Limine</u>

AGREED MOTION IN LIMINE #1: MOTION TO EXCLUDE ARGUMENT,
EVIDENCE, AND TESTIMONY RELATING TO LOST WAGES, BACK PAY, AND
FRONT PAY ........................................................................................................ 1

AGREED MOTION IN LIMINE #2: MOTION TO EXCLUDE ANY ARGUMENT,
TESTIMONY OR EVIDENCE ABOUT UNDERLYING EEOC OR DOL FINDINGS OR
RIGHT-TO-SUE LETTERS.................................................................................. 2

AGREED MOTION IN LIMINE #3: GOLDEN RULE ............................................. 3

AGREED MOTION IN LIMINE #4: MOTION TO EXCLUDE TESTIMONY OR
EVIDENCE REFERENCING ABSENCE OF WITNESSES........................................ 4

<u>Disputed Motions in Limine</u>

DISPUTED MOTION IN LIMINE #1: MOTION TO BIFURCATE LIABILITY AND
PUNITIVE DAMAGES PORTIONS OF CASE AND TO EXCLUDE ANY
ARGUMENT, TESTIMONY OR EVIDENCE PERTAINING TO ABBOTT
LABORATORIES' FINANCIAL CONDITION UNTIL PUNITIVE DAMAGES PHASE,
IF ANY .............................................................................................................. 5

DISPUTED MOTION IN LIMINE #2: MOTION TO EXCLUDE ARGUMENT AND
EVIDENCE RELATING TO DISCRIMINATION, CONSTRUCTIVE DISCHARGE,
RETALIATION, AND OTHER CLAIMS DISMISSED ON SUMMARY JUDGMENT........... 9

DISPUTED MOTION IN LIMINE #3: MOTION TO EXCLUDE ARGUMENT AND
EVIDENCE RELATING TO LEGAL CLAIMS AND ALLEGATIONS IN PRIOR
LAWSUIT BROUGHT BY PLAINTIFF AND HIS WIFE AGAINST ABBOTT ..................... 14

DISPUTED MOTION IN LIMINE #4: MOTION TO EXCLUDE ARGUMENT AND
EVIDENCE REGARDING MARTINA BEVERLY'S ALLEGED WORK
EXPERIENCES AT ABBOTT................................................................................. 21

DISPUTED MOTION IN LIMINE #5: MOTION TO EXCLUDE ANY REFERENCE TO
MARTINA BEVERLY'S CONFIDENTIAL SETTLEMENT....................................... 24

DISPUTED MOTION IN LIMINE #6: MOTION IN LIMINE TO BAR STAN SMITH'S
& KEITH MOGLOWSKY'S TESTIMONY DUE TO UNTIMELY AUGUST 2020
REPORTS .......................................................................................................... 27

DISPUTED MOTION IN LIMINE #7: MOTION IN LIMINE TO EXCLUDE STAN
SMITH'S TESTIMONY AS UNRELIABLE AND CONTRARY TO LAW ............................. 34

74668425v.3

DISPUTED MOTION IN LIMINE #8: MOTION IN LIMINE TO EXCLUDE KEITH MOGLOWSKY'S TESTIMONY AS UNRELIABLE AND CONTRARY TO LAW ............... 45

DISPUTED MOTION IN LIMINE #9: MOTION IN LIMINE LIMITING SMITH AND MOGLOWSKY TO OPINIONS REGARDING DEFAMATION, IF NOT BARRED ENTIRELY ........................................................................................................................ 60

DISPUTED MOTION IN LIMINE #10: MOTION TO EXCLUDE EVIDENCE AND TESTIMONY CONCERNING COMPLAINTS AND CLAIMS BY OTHER EMPLOYEES AGAINST ABBOTT ........................................................................................ 64

DISPUTED MOTION IN LIMINE #11: MOTION TO EXCLUDE ARGUMENT OR TESTIMONY REFERRING TO "HARASSMENT" OR "HOSTILE WORK ENVIRONMENT," OR CHARACTERIZING ANY STATEMENTS OR CONDUCT AS SUCH .................................................................................................................................. 66

DISPUTED MOTION IN LIMINE #12: MOTION TO EXCLUDE HEARSAY AND TESTIMONY LACKING FOUNDATION ABOUT ALLEGED REDUCTION IN PLAINTIFF'S JOB RESPONSIBILITIES .................................................................................. 68

DISPUTED MOTION IN LIMINE #13: MOTION TO EXCLUDE ANY TESTIMONY REGARDING PLAINTIFF'S OR NON-SUPERVISORY CO-WORKERS' OPINIONS OF PLAINTIFF'S JOB PERFORMANCE .................................................................................. 71

DISPUTED MOTION IN LIMINE #14: MOTION TO EXCLUDE ANY SPECULATIVE TESTIMONY THAT LUO'S SECURITY REPORT ABOUT PLAINTIFF WAS OR COULD BE COMMUNICATED TO ANYONE OUTSIDE ABBOTT ..................................... 73

DISPUTED MOTION IN LIMINE #15: MOTION TO EXCLUDE ANY REFERENCE BY BEVERLY TO ABBOTT JOBS ALLEGEDLY APPLIED FOR AND NOT RECEIVED ........................................................................................................................ 75

DISPUTED MOTION IN LIMINE #16: MOTION TO EXCLUDE ANY ARGUMENT OR  EVIDENCE BY PLAINTIFF OR PLAINTIFF'S COUNSEL RELATING TO DEFENSE COUNSEL'S LAW FIRM OR THE NUMBER OF ATTORNEYS APPEARING FOR DEFENDANTS AT TRIAL ......................................................................... 76

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abbott v. Lockheed*,
No. 06-CV-0701-MJR-DGW, 2014 WL 6613148 (S.D. Ill. Nov. 21, 2014) .........................75

*Adams Lab'ys, Inc. v. Jacobs Eng'g Co.*,
761 F.2d 1218 (7th Cir. 1985) ....................................................................................6

*Alpex Comput. Corp. v. Nintendo Co.*,
770 F. Supp. 161 (S.D.N.Y. 1991) ...........................................................................25

*Ammons v. Aramark Unif. Servs., Inc.*,
368 F.3d 809 (7th Cir. 2004) ....................................................................................73

*Andersen v. City of Chicago*,
454 F. Supp. 3d 740 (N.D. Ill. 2020) .......................................................................50

*Arrigo v. Link*,
836 F.3d 787 (7th Cir. 2016) ......................................................................................5

*Artunduaga v. Univ. of Chi. Med. Ctr.*,
2016 WL 7157352 (N.D. Ill. Dec. 8, 2016).........................................................9, 10

*In re Asbestos Prod. Liab. Litig. (No. VI)*,
289 F.R.D. 424 (E.D. Pa. 2013)...............................................................................30

*Baker v. Indian Prairie Cmty. Unit, Sch. Dist. 204*,
No. 96 C 3927, 1999 WL 988799 (N.D. Ill. Oct. 27, 1999) ....................................30

*Bello v. Vill. of Skokie*,
No. 14 C 1718, 2014 WL 4344391 (N.D. Ill. Sept. 2, 2014)......................................5

*Beverly et al. v. Abbott Laboratories Inc.*,
Case No. 1:12-cv-03216, N.D. Ill., Doc. 1 .......................................14, 19, 21, 26

*Beverly v. Abbott Laboratories*,
817 F.3d 328 (7th Cir. 2016) ..............................................................................24, 26

*Blech Sec. Litig.*,
No. 94-7696, 2003 WL 1610775 (S.D.N.Y. Mar. 26, 2003)....................................24

*Brown & Williamson v. Jacobson*,
827 F.2d 1119 (7th Cir. 1987) ..........................................................42, 43, 57, 58

74668425v.3

*Buonanoma v. Sierra Pac. Power Co.*,
  No. 3:04-CV-0077-LRH-VPC, 2010 WL 3724254 (D. Nev. Sept. 16, 2010) .......................22

*Burks v. Wis. Dep't of Transp.*,
  464 F.3d 744 (7th Cir. 2006) ................................................................................71

*Cage v. City of Chicago*,
  979 F. Supp. 2d 787 (N.D. Ill. 2013) ....................................................................54

*Carter Coal Co. v. Hum. Rts. Comm'n*,
  633 N.E.2d 202 (Ill. App. 1994) ...........................................................................14

*In re Complaint of C.F. Bean L.L.C.*,
  841 F.3d 365 (5th Cir. 2016) ................................................................................30

*Conway v. Adrian Carriers, LLC*,
  No. 15-01137-DRH, 2018 WL 11275731 (S.D. Ill. Jan. 31, 2018)........................77

*Council 31 v. Ward*,
  No. 87 C 356, 1995 WL 549022 (N.D. Ill. Sept. 12, 1995)...................................30

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
  509 U.S. 579 (1993)........................................................................... *passim*

*Deputy v. Lehman Bros., Inc.*,
  345 F.3d 494 (7th Cir. 2003) ...........................................................................36, 47

*Dhillon v. Crown Controls Corp.*,
  269 F.3d 865 (7th Cir. 2001) ...........................................................................40, 56

*Dinsay v. RN Staff Inc.*,
  No. 119CV00907TWPDML, 2021 WL 2643639 (S.D. Ind. June 28, 2021) ....................3, 77

*In re Dollie's Playhouse, Inc.*,
  481 F.3d 998 (7th Cir. 2007) ................................................................................18

*Dryanski v. Sloan Valve Co.*,
  1986 WL 6951 (N.D. Ill. June 11, 1986), *on reconsideration*, 1986 WL 12002
  (N.D. Ill. Oct. 16, 1986)........................................................................................71

*Dura Auto. Sys. of Indiana, Inc. v. CTS Corp.*,
  285 F.3d 609 (7th Cir. 2002) ................................................................................33

*E.E.O.C. v. Rockwell Int'l Corp.*,
  60 F. Supp. 2d 791 (N.D. Ill. 1999) .....................................................................40

*Eaton v. J. H. Findorff & Son, Inc.*,
  1 F.4th 508 (7th Cir. 2021) ...................................................................................15

iv

*El-Bakly v. Autozone, Inc.*,
No. 04 C 2767, 2008 WL 1774962 (N.D. Ill. Apr. 16, 2008)................................................7, 9

*Empress Casino Joliet Corp. v. Johnston*,
No. 09 C 3585, 2014 WL 6735529 (N.D. Ill. Nov. 28, 2014)................................................17

*Faniola v. Mazda Motor Corp.*,
No. CIV-02-1011 JB/RLP, 2004 WL 5522846 (D.N.M. Apr. 15, 2004).........................56, 57

*Fed. Deposit Ins. Co. v. Chi. Title Ins. Co.*,
12-cv-05198, 2017 WL 3592736 (N.D. Ill Aug. 21, 2017).....................................................24

*Fisher v. Werner Enterprises, Inc.*,
No. A:04-CV-1317-LJM-WTL, 2005 WL 6001584 (S.D. Ind. Aug. 25, 2005)....................56

*Fortier v. Ameritech Mobile Commc'ns, Inc.*,
161 F.3d 1106 (7th Cir. 1998) ................................................................................................54

*Gopalratnam v. Hewlett-Packard Co.*,
877 F.3d 771 (7th Cir. 2017) ............................................................................................35, 47

*Goswami v. DePaul Univ.*,
8 F. Supp. 3d 1019 (N.D. Ill. 2014) .......................................................................................71

*Greenfield v. Sears, Roebuck and Co.*,
U.S. Dist. Ct. No. 04-71086, 2006 WL 2927546 (E.D. Mich. Oct. 12, 2006) ......................10

*Hall v. Sterling Park Dist.*,
No. 08 C 50116, 2012 WL 1050302 (N.D. Ill. Mar. 28, 2012) ..............................................23

*Hasan v. Foley*,
552 F.3d 520 (7th Cir. 2008) ..................................................................................................22

*Helzing v. Loyola Univ. of Chi.*,
2004 WL 1881780 (N.D. Ill. Aug. 16, 2004) ........................................................................71

*Hicks v. Ass'n of Apartment Owners of Makaha Valley Plantation*,
No. 14-00254HG-KJM, 2016 WL 3856134 (D. Haw. July 13, 2016) ...................................67

*Higgins v. Moreno*,
2011 WL 2456655 (C.D. Ill. June 15, 2011) .........................................................................71

*Highway J Citizens Grp. v. U.S. Dep't of Transp.*,
456 F.3d 734 (7th Cir. 2006) ..................................................................................................19

*Hirlston v. Costco Wholesale Corporation*,
No. 117CV04699TWPMPB, 2020 WL 6047913 (S.D. Ind. Oct. 13, 2020) .........................66

v

*Houseman v. U.S. Aviation Underwriters,*
    171 F.3d 1117 (7th Cir. 1999) ...................................................................5

*Isbell v. Baxter Healthcare, Corp.,*
    273 F. Supp. 3d 965 (N.D. Ill. 2017) ........................................................72

*Isbell v. John Crane, Inc.,*
    74 F. Supp. 3d 893 (N.D. Ill. 2014) ............................................................7

*Ismail v. Cohen,*
    706 F. Supp. 243 (S.D.N.Y. 1989) ..............................................................5

*Jenkins v. Bartlett,*
    487 F.3d 482 (7th Cir. 2007) .....................................................................60

*Johnson v. Gen. Bd. of Pension & Health Benefits of United Methodist Church,*
    2012 WL 638731 (N.D. Ill. Feb. 23, 2012), *aff'd,* 733 F.3d 722 (7th Cir. 2013) ...................72

*Jones v. Nat'l Council of Young Men's Christian Associations of the United States of Am.,*
    34 F. Supp. 3d 896 (N.D. Ill. 2014) ....................................................42, 53

*Jones v. Standard Ins. Co., No. 12 C 328,*
    2013 WL 5549779 (N.D. Ill. Oct. 8, 2013)................................................66

*Kakkanathu v. Rohn Indus., Inc.,*
    No. 05-1337, 2009 WL 322236 (C.D. Ill. Feb. 9, 2009) ............................67

*Karazanos v. Navistar Int'l Transp. Corp.,*
    948 F.2d 332 (7th Cir. 1991) ...............................................................71, 72

*Kincaid v. Sangamon Cty.,*
    No. 09-CV-3053, 2015 WL 13548179 (C.D. Ill. Sept. 11, 2015) ...............76

*King v. Ford Motor Company,*
    872 F.3d 833 (7th Cir. 2017) .....................................................................65

*Kirk v. Clark Equip. Co.,*
    991 F.3d 865 (7th Cir. 2021) ...............................................35, 36, 46, 47

*Kiswani v. Phoenix Sec. Agency, Inc.,*
    247 F.R.D. 554 (N.D. Ill. 2008)................................................................73

*Krocka v. City of Chicago,*
    203 F.3d 507 (7th Cir. 2000) .......................................................................5

*LaFlamboy v. Landek,*
    No. 05 C 4994, 2009 WL 10695380 (N.D. Ill. Sept. 3, 2009).................30

74668425v.3

*Lang v. Kohl's Food Stores, Inc.*,
    217 F.3d 919 (7th Cir. 2000) ......................................................................................... *passim*

*Lapsley v. Xtek, Inc.*,
    689 F.3d 802 (7th Cir. 2012) ...........................................................................................41, 59

*Ledford v. Lamartz*,
    462 F. Supp. 3d 905 (N.D. Ind. 2020) ...............................................................................3, 10

*Makowski v. SmithAmundsen, LLC*,
    662 F.3d 818 (7th Cir. 2011) ...............................................................................................69

*McLeod v. Parsons Corp.*,
    73 F. App'x 846 (6th Cir. 2003) .......................................................................................23, 65

*Metavante Corp. v. Emigrant Sav. Bank*,
    619 F.3d 748 (7th Cir. 2010) ...........................................................................................39, 49

*Meyers v. Nat'l R.R. Passenger Corp.*,
    619 F.3d 729 (7th Cir. 2010) ...........................................................................................60, 62

*Minebea Co. v. Papst*,
    231 F.R.D. 3 (D.D.C. 2005) ..................................................................................................29

*Myatt v. City of Chi.*,
    816 F. Supp. 1259 (N.D. Ill. 1992) .......................................................................................5

*Only The First, Ltd. v. Seiko Epson Corp.*,
    822 F. Supp. 2d 767 (N.D. Ill. 2011) ...................................................................................29

*Orr v. City of Albuquerque*,
    531 F.3d 1210 (10th Cir. 2008) ............................................................................................24

*Peele v. Country Mut. Ins. Co.*,
    288 F.3d 319 (7th Cir. 2002) ...............................................................................................71

*Pluck v. BP Oil Pipeline Co.*,
    640 F.3d 671 (6th Cir. 2011) ...............................................................................................30

*Point Prods. A.G. v. Sony Music Ent., Inc.*,
    No. 93 CIV. 4001 (NRB), 2004 WL 345551 (S.D.N.Y. Feb. 23, 2004) ...............................32

*Rodriguez v. Doral Mortg. Corp.*,
    57 F.3d 1168 (1st Cir. 1995) ................................................................................................67

*Rosenberg v. Cottrell, Inc.*,
    No. 05-545-MJR, 2007 WL 2028789 (S.D. Ill. July 12, 2007) ............................................77

74668425v.3

*Sabet v. City of N. Chicago*,
No. 16-CV-10783, 2020 WL 832360 (N.D. Ill. Feb. 20, 2020) ..............................................5

*Saccameno v. Ocwen Loan Servicing, LLC.*,
No. 15 C 1164, 2018 WL 10609658 (N.D. Ill. Apr. 2, 2018)................................................65

*Salas v. Carpenter*,
980 F.2d 299 (5th Cir. 1992)), *aff'd*, 243 F.3d 1012 (7th Cir. 2001))...................................41

*Scott v. City of Sioux City, Iowa*,
96 F. Supp. 3d 876 (N.D. Iowa 2015).....................................................................................9

*Scott v. Wabash Nat'l Corp.*,
No. 4:05-CV-55, 2007 WL 9773388 (N.D. Ind. Nov. 5, 2007) ...........................................77

*Se-Kure Controls, Inc. v. Vanguard Prod. Grp., Inc.*,
No. 02 C 3767, 2007 WL 781250 (N.D. Ill. Mar. 12, 2007) ...............................................75

*Shroyer v. Kaufman*,
426 F.2d 1032 (7th Cir. 1970) ...............................................................................................3

*Smith v. Ford Motor Co.*,
215 F.3d 713 (7th Cir. 2000) ........................................................................................35, 47

*Spray-Rite Serv. Corp. v. Monsanto Co.*,
684 F.2d 1226 (7th Cir. 1982), *aff'd*, 465 U.S. 752 (1984).....................................................3

*Sprint/United Mgmt. Co. v. Mendelsohn*,
552 U.S. 379 (2008)...............................................................................................................64

*State Farm Mut. Auto. Ins. Co. v. Campbell*,
538 U.S. 408 (2003)................................................................................................................6

*Stephens v. Erickson*,
569 F.3d 779 (7th Cir. 2009) .........................................................................................15, 69

*Stratton v. Merrill Lynch Pierce Fenner & Smith, Inc.*,
No. 11 C 8011, 2012 WL 1533456 (N.D. Ill. Apr. 25, 2012)................................................5

*Sunward Corporation v. Dun & Bradstreet, Inc.*,
811 F.2d 511 (10th Cir. 1987) ..................................................................................... *passim*

*Taylor v. United Lab'ys, Inc.*,
No. 08-4053-KES, 2010 WL 3081535 (D.S.D. Aug. 6, 2010)..............................................54

*United States v. Gallardo*,
497 F.3d 727 (7th Cir. 2007) ................................................................................................49

*United States v. Hall*,
   93 F.3d 1337 (7th Cir. 1996) ................................................................54

*United States v. Mahone*,
   537 F.2d 922 (7th Cir. 1976) ................................................................4

*Vandersteen v. Kelly*,
   No. 07 C 5632, 2010 WL 659327 (N.D. Ill. Feb. 23, 2010) ...................5

*Walker v. Walker*,
   701 F.3d 1110 (7th Cir. 2012) ...............................................................24

*Widmar v. Sun Chem. Corp.*,
   772 F.3d 457 (7th Cir. 2014) ................................................................70

*Wiesneth v. Kriebs*,
   No. 13 C 4168, 2016 WL 2644790 (N.D. Ill. May 10, 2016) .................77

*Williams v. Pharmacia, Inc.*,
   137 F.3d 944 (7th Cir. 1998) ...........................................................31, 42

*Williams v. Williams Electronics*
   856 F.2d 920 (7th Cir. 1988) ................................................................72

*Winchester Packaging, Inc., Mobil Chemical Co.*,
   14 F.3d 316 (7th Cir. 1994) ..................................................................24

*Young v. James Green Mgmt., Inc.*,
   327 F.3d 616 (7th Cir. 2003) ................................................................19

*Zazu Designs v. L'Oreal*,
   S.A., 979 F.2d 499 (7th Cir. 1992) .....................................................6, 7

*Zenith Elecs. Corp. v. WH-TV Broad. Corp.*,
   395 F.3d 416 (7th Cir. 2005) ...........................................................40, 54

## AGREED MOTION IN LIMINE #1: MOTION TO EXCLUDE ARGUMENT, EVIDENCE, AND TESTIMONY RELATING TO LOST WAGES, BACK PAY, AND FRONT PAY

Plaintiff has represented to the Court that "the only employment-related economic damages [Plaintiff] seeks relate to the Abbott pension… ." (Doc. 50 at 2-3.)  After subsequent extensive briefing, the Court ruled that Plaintiff has abandoned all claims for lost wages.  (Doc. 122.)  The Court then "clarifie[d] that, although [Plaintiff] cannot pursue damages for lost wages, he may pursue damages related to his alleged loss of earnings potential in connection with his IHRA race discrimination claim (Count III) and his defamation claim (Count X)." (Doc. 135.)

Accordingly, the parties stipulate that, based on the Court's rulings, and reserving all rights to post-trial review, Plaintiff will not attempt to introduce any argument, evidence, or testimony relating to any purported back pay, front pay, or lost wages by Plaintiff and Defendant will not attempt to introduce any argument, evidence, or testimony relating to mitigation or failure to mitigate such damages. The parties further agree that this motion does not impact the introduction of argument, evidence and testimony regarding loss of earnings potential or objections thereto.

The parties expressly reserve all rights and arguments with respect to issues relating to back pay, front pay, lost wages, or loss of earnings potential, including but not limited to the disputed motions in limine relating to loss of earnings potential.

74668425v.3

1

**AGREED MOTION IN LIMINE #2: MOTION TO EXCLUDE ANY ARGUMENT, TESTIMONY OR EVIDENCE ABOUT UNDERLYING EEOC OR DOL FINDINGS OR RIGHT-TO-SUE LETTERS**

On December 30, 2015 and April 18, 2018, Plaintiff filed charges of discrimination with the Equal Employment Opportunity Commission.[1]  The EEOC did not issue a "cause" finding on either charge, instead issuing right to sue letters without expressing any opinion on the merits of Plaintiff's claims.  Plaintiff's 2018 USERRA Charge with the United States Department of Labor was similarly dismissed without any finding on the merits.  None of the EEOC or DOL dismissals or right-to-sue letters are relevant to the claims to be tried, and any argument, testimony, or evidence about the same would likely confuse the jurors.

The parties therefore stipulate that Plaintiff's EEOC and DOL charge dismissals and right-to-sue letters issued thereon will not be the subject of any argument, testimony, or evidence at trial.

---

[1] The only substantive difference between the Dec. 2015 and April 2018 charges is that the 2018 charge cited to Plaintiff's veteran status as an additional/alternative basis for his discrimination claims.

2

**AGREED MOTION IN LIMINE #3: GOLDEN RULE**

A "golden rule" appeal or argument "is universally recognized as improper because it encourages the jury to depart from neutrality and to decide the case on the basis of personal interest and bias rather than on the evidence." *Spray-Rite Serv. Corp. v. Monsanto Co.*, 684 F.2d 1226 (7th Cir. 1982), *aff'd*, 465 U.S. 752 (1984); *Shroyer v. Kaufman*, 426 F.2d 1032, 1033 (7th Cir. 1970) (holding "that suggesting the jury place themselves in the position of a party to the cause is improper"); *Dinsay v. RN Staff Inc.*, No. 119CV00907TWPDML, 2021 WL 2643639, at *3 (S.D. Ind. June 28, 2021) (granting motion in limine to preclude any 'golden rule' arguments at trial (citing *Spray-Rite*, 684 F.2d at 1246)); *Ledford v. Lamartz*, 462 F. Supp. 3d 905, 912 (N.D. Ind. 2020) (same).

Accordingly, the parties stipulate that Plaintiff and his attorneys and witnesses are precluded from arguing or stating to the jury that the jurors should put themselves in the position of Plaintiff or from asking how the actions of Abbott or any of its employees, including but not limited to Defendant Victoria Luo, would make the jurors feel unless Defendants open the door to such statements through their questions.

3

**AGREED MOTION IN LIMINE #4: MOTION TO EXCLUDE TESTIMONY OR EVIDENCE REFERENCING ABSENCE OF WITNESSES**

Courts do not allow a party to comment on the unavailability of a witness unless 1) the witness was physically available only to the opposing party or has a relationship with the opposing party that would in a pragmatic sense make his or her testimony unavailable to the opposing party regardless of physical availability, and 2) the evidence would be relevant to the case (and not merely cumulative). *United States v. Mahone*, 537 F.2d 922, 926 (7th Cir. 1976). Neither of those factors are met here for former Abbott employees and other witnesses not employed by Abbott, as neither Abbott nor Ms. Luo have any power to produce them.

Accordingly, the parties stipulate that neither Party will make any comments or arguments at trial about the fact that any former Abbott employee or witness not employed by Abbott did not testify. Plaintiff may move to exclude evidence on the basis of hearsay due to the absence of a witness whose statements are being used by Defendants for the purpose of proving the truth of a matter asserted.

74668425v.3

**DISPUTED MOTION IN LIMINE #1: MOTION TO BIFURCATE LIABILITY AND PUNITIVE DAMAGES PORTIONS OF CASE AND TO EXCLUDE ANY ARGUMENT, TESTIMONY OR EVIDENCE PERTAINING TO ABBOTT LABORATORIES' FINANCIAL CONDITION UNTIL PUNITIVE DAMAGES PHASE, IF ANY**

Defendants move to bifurcate the issue of punitive damages from the remaining issues for trial and to preclude Plaintiff from providing any argument, testimony, or evidence relating exclusively to punitive damages in the first (*i.e.*, liability and compensatory damages) phase of the trial. Argument, testimony, and evidence pertaining to Abbott's financial condition (*e.g.*, wealth, financial status, profitability, value of assets, net worth, size, and number of offices) should be excluded from trial unless and until there is a punitive damages phase.

The court may order a separate trial of any separate issue or claim "for convenience, to avoid prejudice, or to expedite and economize." Fed. R. Civ. P. 42(b). "[A] district court has considerable discretion to order the bifurcation of a trial." *Krocka v. City of Chicago*, 203 F.3d 507, 516 (7th Cir. 2000). If separate trials would either avoid prejudice to a party or promote judicial economy, bifurcation is permitted. *Houseman v. U.S. Aviation Underwriters*, 171 F.3d 1117, 1121 (7th Cir. 1999). Both reasons for bifurcation are met here.

I. **Efficiency and Economy for the Parties and the Court**

Convenience, expedition, and economy are furthered "where a separate trial 'disposes of one charge or establishes a necessary element of a second charge.'" *Myatt v. City of Chi.,* 816 F. Supp. 1259, 1264 (N.D. Ill. 1992) (quoting *Ismail v. Cohen,* 706 F. Supp. 243, 251 (S.D.N.Y. 1989)).

Of the claims remaining for trial, punitive damages are only at issue on the defamation claim and discriminatory and retaliatory reduction of job duties under Section 1981. (Doc. 82 at 33; Doc. 35 at 30, 32.) Punitive damages are not available on the IHRA, USERRA, or FMLA claims remaining for trial. *See, e.g.*, *Sabet v. City of N. Chicago*, No. 16-CV-10783, 2020 WL

5

832360, at *19 (N.D. Ill. Feb. 20, 2020) ("Illinois courts do not allow punitive damages in IHRA suits against employers."); *Stratton v. Merrill Lynch Pierce Fenner & Smith, Inc.*, No. 11 C 8011, 2012 WL 1533456, at *2 (N.D. Ill. Apr. 25, 2012) (punitive damages not available under IHRA); *Bello v. Vill. of Skokie*, No. 14 C 1718, 2014 WL 4344391, at *6 (N.D. Ill. Sept. 2, 2014) ("USERRA does not provide for punitive damages . . . ."); *Arrigo v. Link*, 836 F.3d 787, 798 (7th Cir. 2016) ("FMLA damages don't include emotional distress and punitive damages . . . .").

Because punitive damages relate only to two claims remaining for trial, and only if Plaintiff proves liability on such claims and that punitive damages should be considered on those claims, it would be most efficient to determine all liability and compensatory damages issues in the first phase, and save punitive damages for a second phase if necessary. There would be no overlap of evidence in the two phases here. *See, e.g.*, *Vandersteen v. Kelly*, No. 07 C 5632, 2010 WL 659327, at *3-4 (N.D. Ill. Feb. 23, 2010) (noting that absence of overlap in presentation of evidence on Illinois tort claim supported bifurcation of liability/compensatory and punitive damages phases, and distinguishing case denying bifurcation where evidence overlapped).

## II.     Avoidance of Prejudice

Further, separating the liability and damages portions of the trial would allow for a fair presentation of the case by avoiding unfairly prejudicial testimony that may influence the jury. Bifurcation would not prejudice the plaintiff, and would promote fairness and efficiency. *See, e.g.*, *Equal Emp. Opportunity Comm'n & Bailey*, No. 10 C 6139, 2016 WL 5796890, at *8 (N.D. Ill. Sept. 30, 2016) (holding, with respect to punitive damages available in an Title VII employment case, "Bifurcating the trial will be the most straightforward and efficient solution to avoid prejudice and jury confusion.").

Argument, evidence, and testimony relating to Abbott's financial condition (*e.g.*, wealth, financial status, profitability, value of assets, net worth, size, and number of offices) is irrelevant

6

and prejudicial, especially outside the context of punitive damages. It has been well established that evidence of a defendant's financial status is "irrelevant…to the jury's determination of compensatory damages." *See, e.g.*, *Zazu Designs v. L'Oreal*, S.A., 979 F.2d 499, 508 (7th Cir. 1992) ("Corporate assets finance ongoing operations and are unrelated to ... the injury done to the victim.").

Any testimony about Abbott's financial condition at trial would risk improper comparison of the relative worth of the parties and their claims and pose significant risk that the jury may "use their verdict[] to express biases against big businesses." *State Farm Mut. Auto. Ins. Co. v. Campbell,* 538 U.S. 408, 417 (2003); *Adams Lab'ys, Inc. v. Jacobs Eng'g Co*., 761 F.2d 1218, 1226 (7th Cir. 1985) ("[A]ppealing to the sympathy of jurors through references to the relative wealth of the defendants in contrast to the relative poverty of the plaintiffs is improper and may be cause for reversal. If the wealth and size of a corporation are not at issue, counsel is bound to refrain from making reference to such size and wealth, or bear the risk of an unfavorable appellate reception.") (quotations and citations omitted). Accordingly, financial information is properly subject to a motion in limine where punitive damages are not at issue.[2] *See, e.g., Isbell v. John Crane, Inc.*, 74 F. Supp. 3d 893, 899 (N.D. Ill. 2014) (excluding evidence of financial status during compensatory damages stage of trial); *El-Bakly v. Autozone, Inc.*, No. 04 C 2767, 2008 WL 1774962, at *5 (N.D. Ill. Apr. 16, 2008) (granting motion in limine to exclude evidence of

---

[2] The Seventh Circuit has expressed doubt about the role, if any, that a defendant's financial condition may play in a punitive damages award. *See Zazu Designs*, 979 F.2d at 508 ("Corporations are abstractions; investors own the net worth of the business. These investors pay any punitive awards (the value of their shares decreases), and they may be of average wealth. Pension trusts and mutual funds, aggregating the investments of millions of average persons, own the bulk of many large corporations. Seeing the corporation as wealthy is an illusion, which like other mirages frequently leads people astray."). Defendants reserve for trial any and all objections to Plaintiff's argument, testimony, or evidence about Abbott's financial condition in the punitive damages phase.

defendant's financial condition as unduly prejudicial on Title VII and state law defamation claims unless and until plaintiff showing at trial that he has a colorable claim for punitive damages).

Excluding all argument, evidence, and testimony of Abbott's financial condition until a second, punitive damages phase of trial does not prejudice Plaintiff or impair his professed desire to present argument, testimony, and evidence at trial that he "was successful in a competitive, demanding and sophisticated environment and that he could be successful in similar environments." Any such argument, testimony, or evidence can be presented descriptively and without regarding to inherently prejudicial numerical figures or statements about Abbott's financial condition, which have no factual connection or correlation to Plaintiff's work or job duties at Abbott. Abbott's financial condition (*e.g.*, wealth, financial status, profitability, value of assets, net worth, size, and number of offices) has no probative value on any merits issue of liability or compensatory damages, and the danger of prejudice is high for the reasons discussed above. Accordingly, any argument or testimony about Abbott's financial condition is properly excluded from the first phase of trial as irrelevant or, alternatively, unduly prejudicial. Fed. R. Evid. 401, 403.

## III.    Conclusion

The Court should adhere to the well-established practice of bifurcation of punitive damages and exclude all argument, testimony, and evidence that only relates to the issue of punitive damages, including but not limited to Abbott's financial condition (*e.g.*, wealth, financial status, profitability, value of assets, net worth, size, and number of offices), from the first phase of trial.

**DISPUTED MOTION IN LIMINE #2: MOTION TO EXCLUDE ARGUMENT AND EVIDENCE RELATING TO DISCRIMINATION, CONSTRUCTIVE DISCHARGE, RETALIATION, AND OTHER CLAIMS DISMISSED ON SUMMARY JUDGMENT**

As this Court has recognized, the summary judgment ruling in this case "significantly narrowed [Plaintiff's] claims." (Doc. 128 at 2.) In addition to dismissing Plaintiff's claims for discriminatory and retaliatory termination and for breach of contract and tortious interference (Doc. 82 at 33), the Court rejected Plaintiff's remaining claims to the extent they relied on constructive discharge and knowledge of the dismissal of Plaintiff's claims in the prior lawsuit Plaintiff filed against Abbott. (*Id.* at 13, 22-25.) In order to ensure efficiency of the trial and to avoid prejudicing Defendants, Plaintiff should be barred from introducing any argument, testimony, or evidence relating to the claims dismissed in whole or in part on summary judgment, including but not limited to, the dismissed discrimination, constructive discharge, and retaliation claims, and the portions of Plaintiff's claims concerning reduction of job duties already rejected by the Court.

## I.   Applicable Law

Courts routinely exclude arguments tied to previously-dismissed claims at trial as irrelevant and unduly prejudicial. For example, in *Artunduaga v. Univ. of Chi. Med. Ctr.*, 2016 WL 7157352 (N.D. Ill. Dec. 8, 2016), only Plaintiff's Title VII national origin discrimination and retaliation claims remained for trial. *Id.* at *1. Defendants moved to exclude argument and "evidence of other types of discrimination other than national origin discrimination or evidence of discrimination or retaliation" against others, as well as evidence tied to plaintiff's rejected state law claims. *Id.* at *4. The court agreed and held that "arguments [related to dismissed claims] are not relevant to the remaining claims in this lawsuit and what little probative value this evidence has is substantially outweighed by the danger of prejudice and juror confusion." *Id.*; *see also, e.g.*, *Scott v. City of Sioux City, Iowa*, 96 F. Supp. 3d 876, 880-81 (N.D. Iowa 2015) (explaining that

74668425v.3

trial courts must be particularly "vigilant to exclude evidence that relates to dismissed claims ... because of the prejudicial effect of such evidence"); *Greenfield v. Sears, Roebuck and Co.*, U.S. Dist. Ct. No. 04-71086, 2006 WL 2927546 (E.D. Mich. Oct. 12, 2006) (noting that, because the court had granted summary judgment on the plaintiff's retaliation claim, any evidence or argument on that claim was irrelevant to the remaining issues in the case).

As in *Artunduaga*, any attempt by Plaintiff to resurrect claims that are no longer at issue to the case and introduce evidence or make arguments exclusively relating to dismissed claims would confuse the jury and prejudice Defendants. Further, "allowing the introduction of evidence relating to dismissed claims would needlessly burden the trial proceedings with delays and inefficiency because of the necessity of 'mini trials' on each dismissed claim." *Ledford v. Lamartz*, 462 F. Supp. 3d 905, 909 (N.D. Ind. 2020). In particular, Plaintiff should be barred from introducing any evidence, testimony, or argument relating to his (1) dismissed termination claims, (2) dismissed constructive discharge argument, and (3) partially dismissed retaliation claims.

## II.     Dismissed Claims to Exclude From Trial

### A.     Dismissed Termination Claims

Plaintiff cannot argue or testify at trial that his termination was discriminatory or retaliatory (except as to FMLA interference and retaliation) because the Court has granted summary judgment for Abbott on Plaintiff's IHRA, Section 1981, and USERRA discriminatory and retaliatory termination claims. (Doc. 82 at 33.) Further, Plaintiff cannot resurrect his dismissed termination claims by arguing or presenting evidence suggesting that his purported reduction of job duties included his termination or caused his employment to be terminated. Such argument is contrary to this Court's ruling that reduction of job duties and termination are distinct adverse employment actions and that Plaintiff showed no triable issue of fact that his termination was unlawful under IHRA, Section 1981, or USERRA. (Doc. 82 at 13-14, 33.) Further, Plaintiff went on a personal

10

leave of absence from March 16, 2015 through his termination on July 29, 2015. (Doc. 82 at 6-8.) Any purported reduction of job duties necessarily occurred while Plaintiff was working and before he took leave, *i.e.*, before March 16, 2015. Because Plaintiff's dismissed termination claims are temporally remote and not factually connected in any way to the alleged reduction in duties claim remaining for trial, Defendants would be prejudiced by Plaintiff presenting argument, testimony, or evidence for the purpose of showing that his termination was discriminatory, retaliatory, or otherwise wrongful under IHRA, Section 1981, or USERRA.

### B.    Dismissed Constructive Discharge Claim

Further, Plaintiff should not be permitted to argue that the reduction in duties was so severe that it compelled Plaintiff to look for another job, including at Cook County. The Court rejected Plaintiff's constructive discharge arguments on summary judgment. (Doc. 82 at 13.) Thus, Plaintiff should not be allowed to present argument, testimony, or evidence at trial that his working conditions, including purported reduction of job duties, were so intolerable that he was forced to resign or had no choice but to look for work elsewhere.

### C.    Partially Dismissed Retaliation Claims

Plaintiff's remaining claim for retaliatory reduction in job duties was substantially limited by the Court's summary judgment ruling, and Plaintiff should not be allowed to resurrect any failed theories through trial testimony or argument. The only viable retaliation theory remaining in the case is an alleged retaliatory reduction of job duties based upon purported comparison to Hamid Akthar and Bruce Tsai. (Doc. 82 at 24.) The Court rejected all other theories of retaliation on summary judgment.

First, the Court ruled on summary judgment that Plaintiff could not base his retaliatory reduction of job duties claim on his allegation that Commercial Controller Jeff Young purportedly danced at Plaintiff's desk in March 2014 on the day the court dismissed plaintiff's claims in the

11

prior lawsuit. (Doc. 82 at 23-24.) As the Court then recognized, Young did not work with Plaintiff as of April 2013, a year before the dismissal of Plaintiff's claims in the prior lawsuit, and was not involved in the challenged decisions in this case. (Doc. 82 at 23.) Further, Luo was Plaintiff's supervisor from 2012 until Plaintiff's employment ended. (Doc. 62 ¶ 18, 68.) Insofar as there is no allegation by Plaintiff, let alone record evidence, that Young reduced Plaintiff's job duties, denied Plaintiff FMLA leave, retaliated against Plaintiff for purporting to take FMLA leave, or defamed Plaintiff, Young's alleged dancing does not relate to any claim remaining in this case, and all testimony and references to the same should be excluded from trial as irrelevant and unduly prejudicial.

Second, the Court acknowledged that Luo had no knowledge of the dismissal of Plaintiff's prior lawsuit in 2014 and that Luo wished Plaintiff luck with the lawsuit when he applied for a leave of absence in March 2015--nearly a year after the claims against Plaintiff in the prior lawsuit were dismissed on summary judgment. (Doc. 82 at 23-24 & n.12; Case No. 1:12-cv-3216, Doc. 58.) (Ex. C) Further, the Court observed that Business Human Resources Director Kevin Mason did not know about the prior lawsuit at all. (Doc. 82 at 24.) The only theory of retaliatory reduction of job duties that the Court found viable for trial was based upon a purported comparison of Plaintiff's job duties to those of his one colleague Hamid Akhtar and backfill Bruce Tsai, who had not engaged in similar protected activity. (Doc. 82 at 24-25.) This is the only theory of retaliation that survived summary judgment and the only theory of retaliation Plaintiff should be allowed to pursue at trial.

## III. Conclusion

Based upon the foregoing, Plaintiff should be precluded from offering evidence, testimony, or argument at trial relating to his claims dismissed on summary judgment, including but not limited to his dismissed termination, constructive discharge, and retaliation claims. Further,

Plaintiff should be precluded from presenting argument or evidence of Jeff Young dancing near Plaintiff's desk in March 2014, and Plaintiff retaliatory reduction of job duties claim should be limited to the purported comparison of Plaintiff's job duties to those of Akhtar and Tsai.

**DISPUTED MOTION IN LIMINE #3: MOTION TO EXCLUDE ARGUMENT AND EVIDENCE RELATING TO LEGAL CLAIMS AND ALLEGATIONS IN PRIOR LAWSUIT BROUGHT BY PLAINTIFF AND HIS WIFE AGAINST ABBOTT**

On April 13, 2012, Martina and Henry Beverly filed a lawsuit alleging: (1) retaliation as to Martina Beverly; (2) a violation of the ADA as to Martina Beverly; (3) national origin discrimination as to Martina Beverly; (4) retaliation as to Henry Beverly; and (5) race discrimination as to Henry Beverly. *Beverly et al. v. Abbott Laboratories Inc.,* Case No. 1:12-cv-03216, N.D. Ill., Doc. 1 (Ex B.). On March 25, 2014, the Court granted Abbott's Motion for Summary Judgment in part and dismissed all of Henry Beverly's claims, and some of Martina Beverly's claims. Case No. 1:12-cv-03216, Doc. 58 (Ex. C.). For the reasons discussed below, Plaintiff should not be allowed to introduce argument, testimony, or evidence about the prior lawsuit of any kind, except to prove statutorily protected activity by Plaintiff **known to Victoria Luo** for purposes of Plaintiff's retaliatory reduction in job duties claim remaining for trial.

I.     **Plaintiff's burden to prove protected activity and knowledge of the same by Luo on his retaliatory reduction of duties claims does not give Plaintiff license to describe or reargue the claims and allegation in the prior lawsuit unknown to Luo.**

On Plaintiff's claim of retaliatory reduction in job duties, Plaintiff must prove, among other things, that the Plaintiff engaged in legally protected activity and that a decisionmaker had knowledge of the same when adverse employment action was taken. *Carter Coal Co. v. Hum. Rts. Comm'n*, 633 N.E.2d 202, 207 (Ill. App. 1994). The Illinois Human Rights Act provides a finite list of acts constituting protected activity:

> It is a civil rights violation for a person . . . to . . . [r]etaliate against a person [1] because he or she has opposed that which he or she reasonably and in good faith believes to be unlawful discrimination . . . , [2] because he or she has made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under this Act, or [3] because he or she has requested, attempted to request, used, or attempted to use a reasonable accommodation as allowed by this Act.

775 Ill. Comp. Stat. Ann. 5/6-101(A).

The only protected activities placed at issue in the case are Plaintiff's filing of and participation in the prior lawsuit, all of which necessarily predated the Court's entry of summary judgment against Plaintiff on all of his claims in that case on March 25, 2014.[3] (Doc. 35 ¶ 20, 107, 130.)

The only decisionmaker at issue in this case is Plaintiff's supervisor, Victoria Luo. (*Id.* ¶ 23-27, 107-109, 130-131.) "In order to demonstrate that a defendant was motivated to retaliate based on the plaintiff's protected activity, the plaintiff must first produce evidence that the defendant had actual knowledge of the protected activity. It is not sufficient that a decision-maker could have or even should have known about the employee's complaint." *Eaton v. J. H. Findorff & Son, Inc.*, 1 F.4th 508, 512–13 (7th Cir. 2021) (internal citations omitted). "Clearly, a superior cannot retaliate against an employee for a protected activity about which he has no knowledge." *Stephens v. Erickson*, 569 F.3d 779, 788 (7th Cir. 2009).

Thus, any evidence, argument, or testimony regarding the prior lawsuit should be limited to what Luo knew about Plaintiff's discrete statutorily protected activities. Anything else about the prior lawsuit, including the specific claims and allegations at issue in the prior lawsuit, the outcome, the defenses, or anything else about the lawsuit unknown to Luo go beyond the scope of elements of proof should be excluded as not relevant and unfairly prejudicial to Abbott under Fed. R. Evid 401, 403.

A. **Except for protected activity known to Luo, argument, testimony, and evidence about the prior lawsuit is irrelevant and inadmissible under Fed. R. Evid. 401.**

Nothing about the substance of Martina or Henry Beverly's prior claims is at issue here, there is no overlap of factual witnesses, and no one who allegedly wronged Martina Beverly or

---

[3] The court's ruling on Abbott's summary judgment motion in the prior lawsuit in 2014 is not an activity by Plaintiff, let alone a protected activity by Plaintiff. 775 Ill. Comp. Stat. Ann. 5/6-101(A).

Plaintiff in the prior lawsuit is alleged here to have wronged Plaintiff in the instant lawsuit. The only alleged wrongdoer in this case with respect to reduction of Plaintiff's job duties is Victoria Luo, who became Plaintiff's supervisor in mid to late 2012. (Doc. 35 ¶ 19, 21-27; Doc. 62 ¶ 18, 23-31.) Plaintiff filed the prior lawsuit in April 2012, before Luo became his supervisor. Luo was not mentioned, let alone accused of wrongdoing, in the prior lawsuit. (Case No. 1:12-cv-3216, Doc. 1.) (Ex. C)

To the extent Plaintiff argues that details of the prior lawsuit bear on Abbott's motive to retaliate against Plaintiff by reducing his job duties in this case, Plaintiff has no factual or legal predicate to draw a link of relevance. None of the facts or alleged wrongdoers in the prior lawsuit, concerning events from 2009, overlap with the allegations in this lawsuit, which place at issue events in 2013-2015, and at trial are limited to reduction of job duties, FMLA interference and retaliation, and defamation. Insofar as Plaintiff's counsel objected during Plaintiff's deposition to questions about Abbott jobs that Plaintiff applied for in and prior to 2012 which were at issue in his prior lawsuit, on the ground that those positions were not at issue in this case (Beverly Dep. 23:10-25:21) (Ex. A), Plaintiff cannot be allowed to argue, testify, or present evidence at trial about the same. Simply put, the prior lawsuit is temporally and factually remote, and there is no factual nexus between the prior lawsuit and what remains of this lawsuit other than the protected activity and knowledge elements on the retaliatory reduction of duties claim.

**B.      Alternatively, except for protected activity and knowledge by Luo, argument, testimony, and evidence about the prior lawsuit should be excluded under Fed. R. Evid. 403.**

In the event this Court finds that testimony or evidence concerning the prior lawsuit other than the protected activity and knowledge elements on the retaliatory reduction of duties claim is relevant, this evidence is still barred by Rule 403 because any relevance is substantially

16

outweighed by the danger of unfair prejudice, confusion of the issues, the risk of misleading the jury, and wasted time litigating claims not at issue here.

Any such argument or evidence about the prior lawsuit serves no purpose other than to paint Abbott as a "bad actor" for having been sued by Plaintiff multiple times and/or by Plaintiff's wife previously. This is precisely the kind of evidence Rule 403 was designed to exclude. Allowing argument, evidence, or testimony about the claims, allegations, or facts at issue in the prior suit would serve only to inflame the passions of the jury and influence their decision without focusing on the evidence presented on the claims remaining for trial in this case.

Admission of this evidence would also lead to confusion of the issues and a waste of the court's time. Abbott would be forced to litigate claims on which it already prevailed (or otherwise resolved) and are not at issue here. *See Empress Casino Joliet Corp. v. Johnston*, No. 09 C 3585, 2014 WL 6735529, *14 (N.D. Ill. Nov. 28, 2014) (holding that evidence related to prior litigation initiated by the plaintiffs was barred by Rule 403 because "Admission of this evidence would also lead to a far-flung detour from those matters that are relevant to the claims and defenses in this case.")

A motion in limine is the most appropriate way to draw the line as to what aspects of the prior lawsuit Plaintiff is allowed to raise at trial. A jury instruction or an objection at trial would not suffice, and would simply further prejudice Abbott. If Plaintiff testifies as to the details of the prior lawsuit and Abbott objects, the jury will assume Abbott is hiding something and the prejudicial damage will be done. A line needs to be drawn, and the line should be drawn where the alleged decisionmaker's (*i.e.*, Luo's) knowledge of Plaintiff's protected activity ends. That is all that fairly informs the claims remaining for trial.

The Court should bar any and all argument, testimony, or evidence about the prior lawsuit that does not identify Plaintiff's purported protected activity or knowledge by Luo about the same,[4] which is all that could plausibly bear on Plaintiff's burden of proof on his claims of retaliatory reduction of job duties under IHRA and Section 1981 in Counts V and VII of the Second Amended Complaint. (Doc. 35; Doc. 82 at 33.) Any other argument or testimony relating to the claims in the prior lawsuit or the events placed at issue in the prior lawsuit are irrelevant and prejudicial and should be excluded from trial. Fed R. Evid. 401, 403.

## II. Res Judicata Bars Re-litigating Issues That Have Reached a Final Decision.

Allowing Plaintiff to introduce argument as to the claims presented in the prior lawsuit (e.g., alleged race discrimination and retaliation, including failure to promote and reduction of job duties for making complaints and participating in his and his wife's internal complaints in 2009), *see* Case No. 1:12-cv-3216, Doc. 1 at 9-12 (Ex. B), would cause a series of mini-trials in which Abbott would be forced to defend itself against the allegations in the prior lawsuit. Not only would this cause jury confusion and unduly prejudice Defendants as discussed above, it would also lead to a re-litigation of claims on which a final decision has already been made. In the Seventh Circuit, the doctrine of res judicata bars re-litigating issues that have already reached a final judgment on the merits. *In re Dollie's Playhouse, Inc.*, 481 F.3d 998, 1001 (7th Cir. 2007).

"The three requirements for res judicata under federal law are: (1) an identity of the parties or their privies; (2) an identity of the causes of actions; and (3) a final judgment on the merits."

---

[4] During the parties' conferrals, counsel for Defendants asked counsel for Plaintiff to identify what purported protected activities and decisionmaker knowledge thereof are to be placed at issue at trial. Plaintiff identified non-decisionmaker Young dancing near Beverly's desk on the day the prior lawsuit was dismissed in 2014 (which should be excluded from trial for the reasons stated in Motion in Limine #2, *supra*), Luo's deposition testimony denying knowledge of the 2014 dismissal of Plaintiff's claims in the prior lawsuit, and Luo's well-wishes to Plaintiff with the lawsuit when he took a leave of absence in 2015--a year after the claims in the prior case had been dismissed. None of these demonstrate Luo's (*i.e.*, the purported decisionmaker's) knowledge of any of the claims or allegations in the prior lawsuit.

*Highway J Citizens Grp. v. U.S. Dep't of Transp.*, 456 F.3d 734, 741 (7th Cir. 2006). To the extent Plaintiff attempts to place at issue any of the allegations or claims in the prior lawsuit here, all of the elements of res judicata are met: the parties in the prior litigation were the same as the parties here, and all of Plaintiff's claims in the prior lawsuit were summarily adjudicated in Abbott's favor and against Plaintiff. See Case No. 1:12-cv-3216, Doc. 58. (Ex. C) The principles of res judicata underscore that nothing about the prior lawsuit other than protected activities known to Luo could possibly relate to any element of a claim remaining for trial here.

**III.    Any Testimony or Evidence by Plaintiff Relating to the Prior Lawsuit That Are Unknown to Luo Opens the Door for Defendants to Introduce the Court's Order on the Motion for Summary Judgment in the Prior Lawsuit**

It is generally true that when one party opens the door to otherwise inadmissible evidence, the opposing party may be given the opportunity to inquire into those matters itself. *See, e.g.*, *Young v. James Green Mgmt., Inc.*, 327 F.3d 616, 627 (7th Cir. 2003) ("This circuit has held on numerous occasions that when a party questions a witness on a subject, even though that subject may not be strictly relevant to the case, the party cannot complain on appeal if the opposing party subsequently introduces evidence on the same subject."). Here, if Plaintiff introduces argument, testimony, or evidence about claims and allegations in the prior lawsuit, beyond Plaintiff's protected activities known to Luo, then Plaintiff will have opened the door to the introduction into evidence by Defendant of the Summary Judgment Order dismissing all the claims in the prior suit. *Beverly et al,* No: 1:12-cv-03216, Doc. 58. Such result further underscores the jury confusion and wasted time and resources that the claims and allegations in the prior lawsuit would bring to this trial. In order to ensure the proceedings remain focused on the narrow issues set for trial, exclusion of evidence regarding the claims, allegations, and other details of the prior lawsuit unknown to Luo is warranted.

## IV.     CONCLUSION

A clear line must be draw with regard to what evidence, argument, and testimony can be introduced regarding the prior lawsuit. Plaintiff should not be allowed to turn these proceedings into a "free-for-all" and poison the jury with his own spin on claims that the Court summarily adjudicated against Plaintiff and in favor of Abbott in the prior lawsuit in 2014. The only role the prior lawsuit could possibly play in this case is to satisfy the protected activity and decisionmaker knowledge elements of Plaintiff's retaliatory reduction in job duties claim. Anything else about the prior lawsuit is irrelevant and unduly prejudicial. Thus, this Court should preclude any argument, evidence, or testimony about the prior suit beyond its existence and Luo's knowledge of the same.

74668425v.3

**DISPUTED MOTION IN LIMINE #4: MOTION TO EXCLUDE ARGUMENT AND EVIDENCE REGARDING MARTINA BEVERLY'S ALLEGED WORK EXPERIENCES AT ABBOTT**

Defendants move to exclude any evidence or testimony about Martina Beverly's alleged work experiences at Abbott. Martina Beverly's prior employment at Abbott (which ended in 2009) is not at issue here, and any evidence concerning her work at Abbott is wholly irrelevant to Plaintiff's case and inadmissible under Fed. R. Evid. 401. Such testimony would also be unduly prejudicial to Abbott and therefore is inadmissible under Fed. R. Evid. 403.

Under Rule 401, in order for evidence to be relevant, it must have "any tendency to make a fact more or less probable than it would be without the evidence." Fed. R. Evid. 401. Martina Beverly's employment and any characterization thereof does nothing to make any fact at issue more or less probable. None of the alleged wrongdoers toward Martina Beverly in the prior lawsuit are at issue in this lawsuit, and none of Martina Beverly's causes of action in the prior lawsuit (*e.g.*, failure to accommodate a disability, disability discrimination and retaliation, national origin discrimination) are at issue here. *See Beverly et al.*, No: 1:12-cv-03216, Doc. 58 at 1-4 (Ex. C.). Martina Beverly worked a different job in a different department of Abbott than Plaintiff. *Id.* at 2.

Pursuant to Rule 403, even if this Court finds such evidence is relevant, argument, testimony, or evidence about Martina Beverly's employment at Abbott would be unfairly prejudicial to Defendants. Martina Beverly's experiences at Abbott have no bearing on their liability in this case, and would serve only to prejudice the jury by attempting to show a pattern of "bad behavior"--an impermissible propensity inference barred by Fed. R. Evid. 404(b). Further, any evidence about Martina Beverly's work at Abbott would distract from the issues remaining for trial and devolve the trial into a series of "mini trials" about Martina Beverly--not Plaintiff. In that regard, argument and testimony about Martina Beverly's experiences at Abbott would risk

21

confusing the jury as to whose employment relationship is at issue in the case. *See, e.g.,* *Buonanoma v. Sierra Pac. Power Co.*, No. 3:04-CV-0077-LRH-VPC, 2010 WL 3724254, at *5 (D. Nev. Sept. 16, 2010) (granting motion in limine to exclude evidence of other employees' complaints and lawsuits against employer under Fed. R. Evid. 403; "Introducing evidence of other lawsuits against SPPC could unfairly bias the jury against SPPC for discriminatory acts that did not take place in this case and confuse the jury into thinking it could hold SPPC liable in this action for alleged wrongs in other actions.").

During the parties' conferral, Plaintiff argued that Martina Beverly's claims were relevant because the "severity" of those claims made it more likely that there was retaliation against Plaintiff here. There is no law that connects counsel's subjective characterization of "severity" with admissibility in a subsequent lawsuit involving different alleged wrongdoers (who did not know details about the prior lawsuit), a different time period, and different claims.

Whether "me too" evidence is admissible depends upon "how closely related the evidence is to the plaintiff's circumstances and theory of the case." *Hasan v. Foley*, 552 F.3d 520, 529 (7th Cir. 2008), as corrected (Jan. 21, 2009). There is no factual connection whatsoever here between Martina Beverly's work at Abbott and Plaintiff's claims remaining for trial to support admissibility for any purposes. Here, Luo is the only Abbott employee accused of wrongdoing. In Martina Beverly's prior lawsuit against Abbott, Luo was not involved in any of the events placed at issue. There is no overlap of factual witnesses, and nobody who allegedly wronged Martina Beverly is alleged here to have wronged Plaintiff. Martina Beverly's claims in the prior lawsuit are entirely different from the claims at issue here, *i.e.*, Plaintiff does not claim national original discrimination, disability discrimination, or retaliation for alleged harassment complaints as Mrs. Beverly did in the prior case. See Case No. 1:12-cv-3216, Doc. 1 at 2-8. (Ex. B) No argument, testimony, or

22

evidence about Martina Beverly's claims have any bearing on the issues remaining for trial and should be excluded. *See, e.g., McLeod v. Parsons Corp.*, 73 F. App'x 846, 854 (6th Cir. 2003) ("Here, it is not apparent that evidence concerning the other employment discrimination lawsuits filed against Parsons was relevant, because there was no clear nexus between these lawsuits and this case. The employees who filed these actions worked at several different offices, and were discharged for a variety of reasons. Additionally, the potential for prejudice that would have accompanied this evidence would have substantially outweighed its probative value, and this evidence would have misled the jury."); *Hall v. Sterling Park Dist.*, No. 08 C 50116, 2012 WL 1050302, at *7 (N.D. Ill. Mar. 28, 2012) (granting defendant's motion in limine to bar plaintiff from introducing evidence or argument that coworkers were terminated or discriminated against based on age; "The situations appear too attenuated to be relevant to Plaintiff's claims. Allowing Plaintiff to introduce evidence as to other employees would inevitably lead to a series of mini-trials that would distract the jury and unnecessarily prolong the trial.").

Based upon the foregoing, Defendants request that Plaintiff be barred from introducing any argument, testimony, or evidence at trial about Martina Beverly's claimed work experiences at Abbott.

## DISPUTED MOTION IN LIMINE #5: MOTION TO EXCLUDE ANY REFERENCE TO MARTINA BEVERLY'S CONFIDENTIAL SETTLEMENT

Plaintiff's wife, Martina Beverly, previously sued Abbott, N.D. Ill. Case No. 1:12-cv-3216 (Ex. B). Martina Beverly's claims were settled, and the parties entered into a legally binding settlement agreement. *See Beverly v. Abbott Laboratories*, 817 F.3d 328 (7th Cir. 2016). Plaintiff should not be allowed to present argument, testimony, or evidence of the content or existence of this prior, unrelated settlement agreement in this case.

Under Federal Rule of Evidence 408, settlement agreements are inadmissible to prove the validity of a claim. *See, e.g.*, *Fed. Deposit Ins. Co. v. Chi. Title Ins. Co.*, 12-cv-05198, 2017 WL 3592736, at *10 (N.D. Ill Aug. 21, 2017) ("Under Federal Rule of Evidence 408, evidence of compromises is not admissible to prove the validity of a disputed claim."). Of particular concern is whether "a norm of admitting offers of settlement will reduce efforts to settle by others in the future." *Walker v. Walker*, 701 F.3d 1110, 1117 (7th Cir. 2012). Rule 408 also renders recitations of facts attached to a settlement agreement inadmissible for purposes of proving or disproving liability on a later civil claim. *Winchester Packaging, Inc., Mobil Chemical Co.*, 14 F.3d 316, 321 (7th Cir. 1994).

Even though Martina Beverly is not a party to the litigation at hand, Rule 408 applies to her settlement equally. Any claim by Plaintiff that Martina Beverly's claim is "related" to the present claims is not only factually false, but also legally irrelevant because Rule 408 applies with equal force regardless of purported relatedness of claims. *See, e.g.*, *Orr v. City of Albuquerque*, 531 F.3d 1210, 1218-19 (10th Cir. 2008) (Rule 408 "includes evidence regarding the compromise of related cases, not just the one at hand"); *Blech Sec. Litig.*, No. 94-7696, 2003 WL 1610775, at *11 (S.D.N.Y. Mar. 26, 2003) (Rule 408 excludes third-party use of SEC consent orders against defendant in subsequent securities class action). The "same considerations that led to the

24

enactment of [Rule 408], namely the 'promotion of public policy favoring the compromise and settlement of disputes,'" apply with equal force to settlements of claims separate from the current claim being litigated. *Alpex Comput. Corp. v. Nintendo Co.*, 770 F. Supp. 161, 163 (S.D.N.Y. 1991); see, e.g., *id.* at 165 (because licensing agreements at issue were made in settlement of other litigation, "any documents or other evidence relating to these agreements thus plainly fall within the protection of Rule 408").

Lastly, evidence of Martina Beverly's settlement with Abbott is barred by Rule 401 and 403. Martina Beverly's settlement has no relevance to the facts involving Henry Beverly. Even if such relevance exists, the value of such is substantially outweighed by the danger of unfair prejudice. The jury may wrongly infer that any settlement between Abbott and Martina Beverly equates to an admission of liability, and may wrongly impute any presumed liability onto Abbott in the present litigation involving only Mr. Beverly and claims arising years after Mrs. Beverly no longer worked at Abbott. Because Martina Beverly's claim has nothing to do with the litigation at hand, such an inference of liability would be improper.

During conferrals, Plaintiff argued that the "timing," "existence," and "challenge" to the settlement are relevant because it ties to Jeff Young allegedly dancing at Plaintiff's desk. This argument is legally and factually flawed. Legally, none of the foregoing is relevant to Plaintiff's claims for trial, and any relevance is greatly outweighed by the risk of prejudicing Abbott and distracting the jury from the issues to be tried. Factually, the Court has already rejected on summary judgment any connection between the alleged dancing incident and the claims in the case, for want of any evidence that the alleged dancer, Jeff Young, had any authority or influence on the decisions at issue in this case concerning Plaintiff's employment. (Doc. 82 at 23.) Moreover, the dancing by Young was alleged by Beverly to have occurred in March 2014 when

Beverly's claims in the prior lawsuit were dismissed on summary judgment--months before Martina Beverly's claims were settled in July 2014 and the Court granted Abbott's motion to enforce the settlement in December 2014. *Compare id.*, with *Beverly et al.*, No: 1:12-cv-03216, Doc. 116 (Ex. D) (order granting Abbott's motion to enforce July 2014 settlement agreement against Martina Beverly based upon certain emails between Martina Beverly's and Abbott's counsel). Martina Beverly appealed the court's order enforcing the settlement agreement in January 2015, and the District Court's enforcement of the settlement agreement was affirmed on appeal in 2016, well after Plaintiff's employment was terminated. *Beverly v. Abbott Laboratories*, 817 F.3d 328 (7th Cir. 2016).

Meanwhile, there is no record evidence that Young knew about or had any involvement in the settlement of Martina Beverly's claims or any dispute relating to the same. Luo, the lone decisionmaker at issue in this case, is not alleged to have any involvement or knowledge with the settlement of Martina Beverly's claims or any dispute relating to the same. Simply put, there is no claim or allegation in this case that the dispute about whether or not there was an enforceable settlement agreement for Martina Beverly's claims had anything to do with Plaintiff's employment. *See Beverly et al.*, No: 1:12-cv-03216, Doc. 116. (Ex. D)

Based upon the foregoing, Defendants move to exclude from trial all argument, testimony, or evidence of the content or existence of Martina Beverly's prior settlement agreement with Abbott.

74668425v.3

**DISPUTED MOTION IN LIMINE #6: MOTION IN LIMINE TO BAR STAN SMITH'S &
KEITH MOGLOWSKY'S TESTIMONY DUE TO UNTIMELY AUGUST 2020 REPORTS**

### A.     Introduction

As the Court has noted, Plaintiff's claimed damages for loss of earnings potential "have
been a part of this case since its initiation." (Doc. 135[5] at 4; Doc. 1.) Yet not until August 21,
2020, more than five months after Plaintiff's March 16, 2020 expert disclosure deadline, did
Plaintiff serve any expert reports relating to loss of earnings potential. Plaintiff's expert reports
served prior to the March 16, 2020 deadline addressed only lost wages (Doc. 132-1, 132-2), and
Plaintiff did not serve expert reports on loss of earnings potential until August 21, 2020, weeks
after the Court affirmed on July 21, 2020 what Plaintiff had conceded years prior in August 2018:
that Plaintiff had abandoned all claims for lost wages. (*See* Doc. 132-3 (August 19, 2020 Report
of Stan Smith), Doc. 132-4 (August 14, 2020 Report of Keith Moglowsky), Doc. 50 at 2-3
(plaintiff's admission abandoning lost wages).)

Because Smith's August 19, 2020 Report and Moglowsky's August 14, 2020 Report
purport to address loss of earnings potential, a form of damages distinct from lost wages, the
August 2020 reports are not supplemental reports under Fed. R. Civ. P. 26(e)(2). They are instead
new reports, and they should be stricken as untimely. Because Smith's and Moglowsky's prior
reports impermissibly address barred lost wages, and because Smith's and Moglowsky's August
2020 reports are untimely, Smith and Moglowsky's testimony should be completely barred from
trial.

---

[5] While the Court's October 27, 2020 order allows Plaintiff to pursue loss of earnings potential as damages (Doc. 135
at 4), the Order does not endorse or approve of the use of the untimely August 2020 expert reports addressed herein.
(See Doc. 135 at 3 n.4 (reserving ruling at that time as to whether the August 2020 reports were improper and/or may
be considered supplemental reports under Fed. R. Civ. P. 26(e)(2)).

**B.     Argument**

**1.     Plaintiff did not address loss of earnings potential in any expert testimony until after the Court struck the prior expert reports on lost wages.**

Exclusion is warranted not only for the five-month late service, but also because Plaintiff is solely to blame for the delay.  Not until after (1) Plaintiff strategically chose to serve expert reports addressing only lost wages damages on March 16, 2020 and May 8, 2020[6] (Doc. 108), (2) the Court ruled on July 21, 2020 that Plaintiff had previously abandoned lost wages as damages and was therefore barred from claiming lost wages and presenting expert discovery on the same (Doc. 122), (3) Plaintiff moved on July 29, 2020 for leave to file a third amended complaint seeking to reinsert lost wages into the case (which the Court later denied) (Docs. 123, 128), did Plaintiff, on August 21, 2020, serve Moglowsky's August 14, 2020 report and Smith's August 19, 2020 report addressing loss of earnings potential.

In denying Plaintiff's motion for leave to file a third amended complaint, the Court ruled that "Beverly cannot use the Court's summary judgment decision or its recent decision barring expert testimony on lost wages as an excuse for his belated request to reassert this category of damages, particularly where defendants objected to his attempt to reinsert lost wages into the damages calculate in December 2019, at the latest." (Doc. 128 at 2.)  Likewise, despite having claimed loss of earning potential from the outset of the case (Doc. 135 at 4; Doc. 1), Plaintiff proceeded at his own peril serving expert reports in March and May 2020 that addressed only lost wages as damages.  That Defendants thereafter successfully moved to bar lost wages damages and

---

[6] On March 23, 2020, Plaintiff notified Defendants that Smith would be supplementing his report due to Plaintiff's unavailability to speak with Smith prior to the March 16 deadline. (Doc. 108 at 1.)  On May 8, 2020, Plaintiff served a modified report from Smith, dated April 16, 2020, which addressed only lost wages.  (*Id.*)

expert testimony thereon does not give Plaintiff a do-over of expert discovery. To hold otherwise would render the Court's expert disclosure deadlines meaningless.

Four days after Plaintiff served the May 8, 2020 modified Smith report on lost wages, "[o]n May 12, 2020, Defendants informed Plaintiff that they were objecting to Plaintiff pursuing expert discovery on the issue of lost wage damages based upon prior representations made by Plaintiff that he was no longer seeking lost wage damages and, instead, only seeking economic damages in the form of lost pension" (Doc. 108 at 1), and (2) on May 15, 2020, the parties conferred by phone on those issues. Plaintiff did not seek an extension of his expert disclosure deadline in the May 18, 2020 joint status report, when Plaintiff well knew that Defendants were planning to move prior to the June 2, 2020 status hearing to bar plaintiff from pursing lost wages or presenting expert testimony thereon, if Plaintiff did not acknowledge the abandonment of lost wages and agree withdraw the expert reports thereon. (Doc. 108 at 2.) Instead of seeking an extension of Plaintiff's own expert discovery deadline, Plaintiff doubled down on lost wages, and Plaintiff lost.

### 2. The August 2020 Reports are not supplemental reports, and Rule 26(e)(2) is inapplicable.

Smith's and Moglowsky's August 2020 Reports on loss of earnings potential do not supplement the prior reports addressing only lost wages, and thus, Fed. R. Civ. P. 26(e)(2) is inapplicable. The obligation to supplement arises when previously disclosed information is incomplete or incorrect. Fed. R. Civ. P. 26(e)(1)(A). However, the Rue 26(e) duty to supplement "does not provide an opening for wholly new opinions." *Only The First, Ltd. v. Seiko Epson Corp.*, 822 F. Supp. 2d 767, 778 (N.D. Ill. 2011). "Rule 26(e) does not permit parties to file supplemental reports whenever they believe such reports would be 'desirable' or 'necessary' to their case. Rather, the Rule permits supplemental reports only for the narrow purpose of correcting inaccuracies or adding information that was not available at the time of the initial report." *Minebea*

29

*Co. v. Papst*, 231 F.R.D. 3, 6 (D.D.C. 2005). Thus, "an adverse decision on a [] motion does not allow a party a second chance on their expert report or justify ignoring the Court's scheduling order." *LaFlamboy v. Landek*, No. 05 C 4994, 2009 WL 10695380, at *4 (N.D. Ill. Sept. 3, 2009) (citing *Council 31 v. Ward*, No. 87 C 356, 1995 WL 549022, at *1 (N.D. Ill. Sept. 12, 1995)); *Ward*, 1995 WL 549022, at *1 (denying plaintiff's request to submit a new expert report in response to the Court's summary judgment ruling, as the report was substantively different than earlier reports and changed the plaintiffs' theory of the case), *aff'd sub nom. Council 31, Am. Fed'n of State, Cty. & Mun. Emps., AFL-CIO v. Doherty*, 169 F.3d 1068 (7th Cir. 1999).

Fact discovery closed years ago, and the August 2020 reports were not the result of any newly discovery or newly disclosed information. Plaintiff cannot avoid the untimeliness of the August 2020 reports offering entirely new opinions by characterizing them as supplementation of prior reports. *See, e.g.*, *In re Asbestos Prod. Liab. Litig. (No. VI)*, 289 F.R.D. 424, 425 (E.D. Pa. 2013) ("Rule 26(e) is not an avenue to correct failures of omission because the expert did an inadequate or incomplete preparation, add new opinions, or 'deepen' or 'strengthen' existing opinions." (internal citations and quotations omitted)); *Baker v. Indian Prairie Cmty. Unit, Sch. Dist. 204*, No. 96 C 3927, 1999 WL 988799, at *2 (N.D. Ill. Oct. 27, 1999) (excluding untimely expert affidavits containing "new conclusions which do not merely correct or complete prior opinions," and therefore were not supplementation; plaintiff's assertion "that expert disclosure deadlines do not prevent them from later offering new expert opinions is frivolous"); *In re Complaint of C.F. Bean L.L.C.*, 841 F.3d 365, 371 (5th Cir. 2016) (nothing that "supplemental disclosures are not intended to provide an extension of the deadline by which a party must deliver the lion's share of its expert information," and striking expert's second report as untimely and not supplementation because it contained entirely new opinions not present in earlier report); *Pluck v.*

*BP Oil Pipeline Co.*, 640 F.3d 671, 681 (6th Cir. 2011) (affirming the district court's striking of an expert's supplemental declaration offered five months late and offering a new causation methodology to bolster an earlier deficient opinion).

"Loss of earnings potential" appears nowhere in Moglowsky's March 2020 report or Smith's April 2020 report addressing solely lost wages. (*See* Doc. 132-1, 132-2.) Smith's and Moglowsky's August 2020 reports purport to address only loss of earnings potential. Plaintiff has represented to the Court that "[l]oss of earnings potential and lost wages are separate and distinct remedies." (Doc. 130 at 5 (citing *Williams v. Pharmacia, Inc.*, 137 F.3d 944, 954 (7th Cir. 1998)).) The Court accepted that argument, ruling that "the damages Beverly seeks for lost earnings potential compensate for a different injury than damages for lost wages." (Doc. 135 at 2 (citing *Williams*, 137 F.3d at 953-54).) Because lost wages are legally and factually distinct from loss of earning potential and reputational harm, the August 2020 reports are not supplemental reports of the March and May 2020 reports addressing only lost wages, and the August 2020 reports are not timely supplements of any prior reports.

### 3. The untimely August 2020 reports should be excluded and all testimony thereon barred.

The appropriate remedy for Plaintiff's untimely disclosure of Smith's August 19, 2020 report and Moglowsky's August 14, 2020 report is to strike the reports and bar all testimony from Smith and Moglowsky. Plaintiff cannot show that the failure to timely disclose expert reports on loss of earnings potential is substantially justified or harmless. Fed. R. Civ. P. 37(c)(1). As discussed above, Plaintiff has no valid reason for waiting until August 2020, five months after the plaintiff's expert disclosure deadline, to serve expert reports relating to loss of earnings potential. Plaintiff intentionally limited Smith and Moglowsky's initial reports to lost wages only, even though Plaintiff has claimed damages of loss of earnings potential since the beginning of this case.

31

(Doc. 135 at 4.)  Throughout the 2020 dispute on whether lost wages were deemed waived and whether Moglowsky's and Smith's initial expert reports were improper, Plaintiff never informed the Court or Defendants that he would be pursing expert testimony on loss of earnings potential if lost wages were deemed waived, and Plaintiff did not request an extension of his expert discovery deadline.

As the Court noted previously, "Beverly should have brought his request for damages based on loss of earnings potential to the Court's and Defendants' attention at an earlier time." (Doc. 135 at 4.)  While the Court has not barred Plaintiff from pursuing damages based on loss of earnings potential (*id.*), Plaintiff should not get a retroactive extension of his expert disclosure deadline when he timely disclosed expert reports only addressing lost wages damages he previously disclaimed, and made no mention of loss of earnings potential in any expert report at that time.  To hold otherwise would negate the importance of expert disclosure deadlines.  *See, e.g.*, *Point Prods. A.G. v. Sony Music Ent., Inc.*, No. 93 CIV. 4001 (NRB), 2004 WL 345551, at *9 (S.D.N.Y. Feb. 23, 2004) ("To accept the contention that the new affidavits [or expert reports] merely support an initial position when they in fact expound a wholly new and complex approach designed to fill a significant and logical gap in the first report would eviscerate the purpose of the expert disclosure rules.").

Defendants would be prejudiced if the August 2020 reports are not stricken as untimely. While Defendants have deposed Plaintiff's experts, Defendants would be faced with the expense of preparing for and cross-examining Plaintiff's experts at trial if the August 2020 reports are not stricken.  Further, if the August 2020 reports were not stricken as timely, nothing would stop Plaintiff from serving additional expert reports on other theories not yet rejected by the Court, and Defendants would be required to spend time and money to respond to the same.  Plaintiff's failed

32

legal strategies are no basis for excusing the late August 2020 expert reports. *See, e.g.*, *Dura Auto. Sys. of Indiana, Inc. v. CTS Corp.*, 285 F.3d 609, 616 (7th Cir. 2002) (noting that where the plaintiff's "reticence about disclosing the other experts may have been strategic," the district court was within its discretion to exclude the other experts' untimely filed reports following a court ruling excluding the original expert).

### C.    Conclusion

Based on the foregoing, Smith's August 19, 2020 report and Moglowsky's August 14, 2020 report should be excluded as untimely.  Further, because Smith's and Moglowsky's prior reports addressing lost wages have been stricken (Doc. 128 at 3), both Smith and Moglowsky should be barred from testifying at trial.

33

## DISPUTED MOTION IN LIMINE #7: MOTION IN LIMINE TO EXCLUDE STAN SMITH'S TESTIMONY AS UNRELIABLE AND CONTRARY TO LAW

### A.    Introduction

Abbott moves to exclude the testimony and reports of Plaintiff's economics expert Stan Smith.  Smith's April 2020 report solely addresses lost wages, and the Court has already precluded Plaintiff from presenting expert testimony on lost wages.  (Doc. 122.)  Smith's August 2020 report contains an invented formula for quantifying loss of earnings potential.  There is no economic or legal authority that authorizes the quantification of loss of earnings potential as Smith purports to do.  Even if Smith's August 2020 report is considered timely, and it should be stricken on that basis alone, Smith's opinions regarding loss of earnings potential are unreliable and inadmissible under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and under well-settled law precluding expert testimony attempting to quantify presumed damages through pecuniary losses.

After the Court's July 21, 2020 ruling that Plaintiff had abandoned his claims for lost wages and that Plaintiff was precluded from presenting expert testimony on lost wages, Smith spent a mere two hours converting his April 2020 report on lost wages into an August 2020 report on loss of earnings potential.  Smith simply replaced every instance of "wage loss" with "earnings potential," removed discounts for Plaintiff's post-Abbott earnings as mitigation, and made up a formula for calculating loss of earnings potential that Smith himself described in his deposition as fourth or fifth grade math and common sense.  Smith would have the jury quantify loss of earnings potential by taking Beverly's unmitigated lost wages through retirement (parroted to the penny from Smith's April 2020 report) and multiplying by an arbitrary "percentage reduction" of the jury's choosing.

There being no economic or legal basis for Smith's invented formula, Smith's testimony should be ruled inadmissible and barred from the trial.

### B.      Standard of Review

Federal Rule of Evidence 702 and Daubert govern the admissibility of expert testimony. *Kirk v. Clark Equip. Co.*, 991 F.3d 865, 871 (7th Cir. 2021).  Rule 702 provides that a witness "qualified as an expert by knowledge, skill, experience, training, or education may testify" if:

> (a)      the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b)      the testimony is based on sufficient facts or data;
>
> (c)      the testimony is the product of reliable principles and methods; and
>
> (d)      the expert has reliably applied the principles and methods to the facts of the case.

"In *Daubert*, the Supreme Court explained that Rule 702 confides to the district court a gatekeeping responsibility to ensure that the proposed expert testimony 'is not only relevant, but reliable.'" *Kirk*, 991 F.3d at 872 (quoting *Daubert*, 509 U.S. at 589).  "In performing this role, the district court must engage in a three-step analysis, evaluating: '(1) the proffered expert's qualifications; (2) the reliability of the expert's methodology; and (3) the relevance of the expert's testimony.'" *Id.* (quoting *Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 779 (7th Cir. 2017)).

Smith's academic and professional credentials have no bearing on Plaintiff's burden to demonstrate that Smith's reasoning and methodology in this case are scientifically valid.  "[E]ven '[a] supremely qualified expert cannot waltz into the courtroom and render opinions unless those opinions are based upon some recognized scientific method.'" *Kirk*, 991 F.3d at 873-74 (quoting *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000)).  "When evaluating the reliability of expert testimony, the district court must make 'a preliminary assessment of whether the reasoning

35

or methodology underlying the testimony is scientifically valid.'"  *Id.* at 873 (quoting *Daubert*,

509 U.S. at 592–93).  A court may consider the following non-exhaustive list of factors:

> (1) [W]hether the particular scientific theory "can be (and has been) tested"; (2) whether the theory "has been subjected to peer review and publication"; (3) the "known or potential rate of error"; (4) the "existence and maintenance of standards controlling the technique's operation"; and (5) whether the technique has achieved "general acceptance" in the relevant scientific or expert community.

*Id.* (quoting *Deputy v. Lehman Bros., Inc.*, 345 F.3d 494, 505 (7th Cir. 2003)).  As discussed below,

none of those factors are met here, and Smith's opinions are not reliable and should be excluded.

### C.     Argument

#### 1.     Smith's methodology for calculating lost earnings potential is not scientifically valid.

Smith's invented formula for loss of earning potential calls for the multiplication of two

numbers:  (1) Plaintiff's total earnings potential (Plaintiff's unmitigated lost wages and benefits

through assumed retirement age, carried over from Smith's April 2020 report), multiplied by (2)

an arbitrary discount factor of the jury's choosing, which Smith styles as "earnings reduction

percentage."

Smith did not review any textbooks, treatises, or publications relating to the calculation of

loss of earnings potential in preparing his August 19, 2020 report.  (Smith Dep. 42:8-19 (Ex. E);

Smith 8.19.20 Report at 2-3 (Ex. F).)  Smith also disclaimed that any textbook or peer-reviewed

literature would contain his multiplication formula for loss of earnings potential.  (Smith Dep.

96:6-99:3.) (Ex. E)  Rather, Smith characterized the formula as fourth or fifth grade math and

logic.  (*Id.*)  Underscoring the unreliability of Smith's formula, Smith was unable to identify any

alternative formula for calculating loss of earnings potential, or why he believed the formula in his

report was better than any other formula.  (Smith Dep. 104:5-105:11.) (Ex. E)

The August 2020 report purports to have a different assignment than the April 2020 report. However, Smith spent a total of only two hours creating the August 2020 report. (Smith Dep. 34:20-24, 36:6-11.) (Ex. E) He created the August 2020 report by referring to his prior reports in this case and the materials referenced therein. (Smith Dep. 35:8-15.) (Ex. E) Although the August 2020 report carries forward, to the penny, Smith's calculation of unmitigated lost wages and benefits from the April 2020 report, the August 2020 report does not attempt to explain how loss of earnings potential relates in any way to lost wages and benefits. (Smith Dep. 37:23-38:2.) (Ex. E) The unreliability of Smith's methodology is underscored by the juxtaposition of Plaintiff's counsel's insistence that lost wages and loss of earnings potential account for different forms of harm, with Smith's copying of his April 2020 calculations of unmitigated lost wages and benefits (April 2020) to derive loss of earnings potential (August 2020) in but two hours' time.

Moreover, as discussed below, each of the two multiplicands of Smith's formula for loss of earnings potential ((i) Earnings Potential and (ii) Percentage Earnings Reduction) is unreliable unto itself, presenting independent fatal flaws and independent grounds for exclusion.

### i.     Multiplicand No. 1:  Earnings Potential

Smith's quantification of earnings potential is nearly identical to his prior (plainly inadmissible) report calculating lost wages and benefits. Smith's August 2020 report contains the exact same--to the penny--multi-million dollar calculations as his April 2020 report addressed to "lost wages," he only went through the report and changed the words "wage loss" to "earnings potential." (*Compare* Smith 4.16.20 report (Doc. 132-1) at 5, *with* Smith 8.19.20 report (Ex F), Smith Dep. 5:16-6:6 & Ex. 1 at 5.) (Ex. E) Insofar as this Court has recognized that "the damages Beverly seeks for lost earnings potential compensate for a different injury than damages for lost wages," (Doc. 135 at 2), Smith's use of identical computations to generate identical seven-figure

amounts of wages and earnings potential is an unreliable and unscientific changing of words (and words have meaning) without changing numbers.

Inexplicably, Smith's August 2020 report does not account for any of Plaintiff's Cook County wages, as did his April 2020 Report. (Doc. 132-1 at 5-6; Smith Dep. 49:6-11, 51:8-22, 52:23-53:10.) (Ex. E) Smith provided contradictory deposition testimony about whether any employment beyond Abbott is germane to loss of earnings potential. Smith testified during his deposition, "the loss of earnings potential I'm looking at here is based on what he earned at Abbott and strictly what he earned at Abbott." (Smith Dep. 54:22-55:6.) (Ex. E) Later, Smith testified, "[h]is loss of earnings potential isn't strictly related to Abbott. It's based upon what he earned at Abbott but also other things [referring to comparable companies]. And he doesn't have to stay at Abbott the rest of his life. He doesn't have to have plans to stay at Abbott the rest of his life to have a loss of potential." (Smith Dep. 83:6-24.) (Ex. E) In any case, there is no economic or legal authority that future income, including known post-Abbott income from Cook County or any other source, may be ignored when assessing lost earnings potential. Moreover, it is illogical for Smith to purport to quantify an injury claimed over the remainder of Plaintiff's working life by ignoring all known post-injury facts.

Smith's carry-forward of his unmitigated lost wages and benefits calculation from his April 2020 report infects the reliability of his August 2020 report and opinions therein. For example, Smith could not identify any authority or economic principles to support his inclusion of benefits values in his calculation of loss of earnings potential from alleged defamation. (Smith Dep. 127:24-128:3.) (Ex. E) Smith explained only that benefits are part of earnings. (*Id.*) Smith applied the same discount factor across all components of earnings potential (*i.e.*, both lost wages and benefits), and did not give any thought prior to his deposition to applying different discount factors

for different components of lost earnings. (Smith Dep. 128:4-129:12.) (Ex. E) There is no economic or legal basis upon which to assume, as Smith did, that loss of earning potential resulting from purported defamation includes both wages and benefits or that wages and benefits are lost at the same rates over time.

Smith's formula is similarly unreliable because it provides no definitions or guidelines for the jury's purported selection of the duration of the loss of earnings potential. Contrary to Smith's report, which opines that "the loss" is calculated based upon earnings potential under one of three assumed scenarios each through age 67, Smith conceded during his deposition that it was "outside the scope of my assignment" to decide how many years of earnings potential are to be applied, *i.e.*, there are infinite (not three) scenarios. (Smith Dep. 107:16-23.) (Ex. E) Smith merely offers his speculation that the loss of earnings potential will continue for the rest of Plaintiff's career. (Smith Dep. 108:19-109:1.) (Ex. E) Such speculation is the antithesis of expert testimony, particularly because the accumulation of damages over many future years is how Smith comes up with seven-figure damages jackpots. (Smith Dep. Ex. 1 at 8-12) (Ex. E); *see Daubert*, 509 U.S. at 589 (holding that an expert opinion must be grounded in "methods and procedures," and must consist of more than simply "subjective belief or unsupported speculation").

Applying his unreliable formula, Smith offers three hypothetical scenarios quantifying Plaintiff's unmitigated lost wages and benefits through retirement--again, identical to his April 2020 report on lost wages. Smith offers no opinion on the likelihood of any of these three scenarios, no factors for determining the likelihood of any of the scenarios, or opinion if they are even possible scenarios to occur at all. (Smith Dep. 84:14-85:17.) (Ex. E) The absence of any such explanation and hasty creation of the August 2020 report in two hours underscores that Smith's methodology has no basis in economics, the facts, or the law, and in no way meets the

39

standard for a reliable expert opinion informing reputational harm. *See, e.g., Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 761 (7th Cir. 2010) (noting that expert testimony may not be based on subjective belief or speculation); *Lang v. Kohl's Food Stores, Inc.*, 217 F.3d 919, 924 (7th Cir. 2000) ("[A]n expert's work is admissible only to the extent it is reasoned, uses the methods of the discipline, and is founded on data. Talking off the cuff—deploying neither data nor analysis—is not an acceptable methodology.").

### ii. Multiplicand No. 2: Percentage Earnings Reduction

Smith provides no definitions or guidelines for the jury's purported selection of the percentage earnings reduction. There is nothing in Smith's report that identifies when, if at all, any particular earnings reduction percentage is appropriate, or what factors a jury should consider when selecting an earnings reduction percentage or duration of loss of earnings potential. (Smith Dep. 92:8-16.) (Ex. E) Nor is there any economics authority, literature, treatise, or textbook that identifies what factors can be used to identify the percentage earnings reduction. (Smith Dep. 99:13-100:5.) (Ex. E) Instead, according to Smith, "[i]t's whatever the finder of fact thinks is relevant." (Id. at 100:2-3.) The jury's arbitrary selection of a discount factor for Smith's formula is the antithesis of reliable expert testimony. *See, e.g., Zenith Elecs. Corp. v. WH-TV Broad. Corp.*, 395 F.3d 416, 419-20 (7th Cir. 2005) (affirming exclusion where expert "extrapolate[d] from existing data," but opinion was "connected to existing data only by the ipse dixit of the expert"); *Dhillon v. Crown Controls Corp.*, 269 F.3d 865, 871 (7th Cir. 2001) (expert "must testify to something more than what is obvious to the layperson").

Smith similarly testified that the selection of percentage earnings reduction was "common sense," not a subject of peer-reviewed literature. (Smith Dep. 94:24-96:5.) (Ex. E) Smith deferred to Plaintiff's counsel's "trial strategy to inform the fact finder what percentage they believe should be used. I am not pointing them in a particular direction." (Smith Dep. 99:4-12.) (Ex. E) Insofar

40

as Smith defers to Plaintiff's counsel to select a percentage earnings reduction to suit Plaintiff's trial strategy, Smith's formula is not scientific or reliable expert testimony.  *See, e.g., E.E.O.C. v. Rockwell Int'l Corp.*, 60 F. Supp. 2d 791, 797 (N.D. Ill. 1999) ("A proffered expert must 'bring to the jury more than the lawyers can offer in argument.'" (quoting *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992)), *aff'd*, 243 F.3d 1012 (7th Cir. 2001))).

Under *Daubert*, expert witness testimony must have "the same level of intellectual rigor that characterizes the practice of an expert in the relevant field" so as to be deemed reliable enough to present to a jury. *Lapsley v. Xtek, Inc.*, 689 F.3d 802, 805 (7th Cir. 2012).  Smith's failure to offer any economic guidance on the jury's selection a percentage earnings reduction forecloses his formula from meeting the Daubert standard for admissibility.

### 2. Smith's formula is not a reliable or lawful basis for quantifying reputational harm.

Smith's formula is unreliable and contrary to settled law to the extent it purports to quantify reputational harm as a percentage of unmitigated lost wages through retirement.  The Court has noted that "Beverly represents that he seeks to use lost earnings potential as a proxy for his alleged reputational injuries" (Doc. 135 at 3), yet nothing in Smith's August 2020 report or his deposition explains how a jury's arbitrarily chosen percentage of unmitigated lost wages (*i.e.*, Smith's invented formula) quantifies reputational harm in an economically sound or legally defensible way.  Indeed, there is no economic or legal authority validating Smith's formula as a reliable proxy for Plaintiff's alleged reputational injuries.

Smith personally has no expertise in quantifying damages resulting from defamation or reputational harm from any source.  Tellingly, during his deposition, Smith was not able to identify any factors that could mitigate the purported damaging effects of defamation on one's career, other than winning the Presidential Medal of Freedom from Joe Biden.  (Smith Dep. 116:24-117:14.)

41

(Ex. E)  Smith testified that defamation could impact a career if known to a subsequent employer or potential employer; however, there is no record evidence that any purported defamation was made known to any of Plaintiff's actual or potential employers.  (Smith Dep. 114:12-20.) (Ex. E)  There being no factual, scientific or legal link between any purported reputational injuries and Smith's formula purporting to quantify the same, Smith's opinions are purely speculative and inadmissible.  *See Daubert*, 509 U.S. at 589 (holding that an expert opinion must be grounded in "methods and procedures," and must consist of more than simply "subjective belief or unsupported speculation"); *Jones v. Nat'l Council of Young Men's Christian Associations of the United States of Am.*, 34 F. Supp. 3d 896, 900 (N.D. Ill. 2014) ("Even opinions about general principles have to be logically related to the factual context of a case to be admissible—those general principles must still 'fit' the case—as the Advisory Committee Note to the 2000 amendments to Rule 702 . . . points out."); *Lang*, 217 F.3d at 924 ("[A]n expert's work is admissible only to the extent it is reasoned, uses the methods of the discipline, and is founded on data.  Talking off the cuff— deploying neither data nor analysis—is not an acceptable methodology.").

Moreover, presumed damages for reputational harm cannot be informed by lost wages or any quantified pecuniary loss, as Smith purports to offer.  As this Court recently observed, the Seventh Circuit has analogized loss of earnings potential to an "injury to character and reputation" and concluded that "[l]ost future earning capacity is a nonpecuniary injury."  (Doc. 135 at 2 (quoting W*illiams v. Pharmacia, Inc.*, 137 F.3d 944, 952-53 (7th Cir. 1998)).  Further, in *Brown & Williamson v. Jacobson*, 827 F.2d 1119, 1140 (7th Cir. 1987), the Seventh Circuit noted on a libel per se claim under Illinois law that "an attempt to show specific pecuniary loss, while still electing the presumption of general damages, is under certain circumstances impermissible," citing *Sunward Corporation v. Dun & Bradstreet, Inc.*, 811 F.2d 511, 538 (10th Cir. 1987).  The "certain

42

circumstances" were defined in *Sunward*, addressing presumed damages on a claim of libel per se. There, the Tenth Circuit made expressly clear that "absent proof of causation it is not permissible to suggest the loss of specific customers, orders, profits or other specific pecuniary loss. It is equally impermissible to use general background information regarding a decline in sales or profits to imply causation and special damage where the plaintiff relied solely on the presumption of damage, having elected not to prove special damage." *Sunward*, 811 F.2d at 539 (collecting cases).

Plaintiff's counsel has disavowed any claim for actual damages on the defamation claim both in filings with the Court and during Smith's deposition. (Doc. 130 at 2 (identifying the defamation claim as a claim of "defamation per se, which specifically sought 'presumed damages'"); *id.* at 7 ("Mr. Beverly introduced his claim for presumed damages under his defamation per se claim."); Smith Dep. 115:7-13 (Ex. E) (Plaintiff's counsel: "I don't know what you're getting into here, [attorney for Defendants], but [Dr. Smith is] not here to testify about actual damages and who knew and didn't know what about the defamation. . . . This is a defamation per se claim."), Doc. 133 at 4 ("reputational harm is a component of presumed damages in a defamation per se case.").) Smith's formula and opinions center on the amount of Plaintiff's unmitigated lost wages through retirement--a purported seven-figure pecuniary loss that *Sunward* and by extension the Seventh Circuit in *Jacobson* expressly prohibit from informing a jury's consideration of presumed damages. There being no claim for actual damages for reputational harm on any claim, Smith's quantification of presumed damages as a percentage pecuniary damages (*i.e.*, unmitigated lost wages) is improper and inadmissible. *Sunward*, 811 F.2d at 539; *Jacobson*, 827 F.2d at 1140.

As this Court previously noted, where, as here, "the plaintiff elects to pursue only the presumption of general damages, the presentation of a damages argument must also be general,

however frustrating that may be to all concerned." (Doc. 135 at 4 (citing *Sunward*, 811 F.2d at 542).) In other words, "absent proof of causation it is not permissible to suggest the loss of specific [job opportunities or future wages] or other specific pecuniary loss. It is equally impermissible to use general background information regarding a decline in [job opportunities or future wages] to imply causation and special damage where the plaintiff relied solely on the presumption of damage, having elected not to prove special damage." *Sunward*, 811 F.2d at 539. Barring Smith's testimony and opinions here accords with the Seventh Circuit caselaw excluding expert testimony that rests on methodologies that are contrary to law. *See, e.g.*, *Lang v. Kohl's Food Stores, Inc.*, 217 F.3d 919, 924 (7th Cir. 2000) (excluding opinion of Ph.D. in labor relations and economics whose analysis trumped job descriptions over actual tasks--"a sorry misunderstanding of the Equal Pay Act.").

### D. Conclusion

It appears that Plaintiff will stop at nothing to inject seven-figure lost wages claims for damages into the case. Plaintiff's untimely and hasty efforts to do so through purported expert testimony on loss of earnings potential should be stopped here and now, once and for all.

Smith's formula that the jury pick one of his unmitigated lost wages and benefits calculation through retirement, pick a percentage earnings reduction, and then multiply to arrive at a jackpot loss of earnings potential is devoid of factual, economic, or legal support. Smith's made-up fifth-grade-math-and-common-sense formula is not validated scientifically or otherwise based on Smith's training or experience. Smith's opinions do not satisfy Fed. R. Evid. 702 and *Daubert* and should be excluded.

**DISPUTED MOTION IN LIMINE #8: MOTION IN LIMINE TO EXCLUDE KEITH
MOGLOWSKY'S TESTIMONY AS UNRELIABLE AND CONTRARY TO LAW**

    **A.    Introduction**

Abbott moves to exclude the testimony and reports of Plaintiff's vocational expert Keith
Moglowsky.

Moglowsky's August 2020 report offers pure speculation, without factual support, that
Plaintiff's chances for some unspecified future job might be harmed by an Abbott security report
made by Victoria Luo to Abbott security on July 29, 2015, the same day Plaintiff was terminated
("Abbott security report"). Moglowsky opines that if (a) some unspecified person who had access
to the Abbott security report, (b) went to work for another employer and (c) Plaintiff applied there,
(d) it is possible that the unspecified person might recall the Abbott security report, (e) believe the
report to be true, (f) which could lead to Plaintiff not being offered work, and (g) potentially
damage Plaintiff's career in the future. Such seven-layer speculation finds no support of record or
Moglowsky's education, training or experience. Indeed, Moglowsky disclaims any expertise in
linking alleged defamation to future job opportunities.

Further, the material similarity between Moglowsky's March and August 2020 reports
underscore that Moglowsky's opinions about the length and character of Plaintiff's future
employment prospects are not scientifically valid or reliable under *Daubert*. In his March 2020
report, Moglowsky prognosticated that Beverly would have continued working for Abbott for 15
years until retirement had he not been involuntarily separated from employment due to issues
relating to a leave of absence, and then in August 2020, after less than 90 minutes of effort, issued
a new report concluding that, had Beverly not been defamed, he would have been rehired by Abbott
or a similar company and continued working there for 15 years until retirement.

Moglowsky's conclusions are particularly unreliable given his admission that he has never helped someone at Plaintiff's level and line of work find another job, and he had only assisted one person in the year prior to his December 2020 deposition find a job. Moreover, the August 2020 conclusion ignores that Beverly voluntarily began working an IT job for Cook County several months before his employment at Abbott ended. There being no legal, scientifically reliable or factual basis for Moglowsky's speculation about Plaintiff's post-Abbott employment prospects at Abbott or anywhere else, Moglowsky's testimony and opinions are inadmissible.

Finally, although Moglowsky has no expertise in economics, Moglowsky's August 2020 report purports to contain a calculation of Plaintiff's future salary through retirement. This calculation is not only inadmissible for being outside Moglowsky's claimed experience, but also is a legally impermissible attempt to quantify presumed damages through purported pecuniary loss.

There being no legal, scientific or factual basis for Moglowsky's opinions, they are inadmissible under the Daubert standard, and Moglowsky should be barred from testifying at trial.

### B.    Standard of Review

Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), govern the admissibility of expert testimony. *Kirk v. Clark Equip. Co.*, 991 F.3d 865, 871 (7th Cir. 2021). Rule 702 provides that a witness "qualified as an expert by knowledge, skill, experience, training, or education may testify" if:

(a)    the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b)    the testimony is based on sufficient facts or data;

(c)    the testimony is the product of reliable principles and methods; and

(d)    the expert has reliably applied the principles and methods to the facts of the case.

"In *Daubert*, the Supreme Court explained that Rule 702 confides to the district court a gatekeeping responsibility to ensure that the proposed expert testimony 'is not only relevant, but reliable.'" *Kirk*, 991 F.3d at 872 (quoting *Daubert*, 509 U.S. at 589). "In performing this role, the district court must engage in a three-step analysis, evaluating: '(1) the proffered expert's qualifications; (2) the reliability of the expert's methodology; and (3) the relevance of the expert's testimony.'" *Id.* (quoting *Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 779 (7th Cir. 2017)).

Importantly, Moglowsky's academic and professional credentials have no bearing on Plaintiff's burden to demonstrate that Moglowsky's reasoning and methodology in this case are scientifically valid. "[E]ven '[a] supremely qualified expert cannot waltz into the courtroom and render opinions unless those opinions are based upon some recognized scientific method.'" *Kirk*, 991 F.3d at 873-74 (quoting *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000)). "When evaluating the reliability of expert testimony, the district court must make 'a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid.'" *Id.* at 873 (quoting *Daubert*, 509 U.S. at 592–93). A court may consider the following non-exhaustive list of factors:

> (1) [W]hether the particular scientific theory "can be (and has been) tested"; (2) whether the theory "has been subjected to peer review and publication"; (3) the "known or potential rate of error"; (4) the "existence and maintenance of standards controlling the technique's operation"; and (5) whether the technique has achieved "general acceptance" in the relevant scientific or expert community.

*Id.* (quoting *Deputy v. Lehman Bros., Inc.*, 345 F.3d 494, 505 (7th Cir. 2003)). As discussed below, none of those factors are met here, and Moglowsky's opinions are not reliable and should be excluded.

### C.    Argument

####    1.    Moglowsky's opinion about the effect of purported defamation consists of layers upon layers of rank speculation.

Moglowsky's compound speculation of potential, hypothetical future harms from alleged defamation does not meet the *Daubert* standard and is inadmissible.  Moglowsky stated:

> [W]ith inaccurate statements provided by his direct supervisor to Abbott security at the time of termination, insinuating dishonesty and referencing past military background as a reason to imply safety issues, this was documented accordingly the several individuals having access to this.  In the future, there is potential for personnel from Global Security or Office of Compliance to move on with other employers.  With the likelihood for Mr. Beverly to apply for a different job with a new employer, no longer enjoying the job security he held with Abbott Laboratories for over eight years, it is possible for one of these people to recall this inaccurate information, which could lead to Mr. Beverly not being offered worked.  This could therefore potentially damages his career in the future.

(Moglowsky Dep. 8:18-9:1 & Ex. 3 at 8 (Ex. G); accord *id.* at 6, bullet point at top of page ("If one of these individuals who previously had access to information generated from the call by Ms. Luo was now working in a similar position that the he or she held with Abbott, they could potentially remember this report and the unfounded information reported by her, assume he had engaged in the past inappropriate conduct, for which he would not be offered work. . . . This could damage his career potentially.").)

Moglowsky's testimony presents no less than seven layers of speculative necessary conditions, *i.e.*, if (a) some unspecified person who had access to the Abbott security report, (b) went to work for another employer and (c) Plaintiff applied there, (d) it is possible that the unspecified person might recall the Abbott security report, (e) believe the report to be true, (f) which could lead to Plaintiff not being offered work,[7] and (g) potentially damage Plaintiff's career in the future.  Moglowsky admitted during his deposition that he had no information to suggest

---

[7] Moglowsky acknowledged that any repercussions for Plaintiff would be "contingent upon the information about alleged dishonesty being communicated to the hiring person or entity."  (Moglowsky Dep. 112:24-113:6.) (Ex. G)

that any of these conditions were met, and he offered no opinion on the likelihood of any of these conditions being met. (Moglowsky Dep. 104:20-106:23, 107:15-108:18, 127:18-128:18, 129:13-130:10.) (Ex. G) Where, as here, an expert has no factual predicate and offers only speculation, the opinions are inadmissible under *Daubert*. *See, e.g.*, *Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 761 (7th Cir. 2010) (noting that expert testimony may not be based on subjective belief or speculation); *United States v. Gallardo*, 497 F.3d 727, 733 (7th Cir. 2007) ("*Daubert* instructs that expert testimony must be relevant and factually linked to the case in order to meet Rule 702's 'helpfulness' requirement."; excluding expert testimony regarding the effect of drug abuse on one's memory because there was no evidence that any witness used drugs).

Nor does Moglowsky have any education, training, or experience that supports his speculative link between purported defamation and loss of unspecified future work. (Moglowsky Dep. Ex. 3 at 6, 8.) (Ex. G) Moglowsky did not review any textbooks, treatises, or professional publications for purposes of preparing his report. (Moglowsky Dep. 62:10-13.) (Ex. G) Moglowsky has never helped someone at Plaintiff's level and line of work find another job,[8] and the last time he helped anyone find a job was in 2019. (Moglowsky Dep. 23:13-16, 24:10-22.) (Ex. G) Moglowsky conceded that he does not have any expertise in identifying harm or damages of any kind resulting from defamation. (Moglowsky Dep. 120:20-24.) (Ex. G) Further, Moglowsky has never investigated whether any purportedly false statement had any impact on a person's candidacy for any particular job, and Moglowsky further stated that such was beyond the scope of a vocational consultant. (Moglowsky Dep. 127:12-17.) (Ex. G)

When asked during his deposition what he relied upon to link purported defamation to loss of work, Moglowsky cited only his completion of vocational evaluations in which "every case is

---

[8] According to Moglowsky, he would expect Plaintiff to be fully capable of looking for a job independently of any vocational consultant. (Moglowsky Dep. 131:23-132:5.) (Ex. G)

different," and the common knowledge that dishonesty on a job application or during employment can be grounds for termination of employment and is "not good" for employment or future employment potential. (Moglowsky Dep. 102:1-104:9, 109:6-110:17, 112:5-23, 125:8-25.) (Ex. G) Moglowsky offers no scientific or specialized knowledge or experience informing about how, if at all, the allegedly defamatory Abbott security report impacted Plaintiff's future job opportunities. *See, e.g.*, *Andersen v. City of Chicago*, 454 F. Supp. 3d 740, 744 (N.D. Ill. 2020) ("[A]n expert who is relying on experience . . . must connect his experience to the opinions he offers."; excluding expert testimony for not meeting this standard). Because Moglowsky has no education, training, or experience identifying or assessing the effects of alleged defamation on job prospects, all such testimony and opinions are inadmissible under Fed. R. Evid. 702 and *Daubert*.

### 2. Moglowsky purely speculates about the duration of Plaintiff's career and the impact of alleged defamation thereon.

Moglowsky states in his August 2020 Report that, "In conclusion, it appears highly likely that had Mr. Beverly not been defamed, he could have been rehired by Abbott or a similar company working at a similar level if not in a higher position for the next 15 years until reaching retirement age." (Moglowsky Dep. Ex. 3 at 7.) (Ex. G) This conclusion was carried over from his March 2020 report, with the bolded wording change below, and ignoring Plaintiff's employment with Cook County during and after his employment with Abbott ended.

| Moglowsky Mar. 2020 Report (Doc. 132-2 at 8-9) | Moglowsky Aug. 2020 Report (Moglowsky Dep. Ex. 3 at 7-8) (Ex. G) |
|---|---|
| In conclusion, it appears highly likely that **had Mr. Beverly not been involuntarily separated from employment with Abbott Laboratories due to issues related to leave of absence, he would have continued working in a same level** if not in a higher position for the next 15 years until reaching retirement age. | In conclusion, it appears highly likely that **had Mr. Beverly not been defamed, he could have been rehired by Abbott or a similar company working at a similar level** if not in a higher position for the next 15 years until reaching retirement age.<br><br>[Paragraph omitted] |

| Moglowsky Mar. 2020 Report (Doc. 132-2 at 8-9) | Moglowsky Aug. 2020 Report (Moglowsky Dep. Ex. 3 at 7-8) (Ex. G) |
|---|---|
| Alternatively, Mr. Beverly is presently employed with Cook County Clerk of the Circuit Courts Offices in a related position, but at a lower salary. It also seems that he does not have the job security, working in a "political" office where the clerk will not be running for re-election. This is compared to Abbott Labs, a Fortune 500 company, with significant, long standing history, based in the Chicago metro area. | |

The circumstances under which the August 2020 report were generated are not at all scientific or reliable. Moglowsky denied placing any new substance or new substantive opinions in his August 2020 report. (Moglowsky Dep. 43:15-44:5.) (Ex. G) He further denied changing his methodologies from his March to August 2020 report. (Moglowsky Dep. 162:5-9.) (Ex. G) He spent a total of 1.4 hours speaking with Plaintiff's counsel and revising his March 2020 report to generate his August 2020 report. (Moglowsky Dep. 52:12-16 & Ex. 6, 54:20-55:22, 55:24-56:4.) (Ex. G) Yet as the above chart shows, Moglowsky purports to offer opinions on completely different subjects: in March 2020, Moglowsky opined about the impact of **job loss** on future employment opportunities, whereas in August 2020, Moglowsky opined about the impact of **alleged defamation** on future employment opportunities. Moglowsky describes both as being "highly likely," without explaining or identifying any particular odds or percentage likelihood of occurrence. (Moglowsky Dep. 121:22-122:3.) (Ex. G)

That each of the above assertions is causally linked to an assumed 15-year job loss, without explanation, further betrays the unreliability of Moglowsky's opinions. Moglowsky testified that his assignment changed in August 2020 to remove any assumptions about how long Beverly would have worked at Abbott had he not been terminated. (Moglowsky Dep. 43:3-14, 57:1-13.) (Ex. G)

Yet Moglowsky's August 2020 report parroted the same 15-year duration from the March 2020 report as the length of time Beverly would have continued working at Abbott had he been rehired. Compare August 2020 report, Moglowsky Dep. Ex. 3 at 7 (Ex. G) ("Hence, had he been rehired by Abbott, it is likely Mr. Beverly could have had continued in his career here for at least another 15 years."), with March 2020 report, Doc. 132-2 at 8 ("Hence, it is likely Mr. Beverly would have had continued in his career here for at least another 15 years."). And, contrary to the 15-year assumption, Moglowsky's own notes of his interview of Plaintiff reflect that Plaintiff "wanted to work another 10 to 15 years before retiring." (Moglowsky Dep. 147:10-19 & Ex. 7 at Bates 1397.) (Ex. G)

It is pure speculation contrary to undisputed fact for Moglowsky to opine that Plaintiff would have continued to work at Abbott or any other employer in a similar role for any amount of time, let alone 15 years, given that Plaintiff went to work an IT job at Cook County before he requested a leave of absence and months prior to the termination of his employment at Abbott. (Doc. 50-4 at 3; Doc. 50-5 at 2.) Moglowsky testified that he believed Beverly started working at Cook County only after his employment at Abbott ended. (Moglowsky Dep. 80:16-81:19.) (Ex. G) In fact, Beverly began working at Cook County on March 9, 2015--one week before he first requested a personal leave of absence from Abbott--and began receiving a full-time salary from Cook County on April 1, 2015, several months prior to his July 29, 2015 termination from Abbott. (Doc. 50-4 at 3; Doc. 50-5 at 2.) Moglowsky acknowledged the sequencing of when Beverly began working at Cook County and when his employment at Abbott ended was important. (Moglowsky Dep. 81:6:-82:24.) (Ex. G) Yet, Moglowsky "would dare not speculate" how Beverly working in a paid position at Cook County before his employment ended would have impacted the opinions in his August 2020 report. (Moglowsky Dep. 83:1-16.) (Ex. G) Courts do not allow

experts to offer opinions so highly disconnected from the facts. *See, e.g.*, *Jones v. Nat'l Council of Young Men's Christian Associations of the United States of Am.*, 34 F. Supp. 3d 896, 901 (N.D. Ill. 2014) (excluding expert testimony under Rule 702 and alternatively Rule 403 because there is a "substantial disconnect between the abstract testing [relied on] . . . and the fact context of this case").

Moglowsky's August 2020 report cites only Abbott financial publications on company performance in 2018 and 2020 to support the conclusion that Beverly would have continued to work there for at least another 15 years. (Moglowsky Dep. Ex. 3 at 7.) (Ex. G) Plainly, Abbott's financial performance as a company says nothing about individual employment or promotional opportunities there for Plaintiff, particularly given that he went to work for Cook County while still employed at Abbott.

Moglowsky's opinion that Plaintiff could have been rehired at "a similar company" to Abbott and worked there for 15 years is even more attenuated. (Moglowsky Dep. Ex. 3 at 7.) (Ex. G) Moglowsky does not identify any "similar company" in his August 2020 report, and Moglowsky does not provide any facts or data about any such "similar company" in his August 2020 report to support a characterization of similarity or suitability to employing Plaintiff. During his deposition, Moglowsky could not identify any jobs offered by another employer at any time that would suit Plaintiff.[9] (Moglowsky Dep. 123:16-23.) (Ex. G) Nor did Moglowsky look at any labor market forecasts. (Moglowsky Dep. 64:8-10.) (Ex. G)

Based upon the foregoing, there is no factual, scientific, or legal basis for Moglowsky to opine that Plaintiff would have been rehired at Abbott or hired anywhere else and worked for 15

---

[9] To prepare for his deposition, Moglowsky purportedly skimmed indeed.com to look for jobs in the financial field. (Moglowsky Dep. 12:21-13:17.) (Ex. G) Moglowsky could not recall the companies offering the jobs. (Moglowsky Dep. 13:15-17.) (Ex. G)

years had he not been defamed. *See, e.g.*, *Lang*, 217 F.3d at 924 ("[A]n expert's work is admissible only to the extent it is reasoned, uses the methods of the discipline, and is founded on data. Talking off the cuff—deploying neither data nor analysis—is not an acceptable methodology."); *Zenith Elecs. Corp. v. WH-TV Broad. Corp.*, 395 F.3d 416, 419-20 (7th Cir. 2005) (affirming exclusion where expert "extrapolate[d] from existing data," but opinion was "connected to existing data only by the *ipse dixit* of the expert").

### 3. Moglowsky improperly speculates that, because Plaintiff was promoted in the past, he would be promoted in the future.

Moglowsky purports to opine that in the 15 years until Beverly's retirement, it is more likely than not that he would receive a promotion of at least "one level higher." (Moglowsky Dep. Ex. 3 at 7 (Ex. G); Moglowsky Dep. 117:11-25.) (Ex. G) When asked to explain the basis for this opinion, Moglowsky referred only to Beverly's education, work history, and the fact that he had received promotions in the past.[10] (Moglowsky Dep. 58:15-60:6, 171:21-172:12.) (Ex. G) Past work performance and past promotions, however, are not probative of future employability or future promotions. *See, e.g., Taylor v. United Lab'ys, Inc.*, No. 08-4053-KES, 2010 WL 3081535, at *5 (D.S.D. Aug. 6, 2010) ("[T]he fact that United Laboratories previously promoted Taylor does not establish that she is qualified for an additional promotion."); *Fortier v. Ameritech Mobile Commc'ns, Inc.*, 161 F.3d 1106, 1113 (7th Cir. 1998) ("Certainly, earlier evaluations cannot, by themselves, demonstrate the adequacy of performance at the crucial time when the employment action is taken."). An expert "opinion must 'add [ ] something' and not merely be a gratuitous interpretation the factual record," as Moglowsky here offers. *Cage v. City of Chicago*, 979 F. Supp. 2d 787, 834 (N.D. Ill. 2013) (quoting *United States v. Hall*, 93 F.3d 1337, 1343 (7th Cir. 1996))).

---

[10] During his employment at Abbott from 2007-2015, Beverly never received a promotion. (Doc. 62 ¶ 16-18.)

54

That Moglowsky offers only an inadmissible gratuitous and unreliable opinion about Plaintiff's future promotability is underscored by the fact that Moglowsky's August 2020 report does not identify any job promotion or "one level higher."  (Moglowsky Dep. 120:4-10.) (Ex. G)  When asked during his deposition what job he considered to be a promotion, Moglowsky admitted that he had not given the matter any thought, did not have any particular position in mind, was not able to identify any job "one level higher," and testified that "we'd have to take a look at it . . . it was just a general term."  (Moglowsky 118:1-119:6.)  Moglowsky's purported opinion about Plaintiff's future promotability--without having defined a promotion or considered any potential position of promotion or Plaintiff's qualifications therefor--is factually baseless and inadmissible speculation. *See, e.g.*, *Lang*, 217 F.3d at 924 ("[A]n expert's work is admissible only to the extent it is reasoned, uses the methods of the discipline, and is founded on data.  Talking off the cuff—deploying neither data nor analysis—is not an acceptable methodology.").

### 4.	Moglowsky has no expertise to project Plaintiff's future wages.

Moglowsky's August 2020 report purports to contain a projection of Plaintiff's post-Abbott wages for 15 years with an assumed 3% annual wage increase, and without accounting for any mitigating wages at Cook County or elsewhere.  (Moglowsky Dep. Ex. 3 at 6.) (Ex. G)  Moglowsky's purported tabulation of future earnings and 3% wage increase assumption are inadmissible because Moglowsky does not have any expertise as an economist, labor economist, or otherwise to project future wages.  (Moglowsky Dep. 27:23-28:18; 9:5-10 & Ex. 3.) (Ex. G)

Moglowsky derived the 3% wage increase by looking at Plaintiff's wage increases over the prior three years.  (Moglowsky Dep. 115:1-10.) (Ex. G)  Moglowsky then multiplied Plaintiff's 2015 salary by 1.03 over and over again to project an annual salary through 2030.  (Moglowsky Dep. 113:13-114:7.) (Ex. G)  Moglowsky did not account for inflation.  (Moglowsky Dep. 115:11-24.) (Ex. G)  Moglowsky did not account for Plaintiff's wages at Cook County at the instruction

of Plaintiff's counsel.[11]  (Moglowsky Dep. 115:25-116:11.) (Ex. G)  Insofar as Moglowsky is not qualified to opine on economic calculations and does not conduct any calculation beyond the understanding of a layperson, Moglowsky's seven-figure unmitigated future wage projection is not expert testimony and is inadmissible.  *See, e.g.*, *Dhillon v. Crown Controls Corp.*, 269 F.3d 865, 871 (7th Cir. 2001) (expert "must testify to something more than what is obvious to the layperson"); *Fisher v. Werner Enterprises, Inc.*, No. A:04-CV-1317-LJM-WTL, 2005 WL 6001584, at *3 (S.D. Ind. Aug. 25, 2005) (excluding vocational expert's purported calculations regarding potential lifelong earnings because those calculations necessitate the expertise of an economist, and the vocational expert had no such expertise).

Moglowsky disclaimed offering any opinions in his August 2020 report about loss of earnings potential.  (Moglowsky Dep. 158:12-15.) (Ex. G)  Moglowsky's unmitigated future wage projection has no connection to any of his purported opinions in the August 2020 report. (Moglowsky Dep. Ex. 3 at 7-8.) (Ex. G)  Thus, Moglowsky's unmitigated future wage calculation appears to be an impermissible attempt to substitute for barred testimony on lost wages.  (Doc. 122.)

Alternatively, if Moglowsky's unmitigated future wage calculations are not excluded for lack of appropriate expertise and/or lack of connection to any vocational opinion offered in the August 2020 report, Moglowsky's failure to account for known future earnings renders his future wage opinions inadmissible.[12]  *See, e.g.*, *Faniola v. Mazda Motor Corp.*, No. CIV-02-1011

---

[11] The August 2020 report, unlike the March 2020 report, does not account for any of Plaintiff's Cook County employment.  Compare Moglowsky Dep. Ex. 3 at 6 (Ex. G), with Doc. 132-2 at 7.)  Moglowsky had no explanation for removing Plaintiff's Cook County employment from his August 2020 report other than being instructed to do so by Plaintiff's counsel.  (Moglowsky Dep. 115:25-116:11.) (Ex. G)

[12] Moglowsky testified during his deposition that the opinions in his August 2020 report would not change whether or not Plaintiff still worked for Cook County.  (Moglowsky Dep. 90:3-12.) (Ex. G)  Further, Moglowsky did not anticipate revising his report to reflect when Beverly stopped working at Cook County.  (Moglowsky Dep. 90:18-23.) (Ex. G)  Plaintiff purportedly stopped working at Cook County in December 2020.  To date, Plaintiff has not

JB/RLP, 2004 WL 5522846, at *1 (D.N.M. Apr. 15, 2004) (barring purported expert testimony on "loss of vocational capacity" in part because "given the evidence in this case—such as her present job and wages—the proposed testimony does not comport with reality").

> **5.    Not only is Moglowsky's unmitigated future salary calculation inadmissible, it also is contrary to law prohibiting evidence of specific pecuniary losses to prove presumed damages.**

In *Brown & Williamson v. Jacobson*, 827 F.2d 1119, 1140 (7th Cir. 1987), the Seventh Circuit noted on a libel per se claim under Illinois law that "an attempt to show specific pecuniary loss, while still electing the presumption of general damages, is under certain circumstances impermissible," citing *Sunward Corporation v. Dun & Bradstreet, Inc.*, 811 F.2d 511, 538 (10th Cir. 1987).  The "certain circumstances" were defined in *Sunward*, addressing presumed damages on a claim of libel per se.  There, the Tenth Circuit made expressly clear that "absent proof of causation it is not permissible to suggest the loss of specific customers, orders, profits or other specific pecuniary loss.  It is equally impermissible to use general background information regarding a decline in sales or profits to imply causation and special damage where the plaintiff relied solely on the presumption of damage, having elected not to prove special damage." *Sunward*, 811 F.2d at 539 (collecting cases).

Plaintiff has disavowed any claim for actual damages on the defamation claim both in filings with the Court and in deposition objections, and is proceeding only on the presumption of damage.  (Doc. 130 at 2 (identifying the defamation claim as a claim of "defamation per se, which specifically sought 'presumed damages'"); *id.* at 7 ("Mr. Beverly introduced his claim for presumed damages under his defamation per se claim."); Doc. 133 at 4 ("reputational harm is a component of presumed damages in a defamation per se case.").)  To be sure, Plaintiff's counsel

---

supplemented any of his discovery responses concerning job applications, job offers, accepted job offers, rates of pay, or benefits.

objected during Moglowsky's deposition, stating in no uncertain terms that Plaintiff was not claiming actual damages, and was proceeding solely on a claim of presumed damages. (Moglowsky Dep. 107:24-108:5 (Ex. G) ("So to the extent that you're asking Mr. Moglowsky about actual people that have gone to actual other companies and made a decision actually about Mr. Beverly, all those questions and this one here, are just completely irrelevant for the purposes of the claim that he's brought . . . .").)

Because Plaintiff pursues only presumed damages, expert testimony purporting to quantify unmitigated future earnings or speculate on how alleged defamation might impact career prospects with Abbott or "similar employers" is irrelevant and inadmissible. (Moglowsky Dep. Ex. 3 at 6-7) (Ex. G); *Sunward*, 811 F.2d at 539; *Jacobson*, 827 F.2d at 1140. As this Court previously noted, where, as here, "the plaintiff elects to pursue only the presumption of general damages, the presentation of a damages argument must also be general, however frustrating that may be to all concerned." (Doc. 135 at 4 (citing *Sunward*, 811 F.2d at 542).) In other words, "absent proof of causation it is not permissible to suggest the loss of specific [job opportunities or future wages] or other specific pecuniary loss. It is equally impermissible to use general background information regarding a decline in [job opportunities or future wages] to imply causation and special damage where the plaintiff relied solely on the presumption of damage, having elected not to prove special damage." *Sunward*, 811 F.2d at 539. This result requires the exclusion of Moglowsky's opinions and testimony relating to unmitigated future salary and accords with the Seventh Circuit caselaw excluding any expert testimony that conflicts with the law. *See, e.g.*, *Lang v. Kohl's Food Stores, Inc.*, 217 F.3d 919, 924 (7th Cir. 2000) (excluding opinion of Ph.D. in labor relations and economics whose analysis trumped job descriptions over actual tasks--"a sorry misunderstanding of the Equal Pay Act.").

58

**D.**     **Conclusion**

Under *Daubert*, expert witness testimony must have "the same level of intellectual rigor that characterizes the practice of an expert in the relevant field" so as to be deemed reliable enough to present to a jury. *Lapsley v. Xtek, Inc.*, 689 F.3d 802, 805 (7th Cir. 2012). For the reasons discussed above, none of Moglowsky's opinions meet that standard, and they should be excluded.

74668425v.3

## DISPUTED MOTION IN LIMINE #9: MOTION IN LIMINE LIMITING SMITH AND MOGLOWSKY TO OPINIONS REGARDING DEFAMATION, IF NOT BARRED ENTIRELY

### A.    Introduction

In the event the expert testimony of Smith and Moglowsky is not excluded in full, Defendants move to limit Smith and Moglowsky's testimony to opinions regarding Plaintiff's defamation claim arising from Victoria Luo's July 29, 2015 report to Abbott security.  Because Smith's and Moglowsky's August 2020 reports do not address reputational harm resulting from discrimination or retaliation, and only address alleged defamation arising from Victoria Luo's July 29, 2015 report to Abbott security, their trial testimony should be limited accordingly, if not excluded entirely.

### B.    Controlling Law

Rule 26 requires an expert witness to disclose an expert report that contains "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B).  An expert report binds the permissible trial testimony.  *See, e.g.*, *Meyers v. Nat'l R.R. Passenger Corp.*, 619 F.3d 729, 734 (7th Cir. 2010) ("[t]he purpose of the report is to provide adequate notice of the substance of the expert's forthcoming testimony and to give the opposing party time to prepare for a response."); *Jenkins v. Bartlett*, 487 F.3d 482, 488 (7th Cir. 2007) ("The purpose of the report is to set forth the substance of the direct examination.")

Failure to comply with Rule 26(a) has significant consequences, include Rule 37's "self-executing sanction" for failure to make a disclosure as required by Rule 26(a). Fed. R. Civ. P. 37(c) advisory committee notes.  This sanction automatically precludes evidence not previously disclosed pursuant to Rule 26(a).  *Id.*  Thus, an expert witness may not testify to subject matter beyond the scope of the witness's expert report.  In order to avoid the preclusion sanction of Rule 37(c), the party seeking to produce such undisclosed evidence has the burden of proving they had

substantial justification for not complying with Rule 26(a) or that the failure to disclose was harmless.  Fed. R. Civ. P. 37(c)(1).

### C.      Argument

Plaintiff's Second Amended Complaint alleges only one instance of purported defamation: Victoria Luo's July 29, 2015 report to Abbott security.  (Sec. Am. Compl. (Doc 35) ¶¶ 162-167.) The August 2020 Reports of Smith and Moglowsky address only one claim and one alleged harm: alleged defamation arising from Victoria Luo's July 29, 2015 report to Abbott security.  Their reports do not address any reputational harm resulting from discrimination or retaliation, including with respect to alleged reduction in work duties.  Smith and Moglowsky's trial testimony, if allowed at all, should be restricted to Plaintiff's defamation claim relating to Victoria Luo's July 29, 2015 report to Abbott security.

### 1.      Smith

During his January 25, 2021 deposition in this matter, Smith identified only one claim in this case--the defamation claim--and further testified that only the defamation claim concerned him for purposes of preparing his August 19, 2020 report.  (Smith Dep 16:6-17:6.)  Smith had no understanding of what claims remained in the case as of the date of his deposition.  (Smith Dep. 17:7-18:1.) (Ex. E)

Smith's August 2020 report makes clear, and his deposition testimony confirms (despite Plaintiff's counsel's improper speaking objection), that Smith's use of the word "defamation" in his report confined his opinions to Plaintiff's claim of defamation and that Smith's opinions about diminution in earnings potential refer solely to alleged defamation of Plaintiff.  (Smith 8.19.20 Report (Ex. F), Smith Dep. Ex. 1 at 6 (Ex. E) ("For example, if the trier-of-fact determines that there is a 10 percent reduction in earnings potential due to defamation . . . which results in a loss due to the defamation . . . ."); *id.* at 7 (Summary of Losses for Henry Beverly refers to "diminution

61

due to defamation"); Smith Dep. 122:22-125:6.) (Ex. E)  When asked simply, "And how is it that you decided to use the word 'defamation' here," referring to Page 7 of his August 2020 Report, Smith responded, "The complaint alleges he's been defamed.  He claims he's been defamed.  That shouldn't be news to you."  (Smith Dep. 125:2-6.) (Ex. E)  Smith's opinions cannot be used for purposes of claims that had no bearing on his August 19, 2020 report.  *Meyers*, 619 F.3d 729, 734 (7th Cir. 2010).  Thus, if Smith's opinions are not stricken entirely, they should be limited to the defamation claim, which concerns only Victoria Luo's July 29, 2015 report to Abbott security. (Sec. Am. Compl. (Doc 35) ¶¶ 162-167.)

### 2.  Moglowsky

Moglowsky's August 14, 2020 report only addresses Plaintiff's defamation claim. Moglowsky states in his August 2020 report that, "In conclusion, it appears highly likely that had Mr. Beverly not been defamed, he could have been rehired by Abbott or a similar company working at a similar level if not in a higher position for the next 15 years until reaching retirement age."  (Moglowsky Dep. 8:18-9:1 & Ex. 3 at 7.) (Ex. G)  Moreover, when asked during his deposition what he meant by the word "defamed" in the above sentence, Moglowsky identified only a single alleged report by Victoria Luo to Abbott security after Plaintiff's employment was terminated on July 29, 2015. (Moglowsky Dep. 120:12-121:20 (Ex. G); *accord* Moglowsky Dep. Ex. 3 at 8 (Ex. G), Sec. Am. Compl. (Doc 35) ¶¶ 162-167.)  Moglowsky's August 2020 report exclusively concerns a single alleged defamatory report and no other allegation or claim.  Any testimony by Moglowsly  should be limited to alleged defamation arising from Victoria Luo's July 29, 2015 report to Abbott security.

3.     **Plaintiff cannot excuse the narrowness of the August 2020 expert reports as substantially justified or harmless.**

Plaintiff intentionally limited Smith's and Moglowsky's August 2020 reports to loss of earnings potential on the defamation claim.  Both Smith and Moglowsky testified during their depositions that their reports were limited to damages resulting from the Plaintiff's defamation claim.  (Smith Dep 16:6-17:6 (Ex. E); Moglowsky Dep. 8:18-9:1 & Ex. 3 at 7. (Ex. G))  The limited scope of Smith's and Moglowsky's August 2020 reports was at all times solely in Plaintiff's control, and there is no justifiable reason for the experts to be allowed to expand the scope of their testimony during trial.  Further, the failure to disclose is not harmless, insofar as Smith and Moglowsky limited their deposition testimony to the narrow scope of their respective reports.

**D.     Conclusion**

Based on the foregoing, if Smith's and Moglowsky's testimony and reports are not barred outright, they should be limited at trial to testifying regarding the sole claim identified in their August 2020 reports:  Plaintiff's defamation claim arising from Victoria Luo's July 29, 2015 report to Abbott security.

**DISPUTED MOTION IN LIMINE #10: MOTION TO EXCLUDE EVIDENCE AND TESTIMONY CONCERNING COMPLAINTS AND CLAIMS BY OTHER EMPLOYEES AGAINST ABBOTT**

Like any large business, Abbott is periodically the subject of claims by current and former employees, including internal claims, claims filed in court, and charges filed with administrative agencies.[13]

Any argument, evidence, or testimony elicited by Plaintiff relating to any complaints or legal claims by other Abbott employees against Abbott is not relevant to the claims in this case and should be excluded. The issues to be tried in this case are alleged discriminatory and/or retaliatory reduction in Plaintiff's job duties, FMLA interference and retaliation, and defamation of Plaintiff. (Doc. 82 at 33.) No other employee complaints or claims have any factual connection to Plaintiff's claims and are irrelevant and unduly prejudicial. Plaintiff testified during his deposition that he was the "only individual" who had work taken away from him. (Beverly Dep. 19:18-20:4.) (Ex. A) Of the dozens of witnesses identified in Plaintiff's April 16, 2018 Third Amended Initial Disclosures, none of them are identified as having been subject to any discriminatory, retaliatory, or defamatory conduct at Abbott, let alone by Ms. Luo.[14] (P's 4.16.18 Third Am. Initial Disclosures.) (Ex. H) Plaintiff's summary judgment filings are similarly devoid of any purported "me too" comparators. Plaintiff should not be allowed to conduct a trial by ambush by referring to or eliciting testimony of previously undisclosed "me too" witnesses.[15] Fed.

---

[13] Defendants have filed a separate motion in limine to exclude argument, testimony, and evidence relating to Plaintiff's and his wife's prior lawsuit against Abbott. See Disputed Motion in Limine No. 3.

[14] Plaintiff's responses to Defendant's interrogatories requesting the disclosure of relevant witnesses refer only to Plaintiff's Initial Disclosures. (Plaintiff's Interrogatory Response Nos. 1, 2, 6.) (Ex. I)

[15] Defendants would be significantly prejudiced by any surprise "me too" witness. As the Supreme Court has stated, "[t]he question whether evidence of discrimination by other supervisors is relevant in an individual [] case is fact based and depends on many factors, including how closely related the evidence is to the plaintiff's circumstances and theory of the case." *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 388 (2008). The Court must make "a fact-intensive, context-specific inquiry" in applying Federal Rule of Evidence 403 to determine if the evidence is relevant or prejudicial, and such determination must be made at trial. *Id.* Defendants will not have had the opportunity to take

R. Civ. P. 26 (a)(1)(A), 37(c)(1); *see also King v. Ford Motor Company,* 872 F.3d 833, 838 (7th Cir. 2017) (noting "there is obvious prejudice in [plaintiff's] failing to disclose [] a witness during discovery, as that prevented [the defendant] from deposing [the witness] and conducting any appropriate follow-up discovery").

Further, to the extent Plaintiff attempts to introduce pleadings, statements, or testimony from other litigation, including Plaintiff's prior lawsuit against Abbott, such evidence is inadmissible hearsay if offered for the truth of what is alleged in the documents, and its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, and the risk of wasting the Court's time at trial. *See e.g., McLeod v. Parsons Corp.,* 73 F. App'x 846, 855 (6th Cir. 2003) (affirming the district court's exclusion of evidence of prior lawsuits against employer in an employment discrimination case, reasoning that "the potential for prejudice...would have substantially outweighed its probative value, and this evidence would have likely misled the jury and confused the issues); *Saccameno v. Ocwen Loan Servicing, LLC.*, No. 15 C 1164, 2018 WL 10609658 at *6 (N.D. Ill. Apr. 2, 2018) (excluding evidence of prior claims against the defendant because "this is precisely the type of evidence Rule 404(b) is designed to keep out).

For these reasons, Plaintiff should be barred from any argument, evidence, or testimony at trial relating to any complaints or legal claims by other Abbott employees against Abbott.

---

discovery on any such surprise "me too" witness, and the record will not enable a determination under the *Mendelhson* test for admissibility.

**DISPUTED MOTION IN LIMINE #11: MOTION TO EXCLUDE ARGUMENT OR TESTIMONY REFERRING TO "HARASSMENT" OR "HOSTILE WORK ENVIRONMENT," OR CHARACTERIZING ANY STATEMENTS OR CONDUCT AS SUCH**

Defendants anticipate that Plaintiff will present argument and/or testimony referring to "harassment" and/or "hostile work environment," or characterizing alleged statements and conduct as "harassment" and/or "hostile work environment," despite the fact that there are no claims of harassment or hostile work environment in this case. Because pejorative terms characterizing the Plaintiff's work environment as "harassment" or "hostile" are not probative of the discrimination, retaliation, or defamation claims to be tried, are unduly prejudicial, and run the risk of misleading the jury, they should be excluded. Fed. R. Evid. 401, 403.

No claims of harassment and/or a hostile work environment were pled in the May 31, 2018 Second Amended Complaint (Doc. 35), and no such claims are at issue at trial. Plaintiff cannot claim that he was unaware of the basis for any such claims, insofar as he testified during his March 15, 2018 deposition in this case that he previously had told his parents about purported "harassment" and "hostile work environment." (Beverly Dep. 18:20-19:7.) (Ex. A) Any argument or testimony referring to "harassment" or "hostile work environment" or characterizing any statement or conduct as "harassment" or "hostile work environment" is highly prejudicial and would be particularly confusing to the jury given that no such legal claims are at issue, and the words "harassment" and "hostile work environment" are commonly understood to be inflammatory and pejorative terms. *See, e.g., Hirlston v. Costco Wholesale Corporation*, No. 117CV04699TWPMPB, 2020 WL 6047913, *5 (S.D. Ind. Oct. 13, 2020) (granting motion in limine to exclude the use of the word "demotion" as an unfair characterization and unduly prejudicial, when no claimed demotion was pled); *Jones v. Standard Ins. Co., No. 12 C 328,* 2013

WL 5549779, at *3 (N.D. Ill. Oct. 8, 2013) (granting motion in limine to bar the use of the term "malingering" at trial on the grounds that it is a pejorative term).

Plaintiff and Plaintiff's counsel's only plausible purpose for uttering the words "harassment" or "hostile work environment" at trial would be to prejudice and inflame the jury. Because testimony and evidence of harassment and a hostile work environment are irrelevant and prejudicial, this Court should preclude any and all testimony or argument using the terms harassment or hostile work environment. *See* Fed. R. Evid. 401, 403

Further, insofar as claims dismissed on summary judgment are properly excluded from trial, *see* Motion in Limine No. 2, claims never pled and never at issue, including harassment and hostile work environment, should likewise be excluded. *See, e.g., Hicks v. Ass'n of Apartment Owners of Makaha Valley Plantation,* No. 14-00254HG-KJM, 2016 WL 3856134 at *1 (D. Haw. July 13, 2016) (precluding any testimony, evidence, or argument as to unpled claims). "The truth-seeking function of our adversarial system of justice is disserved when the boundaries of a suit remain ill-defined and litigants are exposed to the vicissitudes of trial by ambush." *Rodriguez v. Doral Mortg. Corp.*, 57 F.3d 1168, 1172 (1st Cir. 1995).[16]

Based upon the foregoing, Plaintiff and Plaintiff's counsel should be precluded from all argument and testimony using the terms "harassment" or "hostile work environment."

---

[16] Further, to the extent Plaintiff requests to add a hostile work environment or harassment claim at this juncture, such request should be denied because Plaintiff never pled or provided discovery on such a claim. *See, e.g., Kakkanathu v. Rohn Indus., Inc.*, No. 05-1337, 2009 WL 322236, at *3 (C.D. Ill. Feb. 9, 2009) (striking plaintiff's pursuit of a hostile work environment claim first asserted in the pretrial order because the plaintiff "never included a hostile work environment claim in his Complaint, he failed to advance this theory during dispositive and other motion practice, and he never specifically referenced a hostile work environment theory until nearly three years after filing his Complaint.").

## DISPUTED MOTION IN LIMINE #12: MOTION TO EXCLUDE HEARSAY AND TESTIMONY LACKING FOUNDATION ABOUT ALLEGED REDUCTION IN PLAINTIFF'S JOB RESPONSIBILITIES

Defendants anticipate that Plaintiff will attempt to elicit testimony from witnesses about what co-workers said to him regarding his purported reduction in job duties. During his deposition, Plaintiff testified he informed others at the company (who he could not name) that "they're keeping me really, you know, at a distance from you." (Beverly Dep. 53:17-20.) (Ex. A). Plaintiff testified the others said in response, "We know, Henry. We see it. It's pretty obvious." (*Id.* at 53:2-3.) Plaintiff testified to additional statements made by others pertaining to their belief as to the reason he did not receive a promotion, their noticing that Plaintiff was no longer involved on calls, and their displeasure about what was allegedly happening with Plaintiff. (*Id.* at 67:19-68:2, 83:17-84:4, 326:13-17.) All of this testimony serves but one purpose - to prove the truth of the matters asserted - and is inadmissible hearsay. It also is inadmissible for want of foundation. Exclusion through a motion in limine is necessary and appropriate to preclude the prejudicial utterance of objectionable hearsay on an ultimate issue to be tried - whether Plaintiff's job duties were materially reduced.

## I.     Hearsay Testimony by Co-Workers Pertaining to Alleged Reduction in Job Responsibilities is Inadmissible.

Plaintiff testified during his deposition that others made statements noticing Plaintiff's alleged reduction in work responsibility. (*Id.* at 52:12-23, 67:19-68:2, 83:17-84:4, 326:13-17.) When asked who these people were, Plaintiff indicated they were "Latin American personnel," various unnamed demand managers from foreign countries, and a co-worker named Mr. Garcia. (*Id.* at 52:12-23, 67:19-68:2, 83:17-84:4, 326:13-17.) These statements are textbook examples of hearsay and forbidden by Rule 801. They are out of court statements and the only purpose for which Plaintiff would introduce them is for the truth of the matter asserted: that he experienced a reduction in work responsibilities. This is impermissible. Fed. R. Evid. 801, 802.

74668425v.3

Such hearsay testimony is not admissible under Rule 801(d)(2)(D), which allows a statement made by the party's agent or employee on a matter within the scope of that relationship and while it existed. Testimony regarding what co-workers said to Plaintiff with regard to his purported reduction in job duties falls outside the scope of FRE(d)(2)(D) because the co-workers did not have any authority to participate in any decision regarding the purported reduction of Beverly's job duties. In *Makowski v. SmithAmundsen, LLC,* the Seventh Circuit Court of Appeals held that a co-worker's out of court statement falls outside the hearsay rule under Federal Rule of Evidence 801(d)(2)(D) only if the coworker's "duties…encompass[ed] some responsibility related to the decision-making process affecting the employment action." 662 F.3d 818, 822 (7th Cir. 2011); *see also, e.g.*, *Stephens v. Erickson,* 569 F.3d 779, 793 (7th Cir. 2009) ("For an agent's statement regarding an employment action to constitute an admission, she need not have been personally involved in that action, but her duties must encompass some responsibility related to the decision-making process affection the employment action.")

Here, there is no evidence that any of the co-workers testifying as fact witnesses other than Defendant Victoria Luo held any decision-making authority that would have affected Plaintiff's job duties at issue. Additionally, Plaintiff did not testify that any of the individuals who allegedly noticed a reduction in Plaintiff's job duties possessed any kind of decision-making authority with regard to Plaintiff's work. Thus, any testimony from co-workers other than Luo about purported reduction of Plaintiff's job duties is hearsay without exception and should be excluded.

## II.     Plaintiff Failed to Lay a Foundation For Statements of Purported Reduction of Job Duties by Co-Workers.

The purported statements made by co-workers that Plaintiff mentions in his deposition are not only hearsay, but he fails to lay a proper foundation for their admissibility into evidence at trial. A witness may only testify to a matter if evidence is introduced sufficient to support a finding

that the witness has personal knowledge of the matter. Fed. R. Evid. 602. During Plaintiff's deposition, he testified that others in the company purportedly knew of his reduction in responsibilities. (*Id.* at 52:12-23, 67:19-68:2, 83:17-84:4, 326:13-17.) However, no testimony was given as to *how* the others knew this information. *See, e.g., Widmar v. Sun Chem. Corp.*, 772 F.3d 457, 460 (7th Cir. 2014) ("Personal knowledge can include reasonable inferences, but it does not include speculating as to an [opposing party's] state of mind, or other intuitions, hunches, or rumors."). Here, Plaintiff provided no testimony to suggest that others' opinions as to the purported reduction in his work responsibilities was anything more than speculation. Indeed, there is no testimony whatsoever providing a basis for how the speakers knew of what was allegedly happening to Plaintiff.

## III.   Conclusion

Because statements made by co-workers relating to a reduction in Plaintiff's work responsibilities is hearsay without exception, they should be excluded. Further, any statements by Plaintiff that others in the company knew about his reduction in work responsibility is without proper foundation and should also be excluded.

**DISPUTED MOTION IN LIMINE #13: MOTION TO EXCLUDE ANY TESTIMONY REGARDING PLAINTIFF'S OR NON-SUPERVISORY CO-WORKERS' OPINIONS OF PLAINTIFF'S JOB PERFORMANCE**

Plaintiff should be precluded from eliciting opinion testimony regarding Plaintiff's job performance from current and former Abbott Laboratories employees other than Plaintiff's supervisor, Victoria Luo. Luo was Plaintiff's only supervisor during the events at issue in this case. (Doc. 62 ¶ 18; Doc. 35 ¶ 19.) There is no allegation or record evidence that any non-supervisory Abbott employee was authorized or tasked with assessing Plaintiff's job performance. Whether "other employees who were not [Plaintiff's] superiors had a positive assessment of [her] work performance" is "irrelevant." *Helzing v. Loyola Univ. of Chi.*, 2004 WL 1881780, at *11 (N.D. Ill. Aug. 16, 2004) (quoting *Karazanos v. Navistar Int'l Transp. Corp.*, 948 F.2d 332, 337-38 (7th Cir. 1991) ("It is the perception of the decision maker which is relevant."))); *see, e.g., Burks v. Wis. Dep't of Transp.*, 464 F.3d 744, 752-53 (7th Cir. 2006) (holding whether "plaintiff's coworkers 'may have thought that [she] did a good job" is "close to irrelevant.'"); *Higgins v. Moreno*, 2011 WL 2456655, at *7 n.6 (C.D. Ill. June 15, 2011) (noting that "general averments of co-workers, indicating a plaintiff's job performance was satisfactory, are insufficient to create a material issue of fact as to whether a plaintiff was meeting [his] employer's legitimate expectations at the time [he] was terminated" (quoting *Peele v. Country Mut. Ins. Co.*, 288 F.3d 319, 329 (7th Cir. 2002))).

Relatedly, courts have held that "subjective assessments" that were not provided to the decisionmaker should be excluded. *See, e.g., Goswami v. DePaul Univ.*, 8 F. Supp. 3d 1019, 1035 (N.D. Ill. 2014) (excluding expert opinion testimony from colleagues praising a plaintiff's credentials in a Title VII discrimination case because the colleagues' "subjective assessments of" plaintiff "do[] not provide any information regarding the motivations of *those who made the [allegedly discriminatory] decision*") (emphasis added); *Dryanski v. Sloan Valve Co.*, 1986 WL 6951, at *1 (N.D. Ill. June 11, 1986), *on reconsideration*, 1986 WL 12002 (N.D. Ill. Oct. 16, 1986) (excluding

71

testimony by plaintiff's "co-workers and subordinates [] giv[ing] their opinions of his work performance" to counter defendants' position that the plaintiff "was fired because he was not performing his job in a satisfactory manner."); *Johnson v. Gen. Bd. of Pension & Health Benefits of United Methodist Church*, 2012 WL 638731, at *7 (N.D. Ill. Feb. 23, 2012) (holding "opinions of co-workers and other non-decision making third parties . . . were properly excluded as irrelevant"), *aff'd*, 733 F.3d 722 (7th Cir. 2013).

Given this well-established body of law, Plaintiff's co-workers' purported opinions of Plaintiff's job performance are irrelevant and should be excluded. *See Isbell v. Baxter Healthcare, Corp.*, 273 F. Supp. 3d 965, 971 (N.D. Ill. 2017) (complaints must be within the "[decisionmaker's] knowledge" to be relevant) (emphasis added).

Similarly, Plaintiff's own self-serving opinion of his job performance is not relevant and should be excluded. *Karazanos,* 948 F.2d 332, 337-38 (7th Cir. 1991) ("It is the perception of the decision maker which is relevant."); *Williams v. Williams Electronics* 856 F.2d 920, 924 (7th Cir. 1988) (holding that plaintiff's own self-serving assertions concerning her work abilities did not raise issue of material fact because only the opinions of supervisors are relevant). Further, any off-the-cuff, post-hoc opinions of Plaintiff's job performance from Plaintiff or his co-workers would do nothing to help the jury evaluate the issues in this case: namely, whether Plaintiff's job duties were materially reduced because of his race, age, military service, or protected activity, or whether Luo defamed Beverly.

For the reasons stated above, Plaintiff should be precluded from eliciting opinion testimony regarding Plaintiff's job performance from current and former Abbott Laboratories employees other than Plaintiff's supervisor, Victoria Luo.

**DISPUTED MOTION IN LIMINE #14: MOTION TO EXCLUDE ANY SPECULATIVE TESTIMONY THAT LUO'S SECURITY REPORT ABOUT PLAINTIFF WAS OR COULD BE COMMUNICATED TO ANYONE OUTSIDE ABBOTT**

Victoria Luo reported a security concern about Plaintiff to Abbott security on the day she terminated Plaintiff's employment at Abbott. Claiming that Luo's security report was defamation, Plaintiff will argue and attempt to elicit testimony that Luo's concern was or "could/may have been" communicated to individuals outside of Abbott. However, there is no evidence whatsoever that Luo's security concern was shared with anyone outside of Abbott. Thus, any testimony or evidence in this regard would be based on nothing but speculation, which is inadmissible. *See, e.g.*, *Ammons v. Aramark Unif. Servs.*, Inc., 368 F.3d 809, 816 (7th Cir. 2004) (noting that courts are expected to reject any subjective belief or speculation); *Kiswani v. Phoenix Sec. Agency, Inc.*, 247 F.R.D. 554, 559 (N.D. Ill. 2008) (excluding claim for economic damages for lost profits because Plaintiff "put forth no evidence" to prove damages and the claim was "totally speculative."). Plaintiff has no evidence that Luo's report to Abbott security was known to anyone outside of Abbott Laboratories.

Further, no witness should be allowed to speculate as to the effect of the Abbott Security Report on any other job. Any probative value of such speculation is substantially outweighed by the danger of unfair prejudice and should not be allowed under Fed. R. Evid. 403. Allowing a witness to simply guess, without evidentiary support, that individuals outside of Abbott became or could have become aware of Luo's security report may persuade the jury that such exposure to the complaint actually occurred. They may overlook the lack of actual evidence to prove this testimony. Plaintiff's claim of defamation per se proceeds only on a theory of presumed damages, without any proof of actual damages. To be sure, Plaintiff's counsel objected during Defendants' deposition of Plaintiff's purported vocational expert Keith Moglowsky, stating in no uncertain terms that Plaintiff was not claiming actual damages, and was proceeding solely on a claim of

73

presumed damages. (Moglowsky Dep. 107:24-108:5 (Ex. G) ("So to the extent that you're asking Mr. Moglowsky about actual people that have gone to actual other companies and made a decision actually about Mr. Beverly, all those questions and this one here, are just completely irrelevant for the purposes of the claim that he's brought . . . .").)

It would be unlawful and unfairly prejudicial for Plaintiff to argue or elicit testimony about hypothetical, non-existent actual or potential harms. As this Court previously noted, where, as here, "the plaintiff elects to pursue only the presumption of general damages, the presentation of a damages argument must also be general, however frustrating that may be to all concerned." (Doc. 135 at 4 (citing *Sunward Corporation v. Dun & Bradstreet, Inc.*, 811 F.2d 511, 542 (10th Cir. 1987)).) In other words, "absent proof of causation it is not permissible to suggest the loss of specific [job opportunities or future wages] or other specific pecuniary loss. It is equally impermissible to use general background information regarding a decline in [job opportunities or future wages] to imply causation and special damage where the plaintiff relied solely on the presumption of damage, having elected not to prove special damage." *Sunward*, 811 F.2d at 539.

As such, this Court should preclude any speculative testimony that Luo's complaint was shared with individuals outside of Abbott because this testimony has no evidentiary basis and would unfairly prejudice Defendants.

**DISPUTED MOTION IN LIMINE #15: MOTION TO EXCLUDE ANY REFERENCE BY BEVERLY TO ABBOTT JOBS ALLEGEDLY APPLIED FOR AND NOT RECEIVED.**

In Plaintiff's prior lawsuit against Abbott, Plaintiff's failure-to-promote claims were dismissed on summary judgment. N.D. Ill. Case No. 1:12-cv-03216, Doc. 58 at 16-25. It is anticipated that Plaintiff will testify about these rejected job applications at trial. For the reasons discussed in Motion in Limine No. 3, *supra*, Plaintiff should be barred from doing so, as they do not bear on any claim remaining for trial and are barred by res judicata. No such jobs are pled or placed at issue in this case, and any reference to those jobs at trial would confuse the issues and prejudice Defendants.

Similarly, Plaintiff should not be allowed to introduce any argument, testimony, or evidence about any failure to be promoted at Abbott after the events placed at issue in the prior lawsuit. Plaintiff's Second Amended Complaint does not make any claims relating to any failure to hire or be promoted at Abbott. (Doc. 35.) Any such claims asserted for the first time at trial would be an impermissible "trial by ambush." *See, e.g.*, *Abbott v. Lockheed*, No. 06-CV-0701-MJR-DGW, 2014 WL 6613148, at *2 (S.D. Ill. Nov. 21, 2014) (rejecting trial by ambush). If Plaintiff were to allege at trial for the first time that he applied for jobs after his prior lawsuit for which he did not receive a job offer (or interview), Abbott would be unfairly prejudiced by its inability to effectively cross-examine Plaintiff about this assertion, as Abbott has not had an opportunity to conduct discovery as to unpled claims. *See, e.g.*, *Se-Kure Controls, Inc. v. Vanguard Prod. Grp., Inc.*, No. 02 C 3767, 2007 WL 781250, at *1 (N.D. Ill. Mar. 12, 2007) ("secrecy is not congenial to truth-seeking, and that trial by ambush is incompatible with the just determination of cases on their merits." (citations omitted)). The Court should preclude any evidence, testimony, or argument regarding jobs Plaintiff applied to and did not receive subsequent to his prior lawsuit and/or that were raised and rejected in the prior lawsuit.

75

**DISPUTED MOTION IN LIMINE #16: MOTION TO EXCLUDE ANY ARGUMENT OR EVIDENCE BY PLAINTIFF OR PLAINTIFF'S COUNSEL RELATING TO DEFENSE COUNSEL'S LAW FIRM OR THE NUMBER OF ATTORNEYS APPEARING FOR DEFENDANTS AT TRIAL**

Defendants move to exclude any argument or evidence about the financial status, profitability, value of assets, net worth, size, and number of offices of defense counsel, number of attorneys in defense counsel's law firm, or the number of attorneys appearing for Defendants at trial. Defendants further move to exclude any attempts by Plaintiff or Plaintiff's counsel to compare the size of Plaintiff's counsel to that of Defendants' counsel, including any such comments or references that characterize this case as one involving an individual against a large firm. Such evidence should be excluded as irrelevant under Fed. R. Evid. 401 and 402. Further, such evidence should be excluded as unfairly prejudicial under Fed. R. Evid. 403.

Under Rule 401, in order for evidence to be relevant, it must have "any tendency to make a fact more or less probable than it would be without the evidence." Fed. R. Evid. 401. Any reference to or discussion regarding defense legal counsel's law firm, its financial condition, its number of attorneys, or the number of attorneys and other support staff representing Defendants at trial does not have any tendency to make any fact of consequence more or less probable.

Even if this Court finds such evidence is relevant, it should still be excluded as unfairly prejudicial to Defendants. Fed. R. Evid. 403. To introduce evidence or argument about defense legal counsel's law firm, its financial condition, its number of attorneys, or the number of attorneys and other support staff representing Defendants at trial would lead to a comparison of the relative size of the parties, in an attempt to elicit sympathy for Plaintiff, and greatly prejudice both Defendant Abbott and Defendant Luo (who, like Plaintiff, is an individual).

Reference to the wealth and size of parties' law firms has generally been held to be improper. *See, e.g., Kincaid v. Sangamon Cty.*, No. 09-CV-3053, 2015 WL 13548179, at *3 (C.D.

76

Ill. Sept. 11, 2015) (granting motion in limine to bar reference to the size of the defendant's attorney's law firm); *Scott v. Wabash Nat'l Corp.*, No. 4:05-CV-55, 2007 WL 9773388, at *4 (N.D. Ind. Nov. 5, 2007) (granting motion in limine to exclude reference to size of defendant's law firm); *Rosenberg v. Cottrell, Inc.*, No. 05-545-MJR, 2007 WL 2028789, at *4 (S.D. Ill. July 12, 2007) (granting motion in limine to exclude evidence or argument about the size of the law firm representing a defendant).

Similarly, any reference by Plaintiff or Plaintiff's counsel to the number of attorneys or support staff representing Defendants at trial is regularly excluded as improper. *See, e.g., Dinsay v. RN Staff Inc.*, No. 119CV00907TWPDML, 2021 WL 2643639, at *5 (S.D. Ind. June 28, 2021) (granting defendant's motion in limine to exclude "[r]eferences to the number of attorneys, or support staff assisting the attorneys, representing [defendant]"); *Conway v. Adrian Carriers, LLC*, No. 15-01137-DRH, 2018 WL 11275731, at *3 (S.D. Ill. Jan. 31, 2018) (granting defendant's motion in limine to exclude "[a]ny evidence or testimony regarding the number of attorneys and or/persons representing defendants and/or assisting with defendants' defense present in the courtroom and/or court gallery" as irrelevant); *Wiesneth v. Kriebs*, No. 13 C 4168, 2016 WL 2644790, at *5 (N.D. Ill. May 10, 2016) (granting as a "slam dunk" defendants' motion in limine to exclude plaintiff or plaintiff's counsel from "any mention of the number of attorneys representing" defendants at trial).

Accordingly, Plaintiff and Plaintiff's counsel should be precluded from commenting on or referring to the financial status, profitability, value of assets, net worth, size, and number of offices of defense counsel, number of attorneys in defense counsel's law firm, or the number of attorneys and other personnel appearing for Defendants at trial. Plaintiff and Plaintiff's counsel should also be barred from comparing the size of Plaintiff's counsel to that of Defendants' counsel, including

making any comments or references that characterize this case as one involving an individual against a large firm.

Respectfully submitted this 30th day of December, 2021.

Respectfully submitted,

*s/ J Stanton Hill*
Attorney for Defendants

William B. Hill, Jr. (admitted pro hac vice)
J Stanton Hill (admitted pro hac vice)
Seyfarth Shaw LLP
1075 Peachtree St NE, Suite 2500
Atlanta, GA 30309
Telephone: (404) 885-1500
wbhill@seyfarth.com
shill@seyfarth.com

Uma Chandrasekaran (ARDC No. 6281690)
Kyle Petersen (ARDC No. 6275689)
Seyfarth Shaw LLP
233 South Wacker Drive, Suite 8000
Chicago, Illinois 60603
Telephone: (312) 460-5000
uchandrasekaran@seyfarth.com
kpetersen@seyfarth.com

74668425v.3

## <u>CERTIFICATE OF SERVICE</u>

The undersigned attorney hereby certifies that on December 30, 2021, she electronically filed the foregoing DEFENDANTS' MOTIONS IN LIMINE, which will send notification of such filing to the following counsel of record:

> Ruth I. Major
> Keith Barnstein
> The Law Offices of Ruth I. Major PC
> 30 W. Monroe Street, Suite 1650
> Chicago, IL 60603

> _s/ J Stanton Hill_
> J Stanton Hill