THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HENRY BEVERLY, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) No. 17-cv-5590 ) ) Judge Sara L. Ellis |
| ABBOTT LABORATORIES and Victoria Luo, | ) ) ) Magistrate Judge Jeffrey Cole |
| Defendants. | ) |

**DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW ON ALL OF PLAINTIFF'S REMAINING CLAIMS**

Defendant Abbott Laboratories respectfully moves for judgment as a matter of law under Federal Rule of Civil Procedure 50(a). Plaintiff alleges that:

1. Abbott discriminated on the basis of race and/or retaliated against him when it reduced his job duties;

2. Abbott interfered with his FMLA rights; and

3. Abbott retaliated against Plaintiff in violation of the FMLA when it terminated his employment.

Abbott is entitled to judgment as a matter of law on these claims. No reasonable jury could conclude that the alleged reduction of Plaintiff's job duties was a materially adverse employment action. And even if it was, no reasonable jury could find that this action was made because of Plaintiff's race or in retaliation for engaging in a protected activity. Furthermore, no reasonable jury could find that Plaintiff's leave was FMLA-qualified or that his termination was made because of his alleged FMLA request.

91330093v.4

I. **LEGAL STANDARD**

Federal Rule of Civil Procedure 50 permits a court to enter judgment as a matter of law against a party "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a)(1). Judgment as a matter of law should be granted "if a reasonable person could not find that the evidence supports a decision for a party on each essential element of the case." *Campbell v. Peters*, 256 F.3d 695, 699 (7th Cir. 2001); *see also Altman v. Dep't of Child. & Fam. Servs.*, No. 06CV771WDS, 2010 WL 547157, at *1 (S.D. Ill. Feb. 10, 2010) (granting Rule 50(a) motion in discrimination case). Plaintiff must have presented "substantial evidence--more than a mere scintilla--that would have permitted the jury to find in the [his] favor." *Mut. Serv. Cas. Ins. Co. v. Elizabeth State Bank*, 265 F.3d 601, 612 (7th Cir. 2001).

II. **LEGAL ARGUMENT**

    A. **Plaintiff's Racially Discriminatory Reduction Of Job Duties Claim Fails Because Beverly's Job Duties Were Never Materially Reduced Due To His Race.**

The only portion of Beverly's race discrimination claims asserted under Title VII and Illinois law that is before the jury is Beverly's claim that his job duties were reduced between 2013 and 2015 while he was employed as a Demand Analyst at Abbott. (Doc. 82 at p. 20). Plaintiff failed to provide a legally sufficient basis for the jury to find for him on this claim because: (1) the alleged reduction of job responsibilities does not rise to a materially adverse employment action; and (2) there is no evidence to connect the alleged reduction of job responsibilities to Plaintiff's race.

For a reduction of job responsibilities to be a materially adverse employment action, it "must be more disruptive than a mere inconvenience or an alteration of job responsibilities." *Crady v. Liberty Nat'l Bank & Trust Co.*, 993 F.2d 132, 136 (7th Cir. 1993). "Not everything that makes

2

an employee unhappy is an actionable adverse action." *Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir. 1996).

Plaintiff provided no evidence that this alleged reduction in job duties "depreciated his professional skills to the point where it would have been difficult for him to work his way back." *Parrett v. City of Connersville, Ind.*, 737 F.2d 690, 694 (7th Cir. 1984). Indeed, Plaintiff was able to parlay his skills into a lucrative job as Chief Deputy Clerk of M.I.S. Mainframe and Applications Development at the Office of the Clerk of the Circuit Court of Cook County. (Trial Transcript 252:12-253:18; DX-60). "[C]hallenged actions involving the reassignment of job responsibilities are typically not materially adverse unless there is a '*significant* alteration to the employee's duties, which is often reflected by a corresponding change in work hours, compensation, or career prospects.'" *Robertson v. Dep't of Health Servs.*, 949 F.3d 371, 382 (7th Cir. 2020) (emphasis in original) (quoting *Stephens v. Erickson*, 569 F.3d 779, 791 (7th Cir. 2009)). Here, there is no such evidence. Instead, the evidence shows that Plaintiff's career prospects were bright, both through his hiring at Cook County, and the responsibility Luo placed on Plaintiff's job duties in 2015, a year in which she would be "highly dependent" on Beverly. (Trial Transcript 339:1-14; DX-45). He thus failed to present evidence of a material adverse action. *Robertson v. Dep't of Health Servs.*, 949 F.3d 371, 384 (7th Cir. 2020) (finding Plaintiff failed to show she suffered a materially adverse action where the alleged removal of her ability to hold meetings did not correspond with a "change in work hours, compensation, or career prospects").

Plaintiff also testified that he maintained significant job responsibilities from 2013 to 2015, foreclosing his discrimination claim. *See Dahm v. Flynn*, 60 F.3d 253, 257 (7th Cir. 1994) (reduction of an employee's job responsibilities could be an adverse claim where it "leav[es] her with nothing to do but read a good book"). Plaintiff's own admissions contained within his

91330093v.4

performance reviews from 2013 to 2015 show that he was handling significant job responsibilities that were of great importance to Abbott. (Trial Transcript 310:15-22, 313:2-315:10). At trial, Plaintiff confirmed that he was "busy" in 2013. (Trial Transcript, 310:23-311:3). Plaintiff testified that, in June 2014, he was still preparing reports and complained that his job was so demanding, Luo would email him after "regular workday hours" asking that he send her files. (Trial Transcript, 161:18-162:18; PX-27, 28). And Plaintiff stated that he prepared Pulse reports until 2015. (Trial Transcript, 162:25-163:6). Plaintiff further testified in his direct examination that many of the reports that were removed from his job responsibilities were soon returned to him because Plaintiff was the only member of Luo's team who could complete them:

> A. I ended up getting back the end of year planning report. I ended up getting back the Pulse report. I ended up getting back the ADS commentary report, which is a very big file that we send out to the countries in which they will put in their comments as to why they hit or missed their forecast.
>
> Q. Do you know why you got those reports back?
>
> A. Yes, I do.
>
> Q. Why?
>
> A. I received those reports back because Hamid Akhtar and Victoria Luo, they did not have the skill set of managing the mechanics behind the program.

(Trial Transcript 81:9-19). Plaintiff's testimony establishes the significant job responsibilities he maintained through his employment at Abbott, and thus Abbott is entitled to judgment as a matter of law on his discrimination reduction of job duties claim.

Plaintiff must also prove that his job responsibilities were materially reduced because of his race, which he has failed to do during his case in chief. "A plaintiff bears the burden of showing that race was a but-for cause of its injury." *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1014 (2020). There was no testimony that connected Beverly's race with the alleged reduction of job duties. The evidence is undisputed that, when Plaintiff was supervised by

4

Ms. Luo, he never made a complaint at Abbott that she was reducing his job duties or otherwise treating him unfairly because of his race. (Trial Transcript, 357:1-6). In fact, Beverly testified that Luo enlarged his job duties when she first arrived. (Trial Transcript, 297:16-298:9). Thus, there is an inference that she does not have racial animus. *See Perez v. Thorntons, Inc.*, 731 F.3d 699, 710 (7th Cir. 2013) ("it is reasonable to assume that if a person was unbiased at Time A (when he decided to hire the plaintiff), he was also unbiased at Time B (when he fired the plaintiff)").

For these reasons, there is simply no evidence for which a reasonable juror could conclude that Plaintiff suffered materially reduced job duties by Luo as a result of his race in violation of Title VII and/or Illinois law, and judgment should be entered against Plaintiff on this claim.

**B. Plaintiff's Retaliation Claim For Materially Reducing His Job Duties Fails As A Matter of Law.**

Plaintiff provides no evidence that connects his and his wife's previous discrimination lawsuit to his alleged reduction of job responsibilities. To sustain his claim, Plaintiff must show that he "suffered retaliation because of protected activity." *Schobert v. Illinois Dep't of Transp.*, 304 F.3d 725, 732 (7th Cir. 2002). "In the retaliation context, the challenged adverse action need not be one that affects the terms and conditions of employment, but it must be one that a reasonable employee would find to be materially adverse such that the employee would be dissuaded from engaging in the protected activity." *Poullard v. McDonald*, 829 F.3d 844, 856 (7th Cir. 2016) (citation omitted). For the same reasons discussed in *supra* II.A, Plaintiff failed to provide evidence to show that he suffered a materially adverse action.

Here, the evidence shows that Luo learned about Beverly's previous lawsuit when, on the second week of her job (approximately May 2012), her predecessor called her to give her a heads up that she may receive a legal hold related to the lawsuit. (Trial Transcript, 491:16-19). She never learned further details about the lawsuit. (Trial Transcript, 492: 2-6). Yet, it is Beverly's

5

91330093v.4

testimony that, after Luo learned about his lawsuit in 2012, she enlarged his job responsibilities (Trial Transcript, 297:16-298:9), and in 2013, treated him "fine." (Trial Transcript. 300:11). It was not until *at least* a year and a half after Luo learned about Plaintiff's protected activity that the alleged reduction of job duties began. Luo's positive treatment over that time period belies Plaintiff's retaliation claims. *See Crampton v. Abbott Labs.*, 186 F. Supp. 2d 850, 858 (N.D. Ill. 2002) (finding insufficient evidence to establish the causation element of the plaintiff's retaliation claim where the plaintiff's "assertions that her termination was in retaliation for her whistle-blowing activities [we]re further belied by" the fact that during the "years in which she was a self-proclaimed whistle-blower, [the plaintiff] was promoted twice, given eight salary increases and granted stock options three times"). Moreover, this gap is too large for Plaintiff to rely on temporal proximity alone to make out his retaliation claim. *Lewis v. Holsum of Fort Wayne, Inc.*, 278 F.3d 706, 711 (7th Cir. 2002) (holding three-month interval between protected activity and adverse action, without more, was insufficient to support an inference of retaliation); *Lalvani v. Cook Cnty., Illinois*, 269 F.3d 785 (7th Cir. 2001) (recognizing that "[a]s the time separating the protected conduct and the adverse employment action grows, the causal inference weakens and eventually time becomes the plaintiff's enemy," and holding that a one-and-a-half-year gap to be "well beyond the time that would allow a reasonable jury to conclude that [the adverse action] was causally related to [the protected activity]"). For these reasons, Plaintiff's retaliation claim fails due to Plaintiff's lack of evidentiary support and judgment should be entered against Plaintiff.

    **C.**    **Plaintiff's FMLA Interference Claim Fails Because He Was Not Entitled Or Eligible For FMLA Leave.**

Plaintiff did not introduce evidence that would allow a reasonable jury to find that he was entitled to FMLA leave because there is not sufficient evidence that his wife suffered from a serious health condition at the time of his leave request. *See Caskey v. Colgate-Palmolive Co.*,

6

535 F.3d 585, 590 (7th Cir. 2008) ("To prevail on [his] FMLA interference claim, [Plaintiff] must establish: (1) [he] was eligible for the FMLA's protections; (2) [his] employer was covered by the FMLA; (3) [he] was entitled to leave under the FMLA; (4) [he] provided sufficient notice of [his] intent to take leave; and (5) [his] employer denied [him] FMLA benefits to which [he] was entitled."). For Plaintiff's wife to be suffering from a serious health condition under the FMLA, her condition must involve "inpatient care in a hospital, hospice, or residential medical care facility; or continuing treatment by a health care provider." 29 U.S.C. § 2611(11). The FMLA regulations define "continuing treatment by a health care provider" as including, in relevant part:

> was unable to work or perform other regular daily activities due to that condition, and was treated two or more times by a health care provider or was treated on at least one occasion by a health care provider resulting in a regimen of continuing treatment under the supervision of the health care provider.
>
> Or
>
> was unable to work or perform other regular daily activities due to a chronic serious health condition. A chronic serious health condition is one that requires periodic visits for treatment by a health care provider, continues over an extended period of time or causes episodic incapacity.
>
> Or
>
> was unable to work or perform other regular daily activities on a permanent or long-term basis due to a condition for which treatment may not be effective.

7th Circuit Pattern Jury Instructions, 10.6; 29 C.F.R. §825.115.

Plaintiff did not provide evidence by which a jury could find that his wife suffered a serious health condition at the time he allegedly requested FMLA leave because the only evidence Plaintiff provided was his own statements. Plaintiff submitted no evidence from a health care provider to show that his wife suffered a serious health condition. This is fatal to his claim. "A party's own statements cannot establish a serious health condition under the FMLA." *Connor v. Pro. Med. Billing, Inc.*, No. 1:20-CV-183-HAB, 2022 WL 2171214, at *7 (N.D. Ind. June 16, 2022); *see also*

7

*Bell v. Jewel Food Store*, 83 F.Supp.2d 951, 959 (N.D.Ill. 2000) (granting summary judgment on FMLA claim because "[Plaintiff's] own statement is not enough to establish he was incapacitated: [he] must provide evidence from a medical professional or health care provider that he was unable to work."). For Plaintiff to establish a serious health condition under the FMLA, he "must submit evidence 'provided by health care professionals and treating physicians' to meet their burden. *Connor*, 2022 WL 2171214, at *7 (quoting *Mason v. St. Vincent Hosp. and Health Care Ctr.*, 2004 WL 3242339, at *7 (S.D. Ind. Nov. 8, 2004).

Moreover, Plaintiff's statements themselves fail to establish that his wife suffered a serious health condition. He said that "[his] wife was suffering from depression, [] she had been diagnosed with massive depression," and that she had been in "[l]ong-term counseling for a number of years" that ended because "[t]he psychiatrist believed there was nothing more that she could do to help my wife at the time." (Trial Transcript, 226:22-227:9). Accordingly, Plaintiff has failed to demonstrate that he was entitled to FMLA leave and his FMLA interference claim should be dismissed and judgment entered against Plaintiff as a matter of law as no reasonable juror could conclude that Abbott or Luo interfered with Beverly's FMLA rights. *See Caskey*, 535 F.3d at 591 (plaintiff suffering from depression and anxiety did not meet serious health condition definition because she did not offer evidence of "incapacity" or that she "receive[d] either treatment two or more times by a health care provider or a 'regimen of continuing treatment'").

In addition, Plaintiff did not identify that he was requesting FMLA to "care" for his spouse, as required under the FMLA. 29 U.S.C.A. § 2612(a)(1)(C). Instead, when Plaintiff was asked why he was requesting FMLA leave, Plaintiff said, "I needed leave now to support my wife during this troubling time period." (Trial Transcript, 226:18-19). When asked again by his counsel, Plaintiff further explained:

8

> Q. Now, did you -- what was your -- what were you going to use this -- I mean, what were your intentions with regard to the leave? What would you do with that?
>
> A. I would take the time for the leave to go to Panama, secure the -- secure the body so we can return it to Europe for autopsy and, you know, intern it, you know, for the family.

(227:10-16). Such reasons do not constitute providing "care" for Plaintiff's spouse within the meaning of the FMLA. *See Tellis v. Alaska Airlines, Inc.*, 414 F.3d 1045, 1047 (9th Cir. 2005) (finding as a matter of law that the plaintiff, who took a trip to Atlanta and back to retrieve the family car to allegedly provide "psychological reassurance" to is wife and who provided "phone calls to her while he drove back to Seattle provided moral support and psychological comfort," was not "providing care to a family member under the FMLA"). Thus, Plaintiff's leave does not constitute FMLA-qualifying leave and his interference claim therefore fails as a matter of law. *See Caskey*, 535 F.3d at 590.

    **D.    Plaintiff's FMLA Retaliation Claim Fails Because He Was Terminated For Legitimate Non-Retaliatory Reasons Wholly Unrelated To His Alleged Request For FMLA Leave To Provide Care For His Wife.**

The evidence presented during trial demonstrates that Plaintiff was terminated after he failed to return from his PLOA, and that his alleged request for FMLA leave played no role in Abbott's decision to terminate.

Plaintiff "must show that [his] decision to take FMLA leave was a substantial or motivating factor in [Defendant's] decision to terminate [his] employment." *Keiju Pu v. Columbia Coll. Chicago*, 934 F. Supp. 2d 964, 975 (N.D. Ill. 2013). "Mere temporal proximity will rarely be sufficient in and of itself to create a triable issue." *Stone v. City of Indianapolis Pub. Utilities Div.*, 281 F.3d 640, 644 (7th Cir. 2002).[1]

---

[1] The Seventh Circuit "evaluate[s] a claim of FMLA retaliation the same way that [it] would evaluate a claim of retaliation under other employment statutes, such as the ADA or Title VII." *Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 503 (7th Cir. 2004).

The evidence shows that the decision to backfill Plaintiff's position was made on July 13, 2015, two weeks prior to his alleged request for FMLA leave on July 27, 2015. (Trial Testimony 552:10-13). And Plaintiff was aware that reinstatement while out on PLOA was not guaranteed. (Trial Testimony 257:9-13). Consequently, Plaintiff's supposed FMLA request cannot be a motivating factor in Abbott's termination decision. *See Long v. Teachers' Ret. Sys. of Illinois*, 585 F.3d 344, 350 (7th Cir. 2009) (alleged retaliatory actions "cannot provide evidence that [defendant] held a retaliatory animus towards [plaintiff's] use of FMLA leave" when it occurred before plaintiff had applied for FMLA leave).

Even still, Abbott and Luo terminated Plaintiff for legitimate non-retaliatory reasons that were not motivated in any respect by Plaintiff's purported request for FMLA leave to care for his wife.[2] Plaintiff was terminated because he did not return from his personal leave of absence before his position was filled. (Trial Testimony, 534:24-535:1). Because there is no evidence that Plaintiff's alleged request for FMLA leave was a "substantial or motivating factor" in the decision to terminate Plaintiff once his position was filled while he was on a personal leave of absence, Plaintiff's FMLA retaliation claim fails as a matter of law and judgment be entered against Plaintiff.

### III. CONCLUSION

For the foregoing reasons stated herein, Defendant respectfully submits to the Court this Motion for Judgment as a Matter of Law on all of Plaintiff's remaining claims for racially

---

[2] The Seventh Circuit "evaluate[s] a claim of FMLA retaliation the same way that we would evaluate a claim of retaliation under other employment statutes." *Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 503 (7th Cir. 2004).

discriminatory reduction of job duties, retaliatory reduction of job duties, FMLA interference, and FMLA retaliation based on Plaintiff's evidence presented in his case in chief at trial.

Respectfully submitted this 20th day of January, 2023.

*s/ William B. Hill, Jr.*
William B. Hill, Jr. (*pro hac vice*)
Stephanie D. Delatorre (*pro hac vice*)
Ethan Goemann (*pro hac vice*)
Seyfarth Shaw LLP
1075 Peachtree St NE, Suite 2500
Atlanta, GA 30309
Telephone: (404) 885-1500
wbhill@seyfarth.com
sdelatorre@seyfarth.com
egoemann@seyfarth.com

Uma Chandrasekaran (ARDC No. 6281690)
Kyle Petersen (ARDC No. 6275689)
Seyfarth Shaw LLP
233 South Wacker Drive, Suite 8000
Chicago, Illinois 60603
Telephone: (312) 460-5000
uchandrasekaran@seyfarth.com
kpetersen@seyfarth.com

Attorneys for Defendants

91330093v.4

**CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that on January 20, 2023 he electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will send notification of such filing to the following counsel of record:

> Ruth I. Major
> Sun Young Cho
> The Law Offices of Ruth I. Major PC
> 30 W. Monroe Street, Suite 1650
> Chicago, IL 60603

> *s/ William B. Hill, Jr.*
> Attorney for Defendants