UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HENRY BEVERLY, | ) |
| Plaintiff, | ) ) ) |
| | ) No. 17 C 5590 |
| v. | ) |
| | ) Judge Sara L. Ellis |
| ABBOTT LABORATORIES, an Illinois corporation, and VICTORIA LUO, | ) ) ) |
| Defendants. | ) ) |

**OPINION AND ORDER**

Plaintiff Henry Beverly, an African American military veteran born in 1965, filed suit against his former employer, Abbott Laboratories ("Abbott"), and his direct supervisor, Victoria Luo. In July 2019, the Court ruled on the parties' motions for summary judgment. Doc. 82. The Court found that Beverly's claims for FMLA interference and retaliation (Counts I and II); IHRA race and age discrimination, § 1981 race discrimination, USERRA discrimination, and IHRA and § 1981 retaliation claims related to the reduction of Beverly's responsibilities (parts of Counts III, IV, V, VI, VII, and IX); and defamation (Count X) could proceed to trial. *Id.* As trial preparations began, Beverly made clear his intention to also pursue harassment claims at trial. The Court precluded him from doing so, however. Docs. 179, 209. Pretrial, the Court also dismissed Beverly's USERRA discrimination claim. Doc. 209 at 4–5. As trial got underway, the Court considered and agreed with Defendants' argument that Beverly's defamation claim failed as a matter of law because the statement at issue was a non-actionable opinion, entering judgment on that claim and withdrawing it from further consideration by the jury. Doc. 235. On January 20, 2023, the jury returned a verdict for Abbott on the remaining claims of FMLA interference and retaliation, and race discrimination and retaliation related to the reduction in

Beverly's job duties under the IHRA and § 1981. Beverly now brings a motion for a new trial pursuant to Federal Rule of Civil Procedure 59(a). Because none of Beverly's arguments provide a basis for finding that he did not receive a fair trial, the Court denies Beverly's motion.

## ANALYSIS

Rule 59(a) permits a court to grant a new jury trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). A new trial is appropriate under Rule 59(a) "if the jury's verdict is against the manifest weight of the evidence or if the trial was in some way unfair to the moving party." *Martinez v. City of Chicago*, 900 F.3d 838, 844 (7th Cir. 2018) (citation omitted). Beverly does not raise a sufficiency of the evidence challenge, arguing instead that he received an unfair trial. The Court addresses Beverly's arguments separately and then considers the cumulative effect of the alleged errors.

**I.     Beverly's Defamation Claim**

Beverly first takes issue with the Court's entry of judgment for Defendants on his defamation claim. The Court ruled on this claim on the second day of trial after receiving briefing from the parties as to whether the allegedly defamatory statement, that Beverly had a "history of lying," was actionable. Doc. 235.[1] Beverly reprises the argument he made at trial that Defendants' request for a ruling on the issue at the time of the trial amounted to an untimely motion for summary judgment and so caused him prejudice.[2] As the Court made clear during

---

[1] Beverly's statement that the Court did not provide a written opinion for dismissing the defamation claim, Doc. 245 at 6, is demonstrably false, as the Court issued its ruling in written form on January 18, 2023, Doc. 235, which it also summarized orally that same day, Trial Tr. 191:11–194:24.

[2] To the extent Beverly takes issue with the substance of the Court's ruling, he makes no new arguments and so has not shown how the Court's substantive ruling constituted error requiring a new trial. *See Arrington v. City of Chicago*, No. 17 C 4839, 2023 WL 3123729, at *6 (N.D. Ill. Apr. 27, 2023) ("Repeating previously raised and rejected arguments, without any new analysis or authority, does not

trial, the timing of Defendants' request for a ruling on the opinion defense was unfortunate. *See* Jury Selection Tr. 8:2–13:16; *id.* at 16:1–18:12; Trial Tr. 194:16–24. But as the Court stated then and repeats now, the opinion defense involved a question of law that the Court needed to decide before the defamation claim could go to the jury. *See Imperial Apparel, Ltd. v. Cosmo's Designer Direct, Inc.*, 227 Ill. 2d 381, 398 (2008). Thus, the Court appropriately resolved the issue at the earliest practicable time during the trial, minimizing to the extent possible the confusion and unnecessary presentation of issues that would have arisen had the opinion defense remained unresolved until the conclusion of the evidence or after the jury returned a verdict.[3]

Further, Beverly's reliance on the Seventh Circuit's decision in *Bowman v. Korte*, 962 F.3d 995 (7th Cir. 2020), does not persuade. *Bowman* involved exhaustion of administrative remedies, an affirmative and procedural defense that the defendant can waive. *See Perez v. Wis. Dep't of Corr.*, 182 F.3d 532, 536 (7th Cir. 1999) ("Defendants may waive or forfeit reliance on § 1997e(a), just as they may waive or forfeit the benefit of a statute of limitations."). In contrast, the opinion defense goes to the merits of the defamation claim. Moreover, the district court in *Bowman* ordered the defendants to file a summary judgment motion on exhaustion before proceeding with discovery on the merits, but the defendants let the deadline pass and only sought judgment on exhaustion two months before trial. *Bowman*, 962 F.3d at 997. Here, while it would have been prudent for Defendants to raise their arguments about the opinion defense well ahead of the start of trial, the Court never imposed a specific deadline for briefing on this defense

---

establish error."). The Court thus does not discuss the substance of the ruling further, relying on its reasoning in the January 18, 2023 order, Doc. 235, and instead focuses on the timing of the Court's ruling and its effect on Beverly's right to a fair trial.

[3] Beverly does not explain how deferring the Court's ultimate decision that he had no defamation claim after all evidence concerning that claim had been introduced would have avoided prejudice. Instead, as the Court noted at trial, had all the evidence surrounding the defamation claim come in at trial, the prejudice would likely have run against Beverly, given that Defendants would have had wider latitude to introduce evidence of Beverly's character. Jury Selection Tr. 17:16–18:3.

and the parties all understood, as reflected in the pretrial order and discussions during pretrial proceedings, that the Court would have to address the issue at trial. *See* Doc. 235 at 1. And while Beverly complains that the timing of the decision prejudiced him because it caused his counsel to have to devote time to briefing the issue as opposed to preparing for trial and forced counsel to recalibrate his trial strategy after the Court's ruling, the Court does not find that the timing of the ruling deprived Beverly of a fair trial. *See Hasham v. Cal. State Bd. of Equalization*, 200 F.3d 1035, 1050 (7th Cir. 2000) ("The conduct of a trial and rulings on evidence, motions and trial direction, are subject to the sound discretion of the trial court. Absent manifest abuse, a district court has and must have wide discretion over the scheduling and administration of a trial." (citations omitted)). Faced with the concern that the jury would hear testimony extraneous to the viable discrimination and retaliation claims that could significantly prejudice Beverly, the Court acted with alacrity in ruling on the opinion defense and precluding the further introduction of potentially damaging testimony, which had the likelihood of tainting the jury's consideration of Beverly's remaining claims. The Court also instructed the jury not to consider any evidence it heard pertaining to the defamation claim during its deliberations, Trial Tr. 204:19–205:12, curing any potential prejudice from the introduction of evidence going solely to the defamation claim prior to the Court's ruling, *United States v. Mallett*, 496 F.3d 798, 802 (7th Cir. 2007) ("Absent any showing that the jury could not follow the court's limiting instruction, we presume that the jury limited its consideration of the testimony in accordance with the court's instruction."). Beverly thus cannot use the timing of the Court's ruling on the defamation claim as a basis for obtaining a new trial.

## II. Impeachment Procedure

Next, Beverly contends that the Court required his counsel to follow procedures contrary to those required by Federal Rule of Evidence 613(a) when impeaching witnesses with prior inconsistent statements. Rule 613(a) provides that "[w]hen examining a witness about the witness's prior statement, a party need not show it or disclose its contents to the witness. But the party must, on request, show it or disclose its contents to an adverse party's attorney." Fed. R. Evid. 613(a). Beverly complains that the Court required his counsel to show Luo her deposition transcript in order to complete the impeachment, despite Rule 613(a) abolishing that requirement. *See United States v. Marks*, 816 F.2d 1207, 1210 (7th Cir. 1987) ("No longer, when a lawyer asks a witness whether he made a certain statement, written or not, is the lawyer required (as he was at common law, see Note of Advisory Committee to Fed. R. Evid. 613(a)) to show the statement or disclose its contents to the witness, though he must upon request show it to opposing counsel."). Beverly maintains that the fact that the Court allegedly incorrectly sustained defense counsel's objections challenging his counsel's attempts at impeachment made it appear that his counsel was playing fast and loose with the rules.

Beverly misunderstands the Court's basis for sustaining Abbott's counsel's objections to her attempted impeachment of Luo. After asking Luo a question about hiring Bruce Tsai to take Beverly's place, Beverly's counsel jumped to the following question: "Didn't you claim in your deposition that you didn't know Mr. Tsai before you hired him?" Trial Tr. 454:7–8. Abbott's counsel objected, and the Court instructed Beverly's counsel to first elicit testimony from Luo as to whether she knew Tsai before hiring him before using the deposition testimony to impeach her on this point. *See J. Yanan & Assocs., Inc. v. Integrity Ins. Co.*, 771 F.2d 1025, 1031 (7th Cir. 1985) ("As a prior inconsistent statement, it must contradict something the witness says now[.]").

5

While Beverly now points out that his counsel had asked Luo about her relationship with Tsai earlier in the examination, Trial Tr. 401:5–23, the time between that question and counsel's attempt at impeachment spanned over fifty pages of the transcript and a lunch recess, Trial Tr. at 430:20–22. Given the lapse of time, the Court instructed Beverly's counsel to draw Luo's and the jury's attention again to the topic on which counsel sought to impeach Luo, ensuring that the impeachment was targeted at an inconsistent statement before she proceeded with the impeachment.

Once Luo acknowledged knowing Tsai before hiring him, counsel again sought to ask about Luo's testimony on the issue during her deposition without providing any foundation for the question. The Court thus instructed counsel to lay the foundation for the impeachment by establishing that Luo provided testimony at a deposition under oath and then directing Luo and the jury to the specific inconsistent statement Luo made during the deposition. Trial Tr. 454:23–457:15. Beverly argues that the Court made his counsel take an additional step in contravention of Rule 613(a) by requiring counsel to show Luo the transcript of her deposition before perfecting the impeachment. The Court, however, did no such thing, instructing counsel only to "[g]o to the page and line number and say, 'Were you asked this question, and did you give this answer?'" Trial Tr. 456:13–15. Although Beverly's counsel interpreted the Court's instruction as a requirement to show Luo the transcript, *see* Trial Tr. 456:17–20, the Court imposed no such requirement and only instructed Beverly's counsel to provide a reference to the relevant portion of the deposition so that opposing counsel could follow along, Trial Tr. 456:13–15. Indeed, the Court later emphasized this point to Beverly's counsel, instructing her that she did not need to provide witnesses with the deposition transcript in order to impeach them with their prior testimony and instead only needed to provide opposing counsel with the line and page number,

6

as required by Rule 613(a). *See* Trial Tr. 544:20–545:8 (instructing Beverly's counsel that the witness "[d]oesn't necessarily need to follow along if you're trying to impeach him"). Thus, no error occurred with respect to Rule 613(a).

Moreover, even assuming a violation of Rule 613(a), Beverly cannot show prejudice. *See United States v. Khellil*, 678 F. Supp. 2d 713, 737 (N.D. Ill. Dec. 28, 2009) (a judge's comments about counsel's performance do not serve as a basis for overturning a conviction). Even showing Luo her deposition testimony, Beverly's counsel impeached Luo, doing so more effectively than if she had not directed Luo and the jury to the exact statements in Luo's deposition. *See Oostendorp v. Khanna*, 937 F.2d 1177, 1181 (7th Cir. 1991) ("[F]orcing the defendants to present the [inconsistent statement] would have only bolstered their impeachment of the plaintiff (cross-examiners typically complain when they are not permitted to prove up impeachment and must live with the witness's answer)."); *United States v. Marks*, 816 F.2d 1207, 1211 (7th Cir. 1987) ("The judge's *ad hoc* recurrence to the common law was not reversible error per se. The procedure did not impede the cross-examination of the prosecution's witnesses (except insofar as defense counsel may have wanted to confuse them and the jury) or cause any other prejudice to the defendants."). Although Beverly complains that the Court's instructions as to how counsel should proceed with impeachment suggested to the jury that counsel played "fast and loose with the rules," Doc. 245 at 8, such explanation "is a basic function of a trial judge that is often used to ensure smooth trial administration,"[4] *Wiseman v. Tastefully Better*, No. 19-CV-1441, 2023 WL 3200229, at *5 (N.D. Ill. May 2, 2023); *see also Goldberg v. 401 N. Wabash Venture LLC*,

---

[4] Further, Abbott's counsel did not escape criticism as to their compliance with the Federal Rules of Evidence, undermining any suggestion that the Court's admonition of Beverly's counsel as to the method of impeachment prejudiced Beverly in front of the jury. *See, e.g.*, Trial Tr. 246:5–16 (instructing Abbott's counsel that an answer of "I don't recall" did not provide a basis for impeachment but that he could seek to refresh the witness' recollection with the deposition testimony to obtain an answer to the question).

No. 09 C 6455, 2013 WL 4506004, at *16 (N.D. Ill. Aug. 23, 2013) ("When the Court admonished Ms. Goldberg's counsel in the presence of the jury, it was to properly manage the proceedings and maintain order."). Thus, the Court cannot conclude that its instructions as to impeachment provide a basis for a new trial.

### III. Alleged Judicial Bias

Beverly also complains that the Court subjected the parties to differential treatment, with its alleged favoritism of Defendants depriving him of a fair trial. Judicial remarks and rulings that "display a deep-seated favoritism or antagonism that would make fair judgment impossible" could provide a basis for a new trial. *Liteky v. United States*, 510 U.S. 540, 555 (1994). But "[j]udicial remarks during the course of trial that are critical or disapproving of, or even hostile to, counsel, parties, or their cases, ordinarily do not support a bias or partiality challenge." *Id.*; *see also id.* at 555–56 ("*Not* establishing bias or partiality, however, are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display. A judge's ordinary efforts at courtroom administration—even a stern and short-tempered judge's ordinary efforts at courtroom administration—remain immune."). Here, the Court did not display any "deep-seated favoritism or antagonism" so as to deprive Beverly of a fair trial, *id.* at 555; instead, it aimed to ensure that, despite both sides' missteps in the preparation for and during trial, both sides received a fair trial, *see McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 553 (1984) ("This Court has long held that '[a litigant] is entitled to a fair trial but not a perfect one, for there are no perfect trials.'" (alteration in original) (citation omitted)). Nonetheless, the Court addresses each of Beverly's examples of the Court's alleged bias to dispel any concern that they provide a basis for a new trial.

8

Initially, Beverly complains that the Court improperly restricted his ability to impeach Luo, while granting Abbott wide latitude in impeaching him. Specifically, Beverly complains that the Court did not allow inquiry into the statements Luo made to Abbott Global Security immediately after his termination, which formed the basis of his defamation claim, arguing that such testimony was relevant to Luo's credibility because, at trial, she would have acknowledged making the statements despite having denied doing so during her deposition. At trial, Beverly's counsel contended that such statements would show animus and could go to her credibility because she had testified that Beverly did not intimidate or threaten her, in contrast to her statements to Global Security that she was afraid of him. Trial Tr. 468:9–470:25. The Court ruled that this evidence did not suggest animus because the statement occurred after his termination, Trial Tr. 468:21–22, 469:8–10, and that the link to her credibility was too attenuated, noting specifically that the jury had already heard that the basis for Luo's stated concern, that Beverly would not return Abbott's property, was true because Beverly had only returned Abbott's laptop the week of trial, Trial Tr. 471:1–14. Beverly does not raise any arguments that undercut this ruling. Further, to the extent this excluded evidence could have served as another instance of Luo's inconsistent statements during the course of this case, the Court had the discretion to conclude that the inquiry was of limited relevance and could devolve into a sideshow. *See United States v. Dawson*, 434 F.3d 956, 959 (7th Cir. 2006) ("The trial judge has a responsibility not to allow cross-examination to get out of hand, confuse the jury, and prolong the trial unnecessarily."). Nor has Beverly shown how the Court's decision to exclude this evidence substantially affected the outcome of the trial. *See Lewis v. City of Chicago Police Dep't*, 590 F.3d 427, 440 (7th Cir. 2009) ("[E]ven if a judge's [evidentiary] decision is found to be erroneous, it may be deemed harmless if the record indicates the trial result would have been

9

the same."). As for Beverly's claim of differential treatment because Abbott had the ability to inquire into the timing of his return of Abbott's laptop, he waived this objection by failing to object to introduction of such evidence during trial. *See Christmas v. City of Chicago*, 682 F.3d 632, 640 (7th Cir. 2012) (district court did not abuse its discretion in denying the plaintiffs' motion for a new trial where the plaintiffs did not object to specific testimony at trial); *Naeem v. McKesson Drug Co.*, 444 F.3d 593, 610 (7th Cir. 2006) ("When a defendant does not object to the admission of evidence during the trial, the objection is waived and cannot be raised for the first time in a motion for new trial or on appeal."). And because Beverly did not bring this to the Court's attention at trial, the Court cannot be faulted for providing Abbott with a wider window for impeachment of Beverly and his witnesses.

Beverly also argues that the Court *sua sponte* admonished Beverly for attempting to explain his answers on cross-examination but did not do the same to Luo. But Beverly overlooks the fact that the Court did admonish Luo *sua sponte* on several occasions on the same basis. *See, e.g.*, Trial Tr. 456:9–10 (Luo asked "But can I explain?" and the Court said "No, no, no"); Trial Tr. 462:18–463:13 (in response to Luo's statement that she "want[s] to explain," the Court stated "So, Ms. Luo, Ms. Major is going to ask you questions. And if they call for a yes or no, then you answer them yes or no. Mr. Hill's going to have the opportunity to get up and . . . ask you questions as well. . . . And if there is something to explain or put more in context, you'll have the opportunity to do that when he's asking you questions."). And while Beverly has cherry-picked examples where the Court admonished him to answer the question while allowing Luo to provide explanatory answers, he has omitted instances where the Court did not intervene when he provided narrative or non-responses on cross-examination. *See, e.g.*, Trial Tr. 247:16–248:9, 291:6–12, 340:8–15, 350:13–16, 354:10–16, 354:19–355:2. Further, the Court instructed the

10

jury that nothing it said or did during the trial was "meant to indicate any opinion on [its] part about what the facts are or about what [the jury's] verdict should be," Trial Tr. 666:9–12, with the jury presumed to follow this instruction, *Soltys v. Costello*, 520 F.3d 737, 744 (7th Cir. 2008).

Next, Beverly complains that the Court "severely scolded" him for "attempting to ask for clarity for opposing counsel's incomprehensible 'question.'" Doc. 245 at 10. In cross-examining Beverly about his 2014 performance assessment review, Abbott's counsel stated "Now, if we go to the next page, which is 9 of 16, 'APO Implementation,' you write that this is a career dream for you – let me just read what you write." Trial Tr. 316:3–5. Before counsel could proceed further, Beverly interjected, saying "Excuse me. You know I have a brain injury and everything. Please keep your wording concise because you're getting into your sentence." Trial Tr. 316:6–8. The Court cut Beverly off, stating "Mr. – Mr. Beverly, that's enough," and then excused the jury for the day. Trial Tr. 316:9–18. Once the jury had left the courtroom, the Court admonished Beverly that his response amounted to an inappropriate attempt to obtain sympathy from the jury, given that Abbott's counsel only sought to direct Beverly's attention to a particular place in the document. Trial Tr. 316: 24–317:19. Any "scold[ing]" of Beverly, Doc. 245 at 10, occurred outside the jury's presence and thus cannot have influenced the verdict, *see Khellil*, 678 F. Supp. 2d at 739 ("no risk of unfair prejudice" for critical comments made outside the jury's presence). Further, despite Beverly's present contention that he only sought an accommodation for his disability, Beverly never raised any such concern with the Court prior to his testimony, despite having had many opportunities to do so, and he demonstrated his ability to politely request Abbott's counsel to repeat or rephrase questions he did not understand on other occasions when he found counsel's questions confusing, *see, e.g.*, Trial Tr. 243:23 ("Say that

11

again?"); Trial Tr. 275:23 ("Can you reword that?"). As Beverly himself admitted, Abbott's counsel "got under [his] skin," Trial Tr. 317:4–6, and nothing about the Court's reaction to Beverly's outburst can provide him with a do-over.

Finally, Beverly contends that the Court improperly refused requests for sidebars to discuss "hotly contested issues," "taint[ing] Mr. Beverly's reputation before the jury." Doc. 245 at 11. Beverly only brings one such instance to the Court's attention, where his counsel suggested a sidebar to discuss the Matrix call but the Court did not find a sidebar necessary because it could quickly dispose of the objection. Trial Tr. 260:7–262:10. Nothing that occurred during the exchange with counsel could have tainted Beverly's reputation before the jury, as the Court merely established the basis for which Abbott sought to admit the call and then indicated that, based on the parties' prior discussion as to the call, Abbott could introduce it solely for credibility purposes. Trial Tr. 260:7–262:10. The jury had the opportunity to hear the call and, in light of the other evidence introduced at trial, determine whether, as Abbott's counsel represented, Beverly "was dishonest and untruthful to the leave representative." Trial Tr. 260:14–15.

In sum, none of the examples Beverly cites demonstrate that the Court "display[ed] a deep-seated favoritism or antagonism that would make fair judgment impossible" and require a new trial. *Liteky*, 510 U.S. at 555.

### IV. Admission of Evidence of Beverly's Cook County Employment

Next, Beverly complains that the Court improperly allowed Abbott to introduce evidence surrounding its prohibition on full-time employment while on a personal leave of absence ("PLOA") and Beverly's employment with the Cook County Clerk's Office during the time he was on a PLOA. Beverly sought to exclude this evidence in a motion *in limine*. Doc. 151 at 13–

12

17. The Court concluded that Defendants could introduce evidence concerning the PLOA policy's restrictions on full-time employment and Beverly's employment with the Cook County Clerk's Office during his PLOA in connection with Beverly's defamation claim. Doc. 178 at 5. Defendants did not also argue that they could introduce the evidence for credibility purposes, and so the Court's ruling on the motion *in limine* did not consider this question.

At trial, Beverly fronted the evidence concerning his Cook County employment. But, once the Court withdrew the defamation claim from the jury's consideration, the Court questioned the continued relevance of this evidence. Trial Tr. 194:25–195:21. Abbott then raised credibility as an alternative basis for introducing the evidence surrounding Beverly's Cook County employment. Trial Tr. 201:13–203:17. The Court agreed that Abbott could further inquire into Beverly's Cook County employment for credibility purposes, but it again emphasized the need to "narrow the issues" and preclude "a whole sideshow about the County job." Trial Tr. 204:2–8.

The Court's evidentiary decisions do not provide a basis for a new trial unless "a significant chance . . . exist[s] that the ruling affected the outcome of the trial." *Smith v. Hunt*, 707 F.3d 803, 807–08 (7th Cir. 2013). While it would have been prudent for Abbott to raise credibility as an alternative basis for admissibility in response to Beverly's motion *in limine* on the topic, the Court's decision to allow further inquiry into Beverly's Cook County employment at trial for credibility purposes did not amount to an abuse of discretion, nor has Beverly established how it affected the outcome of the trial.[5] *See Perry v. City of Chicago*, 733 F.3d 248, 252 (7th Cir. 2013) ("Trial courts issue rulings on motions in limine to guide the parties on what

---

[5] The Court rejects Beverly's attempt to conflate Abbott's failure to raise credibility as a basis for admissibility of this evidence prior to trial with Beverly's failure to pursue a hostile work environment theory of liability until the filing of the pretrial order, which the Court found Beverly could not pursue at trial because his complaint did not give Abbott fair notice of such a theory and allowing him to pursue it at such a late date would unfairly prejudice Defendants. *See* Docs. 179, 209.

13

evidence it will admit later in trial. As a trial progresses, the presiding judge remains free to alter earlier rulings."). And Beverly does not contest the relevance of this evidence to his credibility, implicitly acknowledging that he cannot claim surprise given that Defendants intended to use the evidence to demonstrate his lack of truthfulness for purposes of the defamation claim. Doc. 178 at 5 (in ruling on Beverly's motion *in limine*, acknowledging Defendants' argument that evidence concerning Beverly's Cook County employment "indicates that he was not truthful when obtaining and extending his PLOA"). Thus, the Court cannot conclude that the admission of this evidence deprived Beverly of a fair trial.

### V.     Abbott's Closing Argument

Beverly next challenges Abbott's counsel's statement in closing argument comparing Luo's and Beverly's demeanors while testifying, noting that "she started crying" when talking about her relationship with Beverly, but that the jury had not "seen a tear or a whimper from Mr. Beverly. This is business for him, nothing but business." Trial Tr. 736:9–22. Beverly contends that this comment violated the Court's decision to bifurcate the liability and damages phases of the trial. According to Beverly, the comment was unfair because Abbott's counsel faulted him for failing to testify about his damages when he could not testify about the damage to his reputation and career or about his depression because of bifurcation, when Abbott itself sought the bifurcation.

Initially, the Court notes that Beverly did not object to this line of argument in Abbott's closing and so has waived any potential error. *Lewis*, 590 F.3d at 444 ("Lewis failed to object to the closing argument when made and has therefore waived the issue on appeal. Improper statements should be objected to when made, so as to give the trial judge a chance to correct any prejudice caused by the statement."). "Waiver aside, improper remarks made during closing

14

arguments rarely are so serious as to constitute reversible error." *Venson v. Altamirano*, 749 F.3d 641, 657 (7th Cir. 2014). "Reversible error occurs only if the statement was 'plainly unwarranted and clearly injurious.'" *Smith*, 707 F.3d at 812 (quoting *Jones v. Lincoln Elec. Co.*, 188 F.3d 709, 730 (7th Cir. 1999)). Here, Abbott's counsel's statements do not rise to such a level, particularly considering that they reflected a comparison of the witness' demeanors at trial for credibility purposes, which counsel could properly explore in closing argument. *See London v. Clements*, 600 F. App'x 462, 467 (7th Cir. 2015) ("Inferences drawn from the evidence, including inferences about witness credibility, are fair game for closing argument."); *United States v. Catalfo*, 64 F.3d 1070, 1080 (7th Cir. 1995) ("Comments on the credibility of witnesses are permissible so long as the comments are based on proper inferences gleaned from the evidence at trial."); *see also* Seventh Circuit Pattern Civil Jury Instruction 1.13 (in evaluating a witness' testimony, the jury should consider, among other things, "the manner of the witness while testifying"). And even assuming counsel's statements were improper, the Court instructed the jury that counsel's statements did not constitute evidence, Trial Tr. 667:13–17, which "mitigate[d] any harm that may otherwise have resulted from improper comments during closing argument," *Soltys*, 520 F.3d at 745; *see also Christmas*, 682 F.3d at 639 ("As a general rule, we assume that the jury obeys the judge's instructions." (citation omitted)).

## VI. Admissibility of Exhibits

Beverly also complains that the Court placed him at a disadvantage by ruling on Defendants' objections to his exhibits at the pretrial conference but deferring ruling on his objections to Defendants' exhibits until trial. Beverly contends that this gave Defendants an unfair advantage because they knew the universe of documents that Beverly could introduce,

while he did not know which of Defendants' exhibits would be admitted and had to object to exhibits in front of the jury.

Beverly fails to point to any requirement that the Court rule on objections to exhibits prior to trial, and the Court fails to understand the prejudice he allegedly experienced due to the Court's failure to do so with respect to Defendants' exhibits. Ultimately, the Court has discretion as to how to manage trials, *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984), and in many cases, objections to exhibits cannot be resolved until the Court has the opportunity to hear testimony and understand the way in which a party seeks to use an exhibit, *Brown v. City of Chicago*, No. 18 C 7064, 2023 WL 2640317, at *1 (N.D. Ill. Mar. 22, 2023) ("Often, however, the better practice is to wait until trial to rule on objections, particularly when admissibility substantially depends upon facts which may be developed there." (citation omitted)). If anything, the Court's failure to resolve the objections to Defendants' exhibits prejudiced Defendants, as they did not know before trial whether the Court would allow their exhibits, while Beverly had the advantage of knowing the documents he could use to present his case without worrying about their potential exclusion at trial. While Beverly may have made strategic decisions as to the objections he wished to raise at trial, his own decisions cannot form the basis for a new trial.

### VII. Cumulative Effect

Finally, the Court must consider Beverly's argument that the cumulative effect of the alleged errors deprived him of a fair trial. To prevail on his cumulative effect argument, Beverly must show: "(1) that multiple errors occurred at trial; and (2) those errors, in the context of the entire trial, were so severe as to have rendered his trial fundamentally unfair." *United States v. Powell*, 652 F.3d 702, 706 (7th Cir. 2011). The Court examines "the entire record, paying

16

particular attention to the nature and number of alleged errors committed; their interrelationship, if any, and their combined effect; how the trial court dealt with the errors, including the efficacy of any remedial measures; and the strength of the . . . case." *Id.* Having reviewed the record and analyzed Beverly's arguments as to the effect of the alleged errors on the jurors, the Court finds that Beverly received a fair trial, for all the reasons given above. *See United States v. Allen*, 269 F.3d 842, 847 (7th Cir.2001) ("If there are no errors or a single error, there can be no cumulative error.").

## CONCLUSION

For the foregoing reasons, the Court denies Beverly's motion for a new trial [244].

Dated: July 12, 2023

SARA L. ELLIS
United States District Judge